**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
500 7th Avenue, 8th Fl.
New York, NY 10018
Telephone: (646) 347-3940

**JANOVE PLLC**
Liana Roza Vitale (SBN 348772)
liana@janove.law
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

***Attorneys for Plaintiff and the Proposed Classes***

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 | 500 7th Ave., 8th Fl. New York, NY 10018 | 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
JANOVE PLLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

TRACY ZIGLER individually, and on behalf of all others similarly situated,

Plaintiff,

v.

LYFT, INC.,

Defendant.

Case No. 3:26-cv-575-EMC

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge: Hon. Edward M. Chen
Date: April 2, 2026
Time: 1:30 p.m.
Courtroom: 5–17th Floor

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 2, 2026 at 1:30 p.m., before the Honorable Edward M. Chen, at the United States District Court, Northern District of California, Phillip Burton Federal Building & United States Courthouse, Courtroom 5 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Tracy Zigler will and hereby does move for an Order pursuant to Federal Rule of Civil Procedure ("Rule") 23(d):

1. Finding that the version of Defendant's Terms of Service published after the

commencement of this action, dated February 9, 2026, is unenforceable against Plaintiff and the putative class members with respect to the claims at issue in this lawsuit.

2. Requiring that to the extent Defendant promulgates, imposes or offers to Plaintiff and other putative class members any new or modified Terms of Service that would affect the claims, procedures, and/or remedies at issue in this lawsuit, Defendants must first submit to this Court those Terms and any communications for transmitting them, and obtain the Court's prior approval that they contain: (i) complete and accurate information regarding the status, purposes, and effects of this class action, and the legal impact of consenting to the new provision on putative class members' rights in this lawsuit, along with Plaintiff's counsel's contact information; and (ii) a reasonable and effective opt-out provision, including conspicuous instructions on how to easily decline or opt-out of the terms that would affect the procedures, rights, and/or remedies at issue in this lawsuit.

This motion is based on this Notice of Motion and Motion for Corrective Action Under Fed. R. Civ. P. 23(d), the following memorandum of points and authorities, the Declarations of Raphael Janove and Tracy Zigler (filed concurrently herewith), the pleadings and papers on file in this action, and such other matters as the Court may consider.

A proposed order is attached as Exhibit 1.

DATED: February 20, 2026

Respectfully submitted,

By: */s/ Raphael Janove*
Raphael Janove

**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
500 7th Avenue, 8th Fl.
New York, NY 10018
Telephone: (646) 347-3940

JANOVE PLLC
979 Osos St., Ste. A5, San Luis Obispo, CA 93401
500 7th Ave., 8th Fl., New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl., Philadelphia, PA 19103

Liana Roza Vitale (SBN 348772)
liana@janove.law
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

*Attorneys for Plaintiff and the Proposed Classes*

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
500 7th Ave., 8th Fl.
New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
500 7th Avenue, 8th Fl.
New York, NY 10018
Telephone: (646) 347-3940

**JANOVE PLLC**
Liana Roza Vitale (SBN 348772)
liana@janove.law
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

***Attorneys for Plaintiff and the Proposed Classes***

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
500 7th Ave., 8th Fl.
New York, NY 10018
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| TRACY ZIGLER individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant. | Case No. 3:26-cv-575-EMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d)**<br><br>Judge: Hon. Edward M. Chen<br>Date: April 2, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5 – 17th Floor |

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
500 7th Ave., 8th Fl.
New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

## TABLE OF CONTENTS

INTRODUCTION ........ 1

STATEMENT OF THE ISSUES TO BE DECIDED ........ 2

BACKGROUND ........ 3

I. Summary of Plaintiff's Class Action Lawsuit. ........ 3

II. The Claims in This Case Are Not Subject to Arbitration. ........ 3

III. After Benefiting from the Chilling Effect of the 2024 Terms, Lyft Purports to Revise Its Terms of Service to Resuscitate the Unenforceable "Arbitration" Provision. ........ 5

ARGUMENT ........ 9

I. Rule 23(d) Empowers this Court to Invalidate the February 2026 Terms and to Control Lyft's Communications with the Proposed Class Members ........ 10

II. The Court Should Invalidate the February 2026 Terms. ........ 11

A. The 2026 Terms Threaten Putative Class Members' Rights to Pursue Claims in this Litigation ........ 12

B. Both the 2026 Terms and the Single Email Advising Putative Class Members of Those Terms Are Misleading and Coercive Within the Meaning of Rule 23(d). ........ 13

III. The Court Should Impose Strict Requirements Over Lyft's Future Communications with Proposed Class Members Regarding Any Future Dispute Resolution Terms. ........ 15

IV. Lyft's Supposed "Delegation" Clause Does Not Prevent the Court from Ordering Relief Under Rule 23(d) ........ 17

CONCLUSION ........ 18

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

## TABLE OF AUTHORITIES

**Cases**

*Ash v. Axos Bank*,
2024 WL 4195313 (S.D. Cal. Sept. 13, 2024) ..... 14

*Avery v. TEKsystems, Inc.*,
165 F.4th 1219 (9th Cir. 2026) ..... passim

*Balasanyan v. Nordstrom, Inc.*,
2012 WL 760566 ..... 13, 16

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ..... 18

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ..... 18

*Dominguez v. Better Mortg. Corp.*,
88 F.4th 782 (9th Cir. 2023) ..... 16

*Guifu Li v. A Perfect Day Franchise, Inc.*,
270 F.R.D. 509 (N.D. Cal. 2010) ..... 10

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981) ..... 9, 13

*Heckman v. Live Nation Entm't, Inc.*,
120 F.4th 670 (9th Cir. 2024) ..... 4, 5, 8

*In re Currency Conversion Fee*,
361 F. Supp. 2d ..... 13, 14, 15

*In re Tesla Advanced Driver Assistance Sys. Litig.*,
2023 WL 6391477 (N.D. Cal. Sept. 30, 2023) ..... 19

*Ireland-Gordy v. Tile, Inc.*,
760 F. Supp. 3d 946 (N.D. Cal. 2024) ..... 19

*Jimenez v. Menzies Aviation Inc*,
2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) ..... 12, 13

*Kater v. Churchill Downs Inc.*,
423 F. Supp. 3d 1055 (W.D. Wash. 2019) ..... 12

*MacClelland v. Cellco P'ship*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022) ..... 5, 17

*McKee v. Audible, Inc.*,
2018 WL 2422582 (C.D. Cal. Apr. 6, 2018) ..... passim

*O'Connor v. Uber Tech., Inc.*,
2013 WL 6407583 (N.D. Cal. Dec. 13, 2013) ..... 11, 13, 14, 16

*O'Connor v. Uber Tech., Inc.*,
2014 WL 1760314 (N.D. Cal. May 2, 2014) ..... 9, 10, 15, 16

*Pandolfi v. AviaGames, Inc.*,
2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ..... 5, 8, 16, 19

*Pandolfi v. Aviagames, Inc.*,
2025 WL 2463742 (9th Cir. Aug. 27, 2025) ........ 5

*Peleg v. Neiman Marcus Grp., Inc.*,
204 Cal. App. 4th 1425 (Ct. App. 2012)........ 14

*Rios v. HRB Digital LLC*,
2025 WL 3003768 (N.D. Cal. Oct. 27, 2025) ........ 5

*Snarr v. HRB Tax Grp., Inc.*,
2021 WL 4499415 (N.D. Cal. May 13, 2021)........ passim

*Snarr v. HRB Tax Grp., Inc.*,
839 F. App'x 53 (9th Cir. 2020) ........ 5

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022)........ 4

**Rules**

Fed. R. Civ. P. 23(d). ........ passim

JANOVE PLLC
979 Osos St., Ste. A5, San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

## INTRODUCTION

In December 2024 Lyft implemented, and forced on Lyft customers, Terms of Service containing elaborate dispute resolution provisions designed to insulate Lyft from liability (the "2024 Terms"). The 2024 Terms worked to deter claims against Lyft by imposing an elaborate and onerous Pre-Arbitration Process before Lyft users could initiate arbitration. For any claimants determined enough to navigate these labyrinthine requirements or who found counsel to assist them, Lyft then imposed a series of additional hurdles to case resolution—including batching and bellwether processes that both this Court and the Ninth Circuit have concluded are unconscionable. The end result was to make it virtually impossible for claimants to pursue claims against Lyft, and it is likely that Lyft successfully deterred claims for years with the 2024 Terms.

Lyft is clearly aware that these terms were unlikely to be enforced by any Court. After Plaintiff Zigler brought claims against Lyft for marketing "priority pickups" that cost more but took longer than standard fares, and in her complaint specifically alleged that Lyft's so-called "arbitration" clause was not enforceable, Lyft quietly sought to impose a revised arbitration agreement on Ms. Zigler and all members of the putative class. Those revised terms (the "2026 Terms"), unsurprisingly, respond directly to the critiques raised in Ms. Zigler's complaint—switching out various patently unconscionable provisions identified in the complaint for more confusing provisions that are equally unconscionable, but harder to parse.

For example, where the 2024 Terms imposed nearly a page of detailed and onerous notice requirements on claimants and gave Lyft the ability to delay arbitration by nitpicking claimants' compliance with their elaborate "Pre-Arbitration Process," the 2026 Terms shift the requirements to later stages in the proceedings. But they still give Lyft the option to derail arbitration with a variety of one-sided provisions allowing Lyft to start Court proceedings and enjoin arbitration anytime it is dissatisfied with the arbitration process. They also give Lyft new options to appeal any substantial arbitration awards. Further, the 2026 Terms continue to penalize consumers for retaining the counsel of their choice, but with slightly different batching and bellwether requirements.

None of these changes were disclosed to Lyft users in the Lyft application. Instead, Lyft

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

rolled out the 2026 Terms—which it claims became effective on February 9, 2026—in a series of emails sent around the Presidents Day holiday weekend. These emails briefly "summarize[d]" the new terms, did not mention this litigation, and only included a generic statement towards the end of the email that Lyft had also "updated provisions related to the arbitration agreement between users and Lyft, communications information, pricing information in the Lyft app, and the automated processing of personal information." Janove Decl. Ex. D. Lyft also did not inform users that its updated Terms purported to apply retroactively to existing claims. Lyft did not provide any option to opt out of the new terms, advising users that if they did not agree, they could never use the Lyft service again.

Lyft's goal appears to be to side-step the obvious conclusion that Plaintiff cannot be compelled to arbitrate under the 2024 Terms, while still positioning itself to derail this proceeding by moving to compel under the 2026 Terms. Courts have repeatedly rejected similar attempts to force putative class members to agree to alternate methods of dispute resolution after litigation is commenced. As the Ninth Circuit recently affirmed in *Avery v. TEKsystems, Inc.*, 165 F.4th 1219, 1227 (9th Cir. 2026), federal courts can and should invalidate arbitration agreements that are unilaterally imposed by a defendant through misleading and coercive communications. This is inconsistent with the "typical Rule 23 opt-out class proceeding"—the default that class members are part of a class action *unless* they take affirmative steps to opt-out. *See id.* The Court should therefore exercise its power under Rule 23(d) to invalidate the dispute resolution provision of the 2026 Terms, and prevent Lyft from sending similar communications in the future, absent Court approval. More fundamentally, the Court should not tolerate Lyft's apparent strategy of deploying a shifting array of unconscionable dispute resolution provisions to disrupt this litigation and avoid accountability to Plaintiff and the putative class.

**STATEMENT OF THE ISSUES TO BE DECIDED**

Whether the Court should (i) invalidate Lyft's updated "arbitration" clause contained in the 2026 Terms, as applied to Ms. Zigler and members of the putative class, and (ii) order Lyft to obtain Court approval of future communications regarding any new dispute-resolution framework it seeks

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

to apply to the putative class members' claims.

## BACKGROUND

### I. Summary of Plaintiff's Class Action Lawsuit.

Defendant Lyft provides on demand rideshare services through its mobile app. *See* ECF No. 1 ("Compl.") Lyft offers three tiers of service: "Standard," "Wait & Save," and "Priority Pickup." Compl. ¶ 12. Priority Pickup is the most expensive, and it is specifically advertised as both faster than Lyft's other offerings and as arriving at a precise time (*e.g.*, "in 3 min"). Compl. ¶¶ 12–13. Both representations are false: Priority Pickup rides often arrive late—far later than even the arrival times advertised for the lowest priced Wait & Save option—and not at the precise time consumers are promised by Lyft. Compl. ¶¶ 14, 17. While Lyft is apparently unable to account for the inherent variability in driver arrival times, detours, and other delays, it continues to market priority pickups to its riders (and charge premium prices) based on promised arrival times that Lyft knows will frequently prove false. Compl. ¶¶ 27–30.

Tracy Zigler is a frequent Lyft rider and a resident of Pennsylvania. Compl. ¶ 4. In September 2025, she paid for Priority Pickup but was left waiting at her location long past the advertised pickup time. *Id*. On January 20, 2026, she filed this action against Lyft. Plaintiff seeks relief under California law, and in the alternative, Pennsylvania law and the common law of unjust enrichment, on behalf of herself and all others similarly situated. Compl. ¶¶ 69–114.[1]

### II. The Claims in This Case Are Not Subject to Arbitration.

In her Complaint, Ms. Zigler alleged a non-exhaustive list of reasons that the so-called "arbitration" clause contained in Lyft's then-operative US Terms of Service, updated on December 13, 2024 (the "2024 Terms") is unenforceable. Compl. ¶¶ 44–55. Therefore Ms. Zigler's claims, and those of the putative class she represents, are not subject to arbitration and may proceed in this Court.

As a threshold matter, the Federal Arbitration Act ("FAA") does not apply to the

[1] California law applies to Plaintiff's and the class members' claims because Lyft created and disseminated the false statements at issue from its headquarters in California. Compl. ¶¶ 40–43.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

"Coordinated Claims" provision of the 2024 Term's so-called arbitration clause—which Ms. Zigler's claims here would trigger—because the inequitable and convoluted mass dispute resolution proceedings described in the 2024 Terms do not describe an "arbitration" within the meaning of the FAA. Compl. ¶¶ 44, 54. As the Supreme Court has recognized, enforcement of arbitration under the FAA has long presumed "traditional arbitral practice" or, phrased differently, "the norm of bilateral arbitration as [the Court's] precedents conceive of it." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 657–58 (2022); *accord Heckman v. Live Nation Entm't, Inc.*, 120 F.4th 670, 689–90 (9th Cir. 2024). The "Coordinated Claims" mass arbitration process imposed by Lyft's 2024 Terms—which includes onerous batching and bellwether provisions (Compl. ¶¶ 52–54)—falls outside the ambit of the FAA. *See Heckman*, 120 F.4th at 689 ("We agree with our concurring colleague that the FAA simply does not apply to and protect the mass arbitration model . . . .").

Accordingly, Lyft cannot compel arbitration under the FAA with respect to the 2024 Terms. This has various implications for this case, including that California state law barring class action waivers will apply because it is not preempted by the FAA. *Heckman*, 120 F.4th at 689 ("Because the FAA does not apply, the rule of *Discover Bank v. Superior Court*, . . . , governs the case before us . . . . In *Discover Bank*, the California Supreme Court held that class action waivers in consumer contracts of adhesion are unconscionable under California law.").

Further, separate and apart from whether the FAA applies, the dispute resolution clause in the 2024 Terms is unconscionable in multiple respects and therefore unenforceable. The clause as a whole works to indefinitely delay the resolution of consumers' claims. Comp. ¶¶ 44–55. The clause, *inter alia*, mandates an onerous and hyper-technical pre-dispute notice process, called a "Pre-Arbitration Process," that functions to significant delay the initiation of arbitration, and subjects all claims to "mandatory dismissal"—a penalty that may be judicially enforced—if the complex and unnecessary notice requirements are not perfectly followed (Compl. ¶¶ 46–51); imposes a mandatory, months-long waiting period before claims will be heard (Compl. ¶¶ 50–51); and, as noted above, imposes a batching and bellwether process if as few as twenty-six "similar" claims are filed. Compl. ¶¶ 52–54. This process, imposed under the "Coordinated Claims" section

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

of the arbitration clause, perpetually delays the resolution of individual arbitrations or, alternatively, bars consumers from initiating an individual claim at all. Compl. ¶¶ 52–54. The Ninth Circuit and this Court have repeatedly held that these types of procedures are unconscionable and unenforceable. *See generally Heckman*, 120 F.4th 670; *Rios v. HRB Digital LLC,* --- F. Supp. 3d ---, 2025 WL 3003768 (N.D. Cal. Oct. 27, 2025) (Chen, J.); *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) (Chen, J.), *aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025); *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022) (Chen, J.).

The clause also purports to waive the right of consumers to seek public injunctive relief in any forum (Compl. ¶ 45), which also renders it unenforceable. *See, e.g. Snarr v. HRB Tax Grp., Inc.*, 839 F. App'x 53, 54 (9th Cir. 2020) (affirming district court's denial of motion to compel arbitration because it "waive[d] the right to seek public injunctive relief in any forum"). It also contains an unconscionable limitation-of-liability provision. 2024 Terms § 15. Lyft's 2024 Terms' "arbitration" clause is unenforceable in its entirety (*i.e.*, the many unconscionable provisions cannot be severed), and Lyft "should not benefit from" its old Terms' "chilling effects" on potential users seeking redress. *See Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742, at *2 (9th Cir. Aug. 27, 2025).

## III. After Benefiting from the Chilling Effect of the 2024 Terms, Lyft Purports to Revise Its Terms of Service to Resuscitate the Unenforceable "Arbitration" Provision.

Lyft is apparently well-aware that its 2024 Terms are unenforceable because less than three weeks after Ms. Zigler filed her Complaint, Lyft attempted to update its Terms retroactively. According to an email Ms. Zigler received on Tuesday, February 17, 2026, these changes "took effect on February 9, 2026." Janove Decl. Ex. D. Users were not notified through a pop-up or any other mechanism in the Lyft app, Tracy Decl. ¶ 4; Janove Decl. ¶ 10, and the email subject line merely stated: "We updated our user agreements." Janove Decl. Ex. D. Specifically, Lyft "updated" its US Terms of Service. *Id.* Based on a sample reviewed by counsel, these emails appear to have been rolled out by Lyft over the Presidents Day holiday weekend (and Valentine's Day), beginning on Friday, February 13 and continuing through the following week. Janove Decl. ¶¶ 8–9.

Lyft's email to users claimed to "summarize[]" the "key changes" to Lyft's US Terms of Service. Janove Decl. Ex. D. Lyft mentioned arbitration only toward the end of the summary, after

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

highlighting the launching of Lyft's new "Teen Service." *Id.* The later sentence mentioning arbitration lacked any details about the changes, this litigation, or the fact that the changes purport to apply retroactively to already-accrued claims, merely stating: "Additionally, we've updated provisions related to the arbitration agreement between users and Lyft, communications information, pricing information in the Lyft app, and the automated processing of personal information." Janove Decl. Ex. D. The email then states that "your continued use of Lyft confirms that you have reviewed and agreed to our updated Terms of Service." *Id.*

These new terms purport to be mandatory for all Lyft users and to apply to all claims retroactively, regardless of when they arose. 2026 Terms § 17(a) ("These Claims include, but are not limited to, any dispute, claim or controversy, whether based on past, present, or future events . . ."). Lyft also did not provide Ms. Zigler and members of the putative class any mechanism to opt out; the Terms do not allow opt-outs for any claims except those related to drivers. 2026 Terms § 2.C. Thus, according to Lyft, as of February 9, 2026, the only way to avoid being bound by the new Terms is by never using the Lyft app again. *See* 2026 Terms § 17(a); *see also* Janove Decl. Ex. D (claiming that consumer's "continued use of Lyft" confirms assent to updated 2026 Terms).

A review of the US Terms of Service now listed on Lyft's website ("2026 Terms") shows that the "updates" to the arbitration agreement are actually quite substantial, and that many of them are designed to evade arguments raised by Plaintiff's complaint.[2] For instance, the 2024 Terms imposed a prolix and burdensome "Pre-Arbitration Process," with a full page of text devoted to describing the written notice of dispute consumers need to send before initiating any arbitration and the granular process consumers had to follow. 2024 Terms § 17(d). The entire "Pre-Arbitration Process" is struck from the new 2026 Terms. Gone is the perplexing rule that consumers must "email" Lyft a copy of a document with their "wet signature." Compl. ¶ 47. Gone too is the mandatory months-long waiting period which could indefinitely delay a filing of any arbitration if Lyft contended that the consumer's written notice was not "complete." Compl. ¶¶ 50–51. The new

[2] Exhibit B to the Janove Declaration is a redline comparison of the 2024 Terms and 2026 Terms. Exhibits C and D of the Janove Declaration are the 2024 Terms and 2026 Terms, respectively.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Terms also abandon the provision that allowed a court or a process arbitrator to “enjoin the filing or prosecution of an arbitration or assessment or collection of any arbitration fees” if any aspect of the “Pre-Arbitration Process” was not followed. Compl. ¶ 48.

Lyft also made changes to the 2024 Terms’ unconscionable batching and bellwether provision contained in its “Consolidated Claims” mass arbitration protocol. Compl. ¶¶ 52–54. If 25 or more similar claims were filed by “the same or coordinated counsel,” the 2024 Terms allowed only a bellwether stage of 40 individuals’ arbitrations to go first. Compl. ¶ 52. After that, all parties (including those that did not participate in the bellwether stage) had to engage in global mediation of all remaining cases. Compl. ¶ 53. If the mediation was unsuccessful, the remaining arbitrations would be batched into tranches of one hundred cases, and only one tranche of cases could be resolved at a time. Comp. ¶ 53. The effect of staging cases in phases of a batch of 40, then a global mediation, and then a batch of only one hundred cases at a time in repeated stages, would indefinitely delay the resolution of claims. Compl. ¶ 54.

Lyft apparently remains unwilling to allow consumers to pursue individual claims in a traditional arbitration process. The 2026 Terms keep the initial batch of 40 cases, followed by a mandatory global mediation. 2026 Terms § 17(h). The main difference is that, instead of staging further batches into only 100 cases to be heard at a time, the 2026 Terms require placing cases into batches of 100, each presided over by only one arbitrator, although the batches are theoretically allowed to be arbitrated concurrently. *See id.* Lyft undoubtedly plans to argue that, unlike the 2024 Terms, the 2026 Terms will not delay the arbitrations quite as much because multiple batches of 100 arbitrations can proceed after the initial bellwether stage of 40 cases and after the global mediation.[3]

While Lyft has altered the “Pre-Arbitration Process” and made a token effort to address the delay inherent in the batching and bellwether procedures, Lyft inserts other provisions into the 2026

[3] The new batching process also strips from users the right to object to the appointment of the arbitrator. 2026 Terms § 17(h) (mandating that “appoint[ment] of one arbitrator for each batch, whom AAA will appoint without soliciting input or feedback from any party”). So, individuals put into a batch of 100 have no say over who presides over their claim.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Terms that still allow it to delay proceedings indefinitely. For instance, many of the same former "Pre-Arbitration" requirements now appear in a new requirement for a detailed arbitration demand to be filed with the AAA, notwithstanding the AAA rules to the contrary. 2026 Terms § 17(e). And just as Lyft could endlessly delay claims under the 2024 Terms with arguments that the "Pre-Arbitration Process" had not been followed exactly, under the 2026 Terms Lyft can repeatedly delay resolution of claims by going to Court and arguing that its convoluted mass arbitration process is not being followed in any respect. *See id.* § 17(h) ("A court will have authority to enforce this Section 17(h), including to enjoin the filing, assessing or demanding fees for, administration of, or prosecution of arbitrations").[4] Similarly, the new Section 17(f)(8) provides that "a court will have authority to enjoin the imposition of fees by the AAA without penalty to the non-paying party if a party disputes the applicability of the arbitration agreement." 2026 Terms § 17(f)(8). The AAA is unlikely to administer the arbitration if the fees are not paid, so this preemptive authorization of non-payment offers yet another way to delay the resolution of claims. Lyft has also added a one-sided right to appeal, providing that "[i]f the amount in dispute exceeds U.S. $1,000,000, either party shall have the right to appeal via AAA's Optional Appellate Arbitration Rules." 2026 Terms § 17(f); *see Heckman*, 120 F.4th at 686 (holding as asymmetrically unconscionable a "right to appeal . . . functionally reserved for Defendants"); *see also* n.4, *supra*.

In addition, both the 2026 Terms and 2024 Terms contain inherently contradictory delegation and non-delegation provisions. They purportedly delegate to the arbitrator issues about scope, applicability, and enforceability, while also ensuring that the Court can decide these issues, when favorable to Lyft—either by delaying the need to pay filing fees, or asking a court to enforce its onerous batching and bellwether procedure. And the 2026 Terms now include a circular and

[4] This is just one of many ways in which the mass arbitration protocol is unfairly one-sided and only serves Lyft's interests. *See Pandolfi*, 2024 WL 4051754, at *7 ("While it is predictable that a player will have claims that will trigger the bellwether provision, it is far from clear that Avia would ever have claims that would trigger the provision."). The 2026 Terms acknowledge—but do not fix—the problem. The new version of § 17(h) adds a sentence that applies the protocol in the highly unlikely event that "[Lyft] initiate[s] disputes raising similar claims against 25 or more claimants represented by the same or coordinated counsel." This does not change the "built-in asymmetry" of the provision, for the reasons this Court explained in *Pandolfi*. *Id.*

illogical provision delegating to the arbitrator "whether the right to compel arbitration has been waived through litigation conduct." 2026 Terms § 17(h) (capitalization omitted). Presumably Lyft intends that this would allow it to seek the Court's intervention as often as it pleases, then invoke this provision to say that the claimant must initiate and pay for an arbitration if it wants to argue waiver so that the Court can also hear claims against Lyft.

Finally, the new terms retain Lyft's ban on public injunctive relief and PAGA claims, and limitation of liability provisions. 2026 Terms §§ 15 & 17(b)–(c). All of these are unconscionable and unenforceable.

## ARGUMENT

This Court should declare the dispute resolution clause in the 2026 Terms—including its delegation provision—unenforceable against Ms. Zigler and members of the putative class. In addition, this Court should require prior approval of future communications that may affect putative class members' rights in this litigation to ensure they are not misleading or coercive. This Court has the authority under Rule 23(d) to impose both conditions on Lyft's communications with users.

"The prophylactic power accorded to the court presiding over a putative class action under Rule 23(d) is broad; the purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular but to safeguard generally the administering of justice and the integrity of the class certification process." *O'Connor v. Uber Tech., Inc.*, 2014 WL 1760314, at *3 (N.D. Cal. May 2, 2014) (Chen, J.) ("*O'Connor II*"). And, as the Ninth Circuit recently explained, invalidating an updated arbitration clause that is imposed retroactively on an existing class action through coercive and misleading communications "is necessary to be consistent with FRCP 23 as it restores the opt-out process as the default." *Avery v. TEKsystems, Inc.*, 165 F.4th 1219, 1233 (9th Cir. 2026); *see also id.* ("Although we must consider 'the narrowest possible relief which would protect the respective parties,' that 'relief must still be consistent with the policies of FRCP 23'") (alteration omitted) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89 102 (1981).

Here, Lyft has unilaterally imposed an arbitration clause on the proposed class members, and without any notice or explanation of this class action. Lyft does not allow proposed class



JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

members to opt-out of its changed terms. Thus, according to Lyft's strategy, the only way for the proposed class members to participate in this class action is if they never use Lyft's app again. "Conditioning use of its App on accepting the arbitration provision is clearly an attempt to discourage participation in the class action." *See O'Connor II*, 2014 WL 1760314, at *8. Lyft has thus "subverted FRCP 23 by turning this typical Rule 23 opt-out class proceeding into an opt-in proceeding," and attempting to discourage participation. *Avery*, 165 F.4th at 1228. The Court should exercise its power and fulfill its duty under Rule 23(d) to ensure the fairness and integrity of this litigation by invalidating the new terms and requiring Court approval of future communications.

## I. Rule 23(d) Empowers this Court to Invalidate the February 2026 Terms and to Control Lyft's Communications with the Proposed Class Members.

As the Ninth Circuit recently made clear, in affirming longstanding practice by district courts in this Circuit, "FRCP 23(d) authorizes district courts to refuse to enforce arbitration agreements" imposed through misleading and coercive communications that interfere with the rights of putative class members in pending litigation. *Avery*, 165 F.4th at 1227; *see also McKee v. Audible, Inc.*, 2018 WL 2422582, at *5 (C.D. Cal. Apr. 6, 2018) (collecting cases where courts "exercised their discretionary power under [Rule] 23(d) to invalidate or refuse to enforce arbitration agreements" implemented during pending action that might impact putative class member's rights). This authority "directly follows U.S. Supreme Court precedent interpreting FRCP 23(d)." *Avery*, 165 F.4th at 1228.

Further, the "authority under Rule 23(d) to enjoin or control communications exists even prior to class certification," *McKee*, 2018 WL 2422582, at *5 (collecting cases); *see also Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) ("Defendants attempt to distinguish the cases relied upon, above, because they involve communications between certified classes and defense counsel, while in this case no class has been certified. . . . [But] the underlying rationale of these cases does not depend on the certification of the class.").

And as this Court has observed "it would be particularly inappropriate to insulate the subject communications from review under Rule 23(d) where, as here, there is a distinct possibility that the

arbitration provision and class waiver imposed by" Lyft "was motivated at least in part by the pendency of [this] class action lawsuit[] which preceded the new" 2026 Terms. *See O'Connor v. Uber Tech., Inc.*, 2013 WL 6407583, at *4 (N.D. Cal. Dec. 13, 2013) (Chen, J.) ("*O'Connor I*"). Here, as in *O'Connor I*, "[s]uspicion that the new … arbitration provision was intended by [Lyft] as a means to thwart existing class action litigation is heightened by the misleading nature of the communication and the unusually onerous procedures for opting out." *See id*. Of course, here, the only difference is that the 2026 Terms make opting-out not just onerous, but impossible.

**II. The Court Should Invalidate the February 2026 Terms.**

"[M]ultiple courts have found that a party's attempt to introduce new arbitration provisions while a class action is pending is inappropriate where the new arbitration agreement might implicate potential class members' rights or where notice of the potential effects of the new arbitration provisions is insufficient." *Snarr v. HRB Tax Grp., Inc.*, 2021 WL 4499415, at *7–8. (N.D. Cal. May 13, 2021) (collecting cases and observing that "courts have uniformly found that such conduct is unfair to putative plaintiffs and inappropriate"). These bases for invalidating Lyft's 2026 Terms exist here. *First*, Lyft's 2026 Terms are an obvious attempt to negate the rights of potential class members. *Second*, Lyft provided no notice of the potential effects of the new arbitration provisions on putative class members' rights.

In other words, Lyft's communications imposing new dispute resolution terms without mentioning their potential effect on claims in this litigation are clearly "misleading," and will likely have a "harmful impact on potential class members." *Avery*, 165 F.4th at 1231. The Court should therefore refuse to enforce them. *See McKee*, 2018 WL 2422582, at *5 (collecting cases where courts "exercised their discretionary power under [Rule] 23(d) to invalidate or refuse to enforce arbitration agreements" implemented during a pending action); *Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1062 (W.D. Wash. 2019) (noting that "[m]any courts have found that a defendant's attempt to foist a new arbitration provision on putative class members is an improper communication") (collecting cases).

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

### A. The 2026 Terms Threaten Putative Class Members' Rights to Pursue Claims in this Litigation.

Lyft's previous arbitration provision is so patently unconscionable that Lyft chose to make substantial amendments rather than try to compel its enforcement. Because the 2024 dispute resolution clause was unenforceable, potential class members subject to that agreement had the right to be part of this action and have their claims decided by the Court, as Plaintiff explained in her complaint. *See* Compl. ¶¶ 48–54.

Lyft's attempt to introduce new dispute resolution provisions that bar putative class members from participating in this litigation clearly risks interference with those rights and will have a harmful impact on potential class members. *Avery*, 165 F.4th at 1231; *Jimenez v. Menzies Aviation Inc*, 2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015) ("Given that the ADR Policy applied to putative class members' existing class claims and that Menzies sought to compel arbitration of a subsection of those claims, there is little question that the ADR Policy risked interference with putative class members' rights.").

This case is analogous to *McKee* and *Snarr*, where the courts invalidated attempts to impose a new arbitration clause to replace a pre-existing clause that was deemed unenforceable in class action litigation. *McKee*, 2018 WL 2422582, at *6; *Snarr*, 2021 WL 4499415, at *7 ("Defendant's Renewed Motion to Compel is founded on an attempt to sidestep the Court's First Order Denying Arbitration by inducing Plaintiff and other members of the putative class into signing away their right to have this action heard in court without informing them of the implications…."). It is true that Lyft abandoned the 2024 Terms without even trying to convince the Court to enforce them. But it does not follow that Lyft should be allowed to benefit from the chilling effect of its prior terms and then impose alternate terms on putative class members, through misleading communications that fail to disclose their intended effect on pending claims, to thwart their claims.

Further, Rule 23(d) requires only a finding of "potential interference" with the rights of putative members of the class. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *accord O'Connor I*, 2013 WL 6407583 at *5. Here, there is a clear record establishing that the threat of interference is "palpable" because Lyft's 2026 Terms "purport[] to contractually bar [putative class members]

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

from participating and benefiting from" participating in this case. *See id.* at *6.

**B. Both the 2026 Terms and the Single Email Advising Putative Class Members of Those Terms Are Misleading and Coercive Within the Meaning of Rule 23(d).**

Lyft's communications concerning the 2026 Terms were also misleading to putative class members because they failed to even mention this litigation or inform them of how the 2026 Terms would affect their rights. As noted above, Lyft users were notified of the 2026 Terms through emails that started to be sent nearly a week after those terms purportedly took effect, with emails sent around a holiday weekend (Presidents Day). Janove Decl. ¶¶ 8–9. Lyft never deployed a pop-up or other in-app notification of the purported update to its US Terms of Service. Zigler Decl. ¶¶ 4–5; Janove Decl. ¶ 10. Moreover, the email failed to explain any of the changes made to the arbitration provision, stating only that "we've updated provisions related to the arbitration agreement between users and Lyft," without explaining the nature of the updates or how they might affect claims in this action.

Courts regularly conclude that this type of notice is misleading and inadequate. *See*, *e.g.*, *Snarr*, 2021 WL 4499415 at *8 ("Defendants did not inform Plaintiff or any of the other putative class members that signing such an agreement would alter their rights in this pending lawsuit but instead buried the changes in paragraphs of legalese that would be difficult for a layperson to interpret."); *McKee*, 2018 WL 2422582, at *6 ("Several courts have found that a lack of notice of the present suit may render such communications misleading."); *Jimenez* 2015 WL 4914727, at *6 ("Menzies did not inform Mijos or other putative class members about this action, much less advise them of the ADR Policy's impact on their rights in this case."); *Balasanyan v. Nordstrom, Inc.*, 2012 WL 760566, at *3 (invaliding arbitration agreement "introduced during the pendency of litigation" without "alert[ing] putative class members of the litigation" and rejecting argument that communication "cannot possibly constitute a misleading communication about the litigation" because "the lawsuit was never mentioned"); *In re Currency Conversion Fee*, 361 F. Supp. 2d at 252–55 (similar).

In line with the above authorities, this Court has required that defendants give "clear notice" of *both* the arbitration provision *and* "the effect of assenting to arbitration" on consumers' ability to

litigate when communicating with members of a putative class. *O'Connor I*, 2013 WL 6407583, at *7. Lyft's failure to include either piece of information when it "updated" putative class members about the 2026 Terms is "misleading" within the meaning of Rule 23(d). *See id.* [5]

*Snarr*, which addressed similar circumstances, is instructive. *Snarr*, 2021 WL 4499415. There, the "[d]efendants promulgated a new arbitration provision while th[e] class action litigation was pending and after their initial motion to compel arbitration had been denied." *Id.* at *9. Similarly, here Lyft updated its arbitration clause after Plaintiff's complaint alleged specific reasons why any motion to compel would be denied under Ninth Circuit precedent, and those updates focused almost entirely on the specific problematic provisions identified in Ms. Zigler's complaint. As in *Snarr*, Lyft's "communication with Plaintiff and putative class members was unilateral and unclear." *Id*. Lyft provided only a half-a-sentence about an updated arbitration clause—without any mention of what changed or how it would affect the rights of participating in this putative class action. Moreover, as in *Snarr*, there is no way to "opt-out" from the arbitration agreement. *Id.*

Further, "[a] unilateral communications scheme," like the one Lyft has employed, merits extra scrutiny because it "is rife with potential for coercion." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005); *see also McKee*, 2018 WL 2422582 at *8. This is especially so here, where Lyft "can freeze a customer out of using its product" unless they accept the new 2026 Terms, and may even be holding customer funds as pre-paid "Lyft cash" that customers cannot spend without access to the Lyft application. Janove Decl. ¶ 11; *see McKee*, 2018 WL 2422582 at *7 (noting that where "current members who did not want to agree to waive class action rights would be forced to forfeit whatever credits they had" the choice to accept terms

---

[5] Lyft's unilateral updates to the terms are also unenforceable from a contract law perspective. Unilateral modifications of an arbitration clause will not apply retroactively unless they provide "effective notice to accountholders as to the modification's effect on [class] claims." *Ash v. Axos Bank*, 2024 WL 4195313, at *4 (S.D. Cal. Sept. 13, 2024); *see also id.* at *3 (collecting cases). In *Ash*, mere notice about a "Change in Terms" that was "silent as to whether [Defendant]'s modifications would affect already accrued or known claims" did not "provide[] effective notice[.]" "California courts have consistently reasoned that the implied covenant of good faith and fair dealing prevents a party from modifying an arbitration agreement once a claim has accrued or become known to it" and have invalidated purported modifications for lack of assent. *Id.* at *3 (cleaned up); *see, e.g.*, *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425 (Ct. App. 2012).



JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

or end the relationship "was inherently coercive because it forced . . . members to give up a paid-for benefit and end an ongoing business relationship in order to refuse to waive their class action rights").

This Court has also recognized the "inherently coercive qualities" of the "online marketplace," particularly when unilaterally offered terms "can be easily accepted ('just swipe left to agree'), but are more onerous to reject." *See McKee*, 2018 WL 2422582 at *7 (discussing this Court's rulings in *O'Connor I* and *O'Connor II*). The same coercion is present here—and then some; Lyft has imposed the new terms merely by posting them on its website (i) without any affirmative action required to manifest consent and (ii) without any way to opt-out of the 2026 Terms while continuing to use Lyft's services. "Conditioning use of its App on accepting the arbitration provision is clearly an attempt to discourage participation in the class action." *See O'Connor II*, 2014 WL 1760314, at *8.

Finally, as the Ninth Circuit observed in *Avery*, "the timing of [the] roll out added to the confusion" because it "occurred during the holiday season when employees are less likely to be paying close attention to email." 165 F.4th at 1232. Defendants could have emailed about the new terms at any time, but chose to do it around a holiday weekend when people were less likely to notice. *See* Janove Decl. ¶¶ 8–9.

For all these reasons, the Court should enjoin any enforcement of the 2026 Terms against Ms. Zigler or the putative class. *See, e.g.*, *Snarr*, 2021 WL 4499415 at *8 (holding arbitration agreement "null and void and unenforceable as to all putative class members in this suit").

## III. The Court Should Impose Strict Requirements Over Lyft's Future Communications with Proposed Class Members Regarding Any Future Dispute Resolution Terms.

As courts in this District and others have long held, "when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005); *see, e.g.*, *Snarr*, 2021 WL 4499415 at *6–7; *McKee*, 2018 WL 2422582 at *7–8; *Balasanyan, Inc.*, 2012 WL 760566 at *4 (relying on "the reasoning of *In re Currency Conversion*" to enjoin attempted alterations of pre-existing arbitration terms).

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Courts regularly impose narrowly tailored limitations on defendants' communications with putative class members, including requiring that they provide a reasonable mechanism to allow putative class members to opt-out of any new terms that would affect their rights as class members. The Court should issue an order under Rule 23(d) restricting Lyft's ability to unilaterally impose new dispute resolution procedures on putative class members and requiring clear communications so putative class members can make informed decisions about their rights. *See, e.g., O'Connor I*, 2013 WL 6407583, at *7 (requiring communication to contain a "clear notice of the arbitration provision, the effect of assenting to arbitration on their participation in this lawsuit, and reasonable means of opting out of the arbitration provision within 30 days of the notice"); *Pandolfi v. AviaGames,Inc.*, Case No. 232-cv-05971, ECF No. 53 (N.D Cal. Dec. 21, 2023) (Chen, J.) ("[T]he Court adheres to the framework laid out in its prior decision in [*O'Connor I*]."); *Snarr*, 2021 WL 4499415, at *9 ("Defendants may promulgate a new arbitration provision, but they must include clear notice of this lawsuit and an opt-out provision. Any such communication must be submitted to the Court for prior approval."); *see also Dominguez v. Better Mortg. Corp.*, 88 F.4th 782, 793 (9th Cir. 2023) (affirming Rule 23(d) injunction on "communicating with employees about wage and hour matters absent court approval," observing that the defendant "remains free to communicate about the lawsuit and issues central to it" but "needs to communicate in writing, and it needs prior court approval, which is reasonable here"). This Court should also require that putative class members have the option to opt out of any new terms while continuing to use and access the Lyft app. *See O'Connor II*, 2014 WL 1760314, at *8 (conditioning use of service on accepting new arbitration clause is coercive and "an improper communication" subject to regulation by the court under Rule 23(d)); *McKee*, 2018 WL 2422582 at *6 (reaching similar conclusion regarding the loss of pre-paid benefits).

In particular, Plaintiff seeks an order that, if Lyft updates its Terms yet again and seeks to apply them to the putative class, Lyft must provide court-approved notice to class members that includes accurate and complete information regarding this action, the impact of the new provision on putative class members' rights in this lawsuit, and a reasonable and effective means of opting-

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 | 500 7th Ave., 8th Fl. New York, NY 10018 | 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
JANOVE PLLC

out of the new terms. This narrowly tailored order will not prevent Lyft from engaging in regular business communications or, indeed, from communicating with putative members of this class on most subjects. Rather, it will only require Court supervision to prevent Lyft from interfering with the putative class members' rights in this proceeding, as it has already attempted to do.

**IV. Lyft's Supposed "Delegation" Clause Does Not Prevent the Court from Ordering Relief Under Rule 23(d).**

Lyft's inclusion of confusing and conflicting delegation provisions in the 2026 Terms does not change the above analysis. As with the other problematic aspects of the 2026 Terms, the delegation clause provisions purport to affect the rights of class members and were communicated to putative class members through a misleading and coercive communication. The email Lyft sent to its users did not even mention the existence of a delegation clause, let alone explain how the alterations to the delegation provisions could affect the class claims at issue here. In addition, the delegation provisions in the 2026 Terms (and the 2024 Terms) are unconscionable and unenforceable for many of the same reasons as the larger arbitration clause. Among other reasons, they would indefinitely delay the initiation of individual proceedings, leading to the imposition of batching and bellwether requirements as part of a comprehensive effort by Lyft to impose arbitration as an "inferior forum." *See MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022) (Chen, J.).

As the Ninth Circuit explained in *Avery*, in invalidating an updated arbitration clause and rejecting an argument that the Rule 23(d) dispute could be delegated to an arbitrator, "Plaintiffs did challenge the validity of the delegation provision at issue through their challenge to the entire Agreement under FRCP 23(d)." 165 F.4th at 1233 (citing *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024)). The same is true here. Plaintiff specifically challenges the delegation provisions in the 2026 (and 2024) Terms as unconscionable, and also asks the Court to invalidate them under Rule 23(d), for the reasons stated above. In addition, delegating Plaintiff's Rule 23(d) challenge to the arbitrator would crystallize the Ninth Circuit's concern in *Avery* that an updated arbitration clause would turn the class action "opt out" process on its head. *See* 165 F.4th at 1233. Rather than being presumptively included in the class with an opportunity to opt-out, each putative class member

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

would have to undergo Lyft's labyrinthine mass-arbitration bellwether and batching process just to even argue that it should have a chance to participate in this class action.

Further, the 2026 Terms contain multiple conflicting provisions on whether an arbitrator or a court decides arbitrability issues, and therefore there is no "clear and unmistakable intent to delegate arbitrability to the arbitrator." *Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Cir. 2015). The 2026 Terms initially state that "all disputes concerning the arbitrability of a claim (including disputes about . . . applicability, enforceability . . . shall be decided by the arbitrator." 2026 Terms § 17(a). But the 2026 Terms later provide for various exceptions, including that "a court will have authority to enjoin the imposition of fees by the AAA without penalty to the non-paying party if a party disputes the applicability of the arbitration agreement," 2026 Terms § 17(f)(8), and that a court would oversee the enforceability of the Terms' novel bellwether and batching mass arbitration protocol. *See id.* § 17(h) ("[a] court will have authority to enforce this Section 17(h), including to enjoin the filing, assessing or demanding fees for, administration of, or prosecution of arbitrations").

As a result, "there is an inherent tension" in the 2026 Terms, the language of which does not amount to "'clear and unmistakable evidence' of the parties' intent to delegate arbitrability issues, the arbitration agreement here leaves open the possibility that a court could decide such issues too." *In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 WL 6391477, at *6 (N.D. Cal. Sept. 30, 2023); *see also Ireland-Gordy v. Tile, Inc.*, 760 F. Supp. 3d 946, 959 (N.D. Cal. 2024) (conflicting provisions "d[id] not clearly and unmistakably delegate questions of arbitrability to an arbitrator, it is for the Court to resolve Plaintiffs' challenge to the enforceability of the arbitration agreement").

It appears that Lyft's intention may be to "delegate" every issue that could be raised by claimants to an arbitrator, while reserving for itself the ability to seek a court ruling on every aspect of the arbitration, although this is not clearly stated. This is obviously unconscionable and renders the delegations unenforceable. *See Pandolfi*, 2024 WL 4051754, at *7 (noting that asymmetry is a relevant consideration in unconscionability analysis and finding delegation clause unconscionable).

## CONCLUSION

For the above reasons, Plaintiff respectfully requests that this Court (1) invalidate Lyft's

updated "arbitration" clause contained in the 2026 Terms, as applied to Ms. Zigler and members of the putative class, and (2) order Lyft to submit any new or modified Terms that would affect the claims, procedures, and/or remedies at issue in this lawsuit and any communications for transmitting them to this Court and to obtain prior approval before they are disseminated, as described more fully in the proposed order submitted with this motion.

DATED: February 20, 2026

Respectfully submitted,

By: /s/ Raphael Janove
Raphael Janove

**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
500 7th Avenue, 8th Fl.
New York, NY 10018
Telephone: (646) 347-3940

Liana Roza Vitale (SBN 348772)
liana@janove.law
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

*Attorneys for Plaintiff and the Proposed Classes*