UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ZIGLER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LYFT, INC., <br><br> Defendants. | Case No.  26-cv-00575-EMC <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br><br> Docket No. 46 |

The instant suit was initially filed by a single plaintiff: Tracy Zigler.  She sued Lyft, Inc., a rideshare company, asserting, in essence, that it engaged in false advertising because she paid a premium for a predictable, faster pickup time but Lyft failed to provide the service at the time advertised.  After Lyft moved to dismiss for lack of standing, Ms. Zigler filed an amended complaint in which she (1) adjusted the factual predicate for her suit and (2) added two new plaintiffs to the case, *i.e.*, Lucy Ye and Brian Robey.  The amended complaint was timely filed pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) (providing that a party may amend its pleading once as a matter of course "if the pleading is one to which a responsive pleading is required, . . . 21 days after service of a motion under Rule 12(b), (e), or (f)").  Lyft responded by moving to dismiss – again for lack of standing.  In the alternative, Lyft moved to compel arbitration.  The Court temporarily vacated the briefing and hearing schedule for the motion to compel because Lyft had filed the motion to compel in the alternative and because Plaintiffs had indicated they needed discovery to oppose the motion to compel.  See Docket No. 59 (order).  This order, therefore, focuses only on the motion to dismiss.

/ / /

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** the motion to dismiss.

## I.   FACTUAL & PROCEDURAL BACKGROUND

A.   Original Complaint

In the original complaint (a putative class action), there was only one named plaintiff: Ms. Zigler.  In the pleading, Ms. Zigler alleged, in essence, that Lyft engaged in false advertising with respect to the "Priority Pickup" service:

> Customers pay a premium for "Priority Pickup," which advertises a certain, predictable pickup time and promises to be fastest ride option, but do not receive the benefit of this bargain.  Priority Pickups frequently fail to arrive at the time Lyft advertises.  Moreover, their arrival can by anything but 'fast', sometimes taking the same amount of time, or even longer than, Lyft's "Standard" option.  Each of these failures mean that many customers pay a premium price for benefits that they never receive.

Compl. ¶ 2.

According to Ms. Zigler, she paid for a Priority Pickup in September 2025, but in spite of paying the premium, "her ride arrived late, leaving her waiting at her location long past the advertised pickup time."  Compl. ¶ 4.

Based on, *inter alia*, the above allegations, Ms. Zigler asserted claims for: (1) violation of California Business & Professions Code § 17200; (2) violation of California Business & Professions Code § 17500; (3) violation of the California Consumers Legal Remedies Act ("CLRA"); (4) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law[1]; and (5) unjust enrichment.

In response to the complaint, Lyft filed a motion to dismiss based on lack of standing.  It argued that Ms. Zigler lacked standing because she had

> never purchased a Priority Pickup ride.  As explained in an accompanying declaration of a Lyft data scientist, Lyft maintains detailed ride data for the users of its Platform, which include the type of ride initially requested and ultimately purchased for each ride.  Lyft's records of Zigler's account show that Zigler has been a user of Lyft's Platform since 2014.  Since Priority Pickup was

---

[1] Ms. Zigler is a resident of Pennsylvania.  *See* Compl. ¶ 4.

2

> introduced as a ride option in October 2020, she has requested 48 rides (between May 2021 and December 2025) and taken 43 – yet not one of those rides was a Priority Pickup ride. Zigler's account records show that Zigler has never requested or paid for the Priority Pickup option for any ride – in September 2025 (as the complaint alleges) or otherwise.

Docket No. 18 (Mot. at 1) (emphasis omitted).

Ms. Zigler responded to the motion to dismiss by filing a first amended complaint ("FAC"). *See* Docket No. 23 (FAC); *see also* Fed. R. Civ. P. 15(a)(1)(B) (allowing a plaintiff to amend as a matter of right within 21 days after service of a Rule 12(b) motion). She also filed a brief "opposition" to the motion to dismiss, stating that, in light of the amended complaint, the motion to dismiss (directed at the original complaint) was moot. *See* Docket No. 26-2 (Opp'n at 1). Lyft then filed a reply, challenging Ms. Zigler's standing to file the FAC, *see* Docket No. 35 (reply), and Ms. Zigler filed a proposed sur-reply. *See* Docket No. 36-1 (proposed sur-reply).

On the same day that Ms. Zigler filed her proposed sur-reply, Lyft moved to extend the time to respond to the FAC. *See* Docket No. 38 (motion). The Court granted the motion. In its order, the Court directed that any "any renewed response by Defendant shall direct its attention to the allegations contained in the FAC" because the FAC had superseded the original pleading. Docket No. 42 (Order at 1).

B.    First Amended Complaint

In the FAC, there are now three named plaintiffs: Ms. Zigler plus Ms. Ye and Mr. Robey. Plaintiffs now assert false advertising based on not only Lyft's Priority Pickup service but also its Standard service. They allege as follows:

> 2.    Many Lyft customers pay a premium price for a priority pickup time, either: (a) the highest price for the "Priority Pickup" time – which is always presented as the fastest option and as arriving at a predictable pickup time; or (b) a premium price for a "Standard" ride – which is presented as arriving at a predicable pickup time and faster than a "Wait & Save" (although not as quickly as a Priority Pickup).

> 3.    In both instances, customers pay more for the promise of a predictable and faster pickup. Unfortunately, Lyft fails to deliver. First, Priority Pickups frequently fail to arrive at the time Lyft advertises. Moreover, their arrival can by anything but 'fast', sometimes taking the same amount of time, or even longer than, Lyft's "Wait & Save" option. Second, the same is true as to Standard fares – Lyft advertises them as

*United States District Court*
*Northern District of California*

3

predictable and arriving sooner than Wait & Save, but they frequently take as long or much longer than a Wait & Save ride would to arrive.  Each of these failures mean that many customers pay a premium price for benefits that they never receive.

FAC ¶¶ 2-3.

According to Plaintiffs, they each paid a premium on Priority Pickup and/or Standard but Lyft failed to provide a ride on the terms advertised.

- Ms. Zigler "paid for a ride that Lyft marketed as faster and with a more predictable arrival time in September 2025, and on other occasions.  Despite paying a premium price to be picked up by a certain time, her rides arrived long past the advertised pickup time.  For example, on November 7, 2025, Plaintiff Zigler chose a Standard ride marketed as arriving in six minutes and paid a corresponding price premium for a Standard ride which was more expensive than the simultaneously offered Wait & Save.  Instead of receiving the faster and more predictable ride Lyft promised and charged her for, Plaintiff Zigler waited significantly longer for her ride to arrive."  FAC ¶ 5.  Ms. Zigler no longer asserts (as she did in her original complaint) that she used the Premium Pickup service.

- In contrast, Ms. Ye – "[o] multiple occasions within the past year [–] . . . paid Lyft for a Priority Pickup ride.  Despite paying a premium price to be picked up faster, these rides often took longer than advertised to arrive.  For example, on October 2, 2025, Ms. Ye took a Lyft to the airport and was in a rush to make her flight.  The Priority Pickup ride was advertised as arriving in three minutes but took ten minutes to arrive.  On Jan 6, 2026, she again ordered a Lyft ride home from the airport after a long day of travel.  She ordered a Priority Pickup to get home as soon as possible.  That ride was advertised as coming in five minutes but actually took around ten minutes to arrive."  FAC ¶ 6.

- Finally, Mr. Robey "took several Priority Pickup rides to or from the airport" between January 2024 and October 2025.  FAC ¶ 7.  "Despite paying a premium to be picked up faster, his rides arrived long past the advertised pickup time.  For

example, on Oct[ober] 8, 2024, Mr. Robe[y] ordered a Priority Pickup to the airport and recalls the ride arriving so late that he thought he would miss his flight. Because of this delay, Mr. Robey contemplated canceling his Lyft ride all together [sic]. On several other trips from the airport, Mr. Robey recalls waiting up to ten minutes past the actual advertised pickup time for his Priority Pickup rides." FAC ¶ 7.

Based on, *inter alia*, the above allegations, Plaintiffs assert the following claims: (1) violation of § 17200; (2) violation of § 17500; (3) violation of the CLRA (false advertising); (4) violation of the CLRA (unconscionable Terms of Use); (5) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; (6) violation of New York General Business Law § 349[2]; (7) violation of New York General Business Law § 350; (8) unjust enrichment; (9) declaratory relief under California law (regarding Lyft's Terms of Use, in particular, its arbitration provision ); and (10) declaratory relief under federal law (regarding Lyft's Terms of Use, in particular, its arbitration provision).

## II.   DISCUSSION

### A.   Legal Standard

In the pending motion, Lyft asks the Court to dismiss the FAC based on lack of standing. Standing is a matter of subject matter jurisdiction. *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017) (noting that a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction includes lack of standing). Where a defendant makes a Rule 12(b)(1) jurisdictional attack, it may be facial or factual in nature. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

/ / /

---

[2] Mr. Robey is a New York resident.

5

United States District Court
Northern District of California

In the instant case, Lyft has made a factual attack on jurisdiction. *See* Mot. at 5 (stating that "Lyft is mainly raising here" a factual challenge).

> "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."

*Id.* "[W]here a factual motion to dismiss is made and only written materials are submitted for the court's consideration (*i.e.*, no full-on [evidentiary] hearing is held), a plaintiff need only establish a prima facie case of jurisdiction." *Staley v. Gilead Scis., Inc.*, No. 19-cv-02573-EMC, 2022 U.S. Dist. LEXIS 71853, at *29-30 (N.D. Cal. Apr. 11, 2022) (citing S*ociete de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1985)); *cf. Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285-86 (9th Cir. 1977) (adopting that approach where personal jurisdiction is at issue).

B.    *Lierboe*

Lyft seeks dismissal of the entire case on the basis that Ms. Zigler lacked standing at the outset of the case – *i.e.*, when the initial complaint was filed – and thus was not entitled to file an amended complaint as an attempt to cure the jurisdictional defect of the initial complaint. Lyft emphasizes that Ms. Zigler's original complaint was based on false advertising with respect to the Priority Pickup service alone. When Lyft provided evidence that Ms. Zigler had never used that service, Ms. Zigler did not dispute such in any way. Instead, she filed an amended complaint – (1) adding two new plaintiffs who purportedly did use the Priority Pickup service and (2) including new allegations that Lyft engaged in similar false advertising with its Standard service, which Ms. Zigler did use. But according to Lyft, because Ms. Zigler did not have standing at the time she filed suit, she had no authority to amend.

Lyft's argument is based on the Ninth Circuit's decision in *Lierboe v. State Farm Mutual Automobile Insurance Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003). In *Lierboe*, the plaintiff had an auto insurance policy with the defendant State Farm that covered a Jeep. She sustained serious

6

injuries in a car accident involving the Jeep, and her medical bills exceeded the policy cap. She therefore sought additional coverage under another State Farm auto insurance policy. This policy had as the named insured the plaintiff's closely held business and covered a Dodge pickup. State Farm denied coverage under the second policy, and so the plaintiff filed suit. Specifically, the plaintiff filed a class action, "seeking payments for insureds whose claims State Farm had limited by refusing to 'stack' more than one policy." *Id.* at 1020. The plaintiff's claims included, *inter alia*, breach of contract and bad faith.

The district court granted class certification. However, it also certified to the Montana Supreme Court two questions of state law. The Montana Supreme Court ultimately held that the plaintiff did not have a valid stacking claim because her case involved coverage, and not stacking. *See id.* at 1021-22 (taking note of Montana Supreme Court's statement that the plaintiff's "'accident in her Jeep was covered only by a *single* policy [and so] there was no second covering policy to stack'") (emphasis added).

The Ninth Circuit held that, because of the Montana Supreme Court's ruling, it was premature to assess whether the requirements for class certification had been met: the plaintiff was not in the subject class, which meant that she lacked standing, and therefore she could not seek relief for the class. *See id.* at 1022 (also stating that, if the plaintiff "has no stacking claim, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail"). The Ninth Circuit thus vacated the district court's certification of the class with the plaintiff as the class representative. *See id.* at 1023.

The Ninth Circuit then turned to

> the *unusual procedural dilemma* [of] whether the suit must be dismissed without more, or if other proceedings may follow under which it may be possible that the suit can proceed as a class action with another representative, subject to the district court's assessment whether a substitute representative is adequate for Rule 23 class purposes.

*Id.* (emphasis added). Although the court was "mindful of judicial economy considerations, especially because an important procedural issue in this proposed class action has already been briefed," it concluded that dismissal was warranted.

7

> We are persuaded by the Seventh Circuit's approach in an analogous case, *Foster v. Center Township of LaPorte County*, 798 F.2d 237, 244-45 (7th Cir. 1986), which held that where the sole named plaintiff "*never had standing*" to challenge a township's poor-relief eligibility guidelines, and where "she never was a member of the class she was named to represent," the case must be remanded with instructions to dismiss.

*Id.* (emphasis added). In a footnote, the Ninth Circuit added that the plaintiff did not have, at the outset, a viable claim: "If [the plaintiff] *initially* had a viable stacking claim that *later became moot*, then our law in an appropriate case would permit substituting proper class representatives to allow the suit to proceed." *Id.* at 1023 n.6 (emphasis added).

Since *Lierboe*, the Ninth Circuit has issued several decisions reaffirming its holding, specifically, as applied to situations where a class had been certified but subsequently the named plaintiff/class representative was found not to have standing. *See, e.g.*, *Mahboob v. Educ. Credit Mgmt. Corp.*, No. 21-56038, 2022 U.S. App. LEXIS 29941, at *2-3 (9th Cir. Oct. 27, 2022) (after Ninth Circuit vacated class certification and remanded to the district court, holding that district court did not err in concluding that plaintiff failed to show he was a member of the class and therefore lacked authority to add a new plaintiff to the case); *NEI Contr. & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) (stating that, under *Lierboe*, "when a class is certified and the class representatives are subsequently found to lack standing, the class should be decertified and the case dismissed"); *Moreno v. Autozone, Inc.*, 410 Fed. Appx. 24, 25 (9th Cir. 2010) (concluding that, "[b]ecause [the plaintiff] never had a cognizable late paycheck claim against [the defendant], 'she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail'; [a]s a result, 'certification of the class with [the plaintiff] as its representative must be vacated,' and substitution of a new named plaintiff is not required"). In addition, the Ninth Circuit has applied *Lierboe* to other situations where the lack of standing was found well into the litigation. *See, e.g.*, *Sullivan v. Univ. of Wash.*, No. 23-35313, 2023 U.S. App. LEXIS 32906, at *5 (9th Cir. Dec. 13, 2023) (holding that plaintiffs lacked standing to appeal preliminary injunction; "[b]ecause [both plaintiffs] lacked standing 'from the outset' of the litigation, the class action must be dismissed without allowing for the substitution of another class representative"); *Stanford v. Home Depot USA, Inc.*, 358 Fed. Appx. 816, 819 (9th

United States District Court
Northern District of California

8

United States District Court
Northern District of California

Cir. 2009) (in early summary judgment proceedings – held after case was removed to federal court – concluding that plaintiff lacked standing; "[s]ince he had no injury when this action was brought, plaintiff did not satisfy Article III standing requirements," and, "since plaintiff had no live claim and therefore no standing when the case was first brought, this is not a situation in which the case can continue with a putative class member substituted as the named plaintiff").

Lyft argues that the instant case is analogous to *Lierboe*.  That is, according to Lyft, *at the outset*, Ms. Zigler never had a viable claim for false advertising based on the Priority Pickup service because she never used that service, and, therefore, she never had standing; as a result, Ms. Zigler can neither amend to assert a new claim for false advertising based on the Standard service, nor can she add in new class representatives.  Lyft maintains that this is so even though the amended complaint was filed at the outset of the case prior to any merits-based motions or rulings and even though the amendment was timely filed pursuant to Rule 15(a)(1)(B).

In response to Lyft's reliance on *Lierboe*, Plaintiffs primarily make two arguments:

(1) Contrary to what Lyft asserts, Ms. Zigler *did* have standing when she first filed suit: she paid a premium for a more predictable, faster ride from Lyft, and the fact that she made a mistake by claiming that the premium she paid was for the Priority Pickup service rather than the Standard service should not be held against her.  In other words, Ms. Zigler's amendment of the original complaint did not fundamentally change the nature of the suit but rather served to clarify or refine it.

(2) Even if Ms. Zigler did more than just clarify or refine her suit in the amended complaint, *Lierboe* is distinguishable (and thus has no application to the instant case) and/or has been overruled by the Supreme Court in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025).

The Court agrees with Plaintiffs.  First, Ms. Zigler had standing to sue Lyft at the time she filed her original complaint because the gist of her original complaint was that she had paid a premium to get a faster, more predictable ride, and Lyft did not deliver.  To be sure, in her original complaint, Ms. Zigler claimed that she paid a premium because of Priority Pickup rides only, not Standard ones.  Furthermore, in the original complaint, Ms. Zigler used Standard rides as the

United States District Court
Northern District of California

benchmark comparison to Priority Pickup rides. *See, e.g.*, Compl. ¶ 2 (alleging that the arrival of a Priority Pickup ride "can be anything but 'fast', sometimes taking the same amount of time, or even longer than, Lyft's 'Standard' option"). The amended complaint now uses "Wait & Save" as the benchmark. Nevertheless, Ms. Zigler did not fundamentally change the basic nature of her suit with the amended complaint. She thus had standing to file the initial complaint and the authority to file the amended complaint.

Because Ms. Zigler did have standing at the time she filed her original complaint, Lyft's reliance on *Lierboe* is essentially a moot point. However, even if the Court assumes Ms. Zigler did materially and fundamentally change the nature of her suit with the amendment, Lyft still would not prevail. Lyft's argument is predicated on an overreading of *Lierboe*. Under Lyft's interpretation of the case, if at any point in a lawsuit, it is discovered that a plaintiff did not have standing at the time she filed the action, then the court does not have jurisdiction, and any and all proceedings that have taken place are essentially void. As a hypothetical, assume a plaintiff did not have standing at the time she filed her original complaint. However, three days later, she amended her complaint by adding another plaintiff to the case who undisputedly did have standing. Under Lyft's position, if the case proceeded through litigation with the second plaintiff who did have standing and even went to trial, but it was discovered on appeal that the first plaintiff did not have standing at the time she filed her original complaint (years before), all of the proceedings would become a nullity because that first plaintiff did not have standing at the time of the original complaint and thus lacked the authority to add the second plaintiff to the case. The focus of the litigation (*e.g.*, on appeal) would be not on the merits of the claims of the second plaintiff with standing, but the original plaintiff's standing on the initially-filed (now moot) complaint.

Or consider if, in *Lierboe*, the Ninth Circuit would have required dismissal after it vacated class certification even if the plaintiff had added a class representative with standing shortly after filing the initial complaint – *i.e.*, prior to any merits rulings and well before class certification. Such an outcome seems highly doubtful. To be sure, *Lierboe* appears to hold that, at some point in the litigation (well outside the Rule 15 timeline), the jurisdictional defect of an unamended

10

complaint cannot be cured *nunc pro tunc* by a belated attempt to amend the complaint. Nevertheless, *Lierboe* does not hold that an early and timely amendment can – categorically – never be given effect where the original complaint suffers from a jurisdictional defect.  Such an extension of *Lierboe* finds no support in precedent or the Federal Rules of Civil Procedure.

Though not binding precedent, the Ninth Circuit's memorandum decision in *James v. Safeguard Properties LLC*, 821 Fed. Appx. 683 (9th Cir. 2020), a case that post-dated *Lierboe*, confirms Lyft overreads *Lierboe*.  In *James*, the Ninth Circuit held that,

> [w]hen a plaintiff lacks standing at the outset of a case, the jurisdictional defect can be cured by the subsequent addition of another plaintiff.  Here, John Bund was the original sole named plaintiff in the case. The Jameses were added as plaintiffs prior to the discovery that Bund lacked standing.  The subsequent addition of the Jameses retroactively cured the jurisdictional defect present at the time of filing.

*Id.* at 685.[3]

Furthermore, any doubt over Lyft's reading of *Lierboe* has now been laid to rest by the Supreme Court's decision in *Royal Canin*.  In *Royal Canin*, the Supreme Court emphasized that a court's evaluation of jurisdiction largely turns on the complaint that is operative at the time.  Thus, if there is an amended complaint, a court looks to the amended complaint – and not the complaint that was originally filed – in determining whether there is jurisdiction.  *See, e.g.*, *Royal Canin*, 604 U.S. at 34 ("[A]n amendment can wipe the jurisdictional slate clean, giving rise to a new analysis with a different conclusion."); *id.* at 35 ("[J]urisdiction follows from (and only from) the operative pleading.").

To be sure, *Royal Canin* does not expressly address the issue here, *i.e.*, how an amended complaint should be viewed if there was never jurisdiction at the outset of the case.  Rather, in

---

[3] One district court has suggested that *James* governs only those situations in which a second plaintiff is added to the case before the first plaintiff's standing is challenged.  *See Mahboob v. Educ. Credit Mgmt. Corp.*, No. 15-CV-628 TWR (AGS), 2021 U.S. Dist. LEXIS 160975, at *13-14 (S.D. Cal. Aug. 24, 2021) (stating that, "unlike *James*, this is not a situation where Plaintiff Mahboob was added prior to Plaintiff Reyes' standing being contested").  But that reasoning would not comport with Lyft's reading of *Lierboe*: that if there is no standing at the outset, dismissal is required, and no amendment is permitted at all whether that amendment changes the allegations of the original plaintiff or adds additional plaintiffs.

United States District Court
Northern District of California

*Royal Canin*, the Supreme Court considered whether a court could exercise supplemental jurisdiction over state law claims in the following situation: (1) the plaintiff initially filed suit in state court; (2) because the plaintiff pled not only state law claims but also federal claims, the defendant removed to federal court; and (3) in federal court, the plaintiff filed an amended complaint dropping all federal claims, thus leaving only state law claims.  In other words, *Royal Canin*'s focus was on an amendment that "destroy[s]" or "eliminates" jurisdiction.  *Id.* at 30, 38 n.8.

Nevertheless, the *Royal Canin* Court took note that amendments can not only *destroy* jurisdiction but also *create* it.  *See, e.g., id.* at 35 (stating that "courts conceive of amendments to pleadings as potentially jurisdiction-changing events[;] [t]he amended complaint becomes the operative one[,] and in taking the place of what has come before, it can either create or destroy jurisdiction"); *id.* at 35-36 (stating that "[t]he reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction"); *see also id.* at 34, 37-38 (providing the following examples: (1) "28 U. S. C. §1653 [provides that] '[d]efective allegations of jurisdiction may be amended' to ensure that a case can go forward[] [s]o a case falling outside the federal court's jurisdiction can come within it by virtue of an amendment"[4]; (2) "'if the case stated by the initial pleading [filed in state court] is not removable,' an amendment may [still] make it so"; and (3) "even if removing a case was improper because the initial complaint did not contain a federal claim, the plaintiff's later assertion of such a claim establishes jurisdiction going forward").  Moreover, the *Royal Canin* Court indicated that the "time-of-filing" rule (under which a court "assesses a factual issue relevant to jurisdiction *only at the suit's outset*") does not "limit the effect of the plaintiff's decision, as the master of her complaint, to add or subtract claims or parties."  *Id.* at 38 n.8 (emphasis added).  That is the situation here: Ms. Zigler, in her amendment, added claims and plaintiffs, and thus the time-of-filing rule does not apply.

/ / /

---

[4] To be clear, case, the ability to amend pursuant to § 1653 applies only to "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman-Green v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989).

United States District Court
Northern District of California

It is also worth noting that Lyft's position is in tension with the letter and spirit of the Federal Rules of Civil Procedure. Not only does Rule 15 allows for an amendment once as a matter of right (so long as certain conditions apply), *see* Fed. R. Civ. P. 15(a)(1)(B) (allowing a plaintiff the right to amend as a matter of course within 21 days after service of, *e.g.*, a Rule 12(b) motion), but it also provides for a liberal approach to amendment thereafter. *See* Fed. R. Civ. P. 15(a)(2) (providing that a "court should freely give leave when justice so requires"). The Court acknowledges Lyft's contention that the Federal Rules cannot create jurisdiction. But the Court is not relying on the Federal Rules to create jurisdiction. Rather, it is simply taking note that amended pleadings are contemplated and common, and it would be contrary to that approach to hold that the original complaint dictates jurisdiction controls even after an amended complaint has been timely filed. It is not uncommon for courts to allow a timely amendment to a complaint even if the original defect implicates a lack of jurisdiction (*e.g.*, where there is a non-diverse named defendant, the complaint fails to state an element of a federal claim); after all, a court has jurisdiction to determine its jurisdiction. Lyft's interpretation not only ignores the common experience of courts, it would render Rule 15 a nullity, barring a plaintiff from amending a complaint to remove any jurisdictional defect under all circumstances regardless of compliance with Rule 15. Certainly, such a result cannot be squared with the clear and repeated language of the Supreme Court's decision in *Royal Canin* which affords primacy to the operative pleading which includes an amended complaint.

This Court's holding here is not contrary to cases that have noted a plaintiff must have standing at the beginning of the case, *i.e.*, at the time the case is filed. *See, e.g., Arizonans for Official English v. Ariz.*, 520 U.S. 43, 68 n.22 (1997) (noting that "[m]ootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)") (internal quotation marks omitted); *Yamada v. Snipes*, 786 F.3d 1182, 1203 (9th Cir. 2015) (stating that "'[s]tanding is determined as of the commencement of litigation'"); *Perry v. Village of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999) (stating that, "[b]ecause standing goes to the jurisdiction of a federal court to hear a particular case, it must exist at the commencement of

the suit"). Such cases do not address whether a plaintiff may, particularly early in the litigation (unlike the situation in *Lierboe*), amend the complaint to establish standing. Neither party has pointed the Court to a case prohibiting a timely amendment. Moreover, *Yamada*, one of the cases that Lyft repeatedly cited at the hearing, is distinguishable because, there, the plaintiff was relying on factual "'events that unfolded after the filing of the complaint to establish [their] standing.'" *Yamada*, 786 F.3d at 1203-04 (taking note of plaintiff's contention that it now had standing, post-filing of the complaint, because of an amendment made to state law). Here, Ms. Zigler did not amend her complaint based on factual events that occurred after she filed her original complaint.

Finally, to the extent Lyft argues it would be prejudiced by Plaintiffs' amendment, its main concern is related to the statute of limitations – *i.e.*, that the amended complaint would get the benefit of the limitations period applied to the original complaint, whereas, if the case were dismissed and Plaintiffs were forced to file a new case, the statute of limitations would run from the date of the filing of the new case. But the Federal Rules already contain a mechanism to address Lyft's concern: under Rule 15(c), certain criteria must be met before an amended complaint can "relate back" to the original complaint. *See, e.g.*, Fed. R. Civ. P. 15(c)(1) (providing for relation back where, *e.g.*, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading").

In sum, there is no good reason to require dismissal of the case at this juncture based on *Lierboe*. Accordingly, for the reasons stated above, the Court rejects Lyft's contention that Ms. Zigler lacked standing at the outset of the case. And even if she did lack standing at the outset, that did not preclude her from, early in the proceedings, amending her complaint consistent with Rule 15(a)(1)(B) to establish standing.

C.      Standing of Ms. Ye and Mr. Robey

Because the Court concludes that Ms. Zigler has standing to proceed, she had the authority to amend her complaint, and the Court now turns to Lyft's secondary arguments. These secondary arguments also relate to standing.

/ / /

Lyft does not challenge Ms. Zigler's standing to assert claims based on her taking Standard rides. However, Lyft does contend that Ms. Ye lacks standing to assert her claims, which are based on Priority Rides. It further suggests that Mr. Robey *may* have a standing problem with respect to his claims, also based on Priority Rides.

       1.     <u>Ms. Ye</u>

In the FAC, Plaintiffs allege that Ms. Ye –

> [o]n multiple occasions within the past year [–] . . . paid Lyft for a Priority Pickup ride. Despite paying a premium price to be picked up faster, these rides often took longer than advertised to arrive. For example, on October 2, 2025, Ms. Ye took a Lyft to the airport and was in a rush to make her flight. The Priority Pickup ride was advertised as arriving in three minutes but took ten minutes to arrive. On Jan 6, 2026, she again ordered a Lyft ride home from the airport after a long day of travel. She ordered a Priority Pickup to get home as soon as possible. That ride was advertised as coming in five minutes but actually took around ten minutes to arrive.

FAC ¶ 6.

In its motion to dismiss, Lyft focuses first on the two specific examples identified by Ms. Ye.[5] For the October 2, 2025, incident, Lyft provides a declaration in which the declarant testifies Lyft's records show that "a driver accepted Ms. Ye's Priority Pickup ride request 26 seconds after Ms. Ye requested the ride," but "Ms. Ye cancelled the ride approximately 29 seconds after the driver accepted her Priority Pickup ride request. . . . Ms. Ye did not pay anything for the cancelled ride." Grasso Decl. ¶ 4. For the January 6, 2026, incident, the declarant testifies Lyft's records show that "Ms. Ye did not request or take any rides on January 6, 2026." Grasso Decl. ¶ 5.

Lyft then acknowledges that the FAC also alludes to "multiple occasions" on which Ms. Ye used the Priority Pickup service – *i.e.*, not just the two specific dates identified. FAC ¶ 6. However, Lyft suggests that this information is too conclusory to credit, especially given that, from November 17, 2022, to November 17, 2025, Ms. Ye was a member of a program called Lyft Pink. Under that program, "members receive free upgrades to Priority Pickup rides when that option is available; in other words, Lyft Pink members do not pay anything extra for a Priority

---

[5] Plaintiffs contend this is cherry picking. *See* Opp'n at 13.

United States District Court
Northern District of California

Pickup ride compared to a Standard ride." Grasso Decl. ¶ 6.

In response, Plaintiffs essentially argue that Lyft does not give enough credit to the allegation that Ms. Ye used Priority Pickup multiple times. Plaintiffs also provide a declaration from Ms. Ye in which she identifies other instances in which she used Priority Pickup – specifically, outside of the Lyft Pink period. *See* Ye Decl. ¶ 6 (identifying 14 Priority Pickup rides between June and October 2022); *see also* Ye Decl. ¶ 4 (testifying that the Priority Pickup "rides have arrived late the majority of the time"). Finally, Plaintiffs argue that, even if the Court were to consider only the rides that were covered by Lyft Pink, Ms. Ye was still injured: "even for rides Plaintiff Ye did not directly pay for because the premium was covered through a Lyft Pink membership, she still has been injured by Lyft's failure to deliver the Lyft Pink benefits that she signed up for – *i.e.*, Lyft injured her by depriving her of the benefit of the bargain she should have received through Lyft Pink." Opp'n at 13.

Because Lyft has made a factual challenge to standing, the Court can fairly consider the declarations submitted by both parties. The Ye Declaration constitutes sufficient evidence to support standing. In the declaration, Ms. Ye's testimony establishes that she took Priority Pickup rides, that most of them were late, and that at least a number were not covered by Lyft Pink (*i.e.*, even assuming the Court were to find no injury for the rides covered by Lyft Pink because Ms. Ye did not pay for those rides). The fact that Ms. Ye "abandon[ed]" her allegations about the rides in October 2025 and January 2026 does not mean that Ms. Ye lacks standing based on *other* rides. Reply at 1.

In its reply brief, Lyft seems to backtrack somewhat, suggesting that the allegations in the FAC as pled do not support standing on the part of Ms. Ye. (It also makes the same argument for Mr. Robey.) But Lyft cannot have it both ways: if it made a factual challenge and offered evidence to dispute their standing, then Ms. Ye (and Mr. Robey) fairly provided evidence to dispute Lyft's evidence.

At the hearing, however, Lyft suggested for the first time that, because it is now clear that Ms. Ye is relying on pre-Lyft Pink rides, the Court should order an amended pleading because what rides are at issue may inform how Lyft responds to the amended pleading, including but not

United States District Court
Northern District of California

16

limited to a motion to compel arbitration.  Given this representation, the Court shall proceed as follows.  Although the Court is rejecting the factual challenge to Ms. Ye's standing, the Court orders the parties to meet and confer to determine whether they, as well as the Court, would benefit from an amended pleading that provides clarity as to the rides at issue with respect to Ms. Ye.  During this time, any arbitration-related discovery is not stayed; however, the Court does continue the stay on the briefing for the pending motion to compel arbitration (which is predicated on the current operative complaint).  Within a week of the date of this order, the parties shall file either a stipulation to an amended complaint or a status report providing an update as to the results of the meet and confer, each party's proposal on how to proceed, and each party's last offer of compromise.

    2.  <u>Mr. Robey</u>

  As for Mr. Robey, Lyft makes more of a half-hearted challenge to standing.  In the FAC, Plaintiffs allege that Mr. Robey "took several Priority Pickup rides to or from the airport" between January 2024 and October 2025.  FAC ¶ 7.

> Despite paying a premium to be picked up faster, his rides arrived long past the advertised pickup time.  For example, on Oct[ober] 8, 2024, Mr. Robe[y] ordered a Priority Pickup to the airport and recalls the ride arriving so late that he thought he would miss his flight.  Because of this delay, Mr. Robey contemplated canceling his Lyft ride all together [sic].  On several other trips from the airport, Mr. Robey recalls waiting up to ten minutes past the actual advertised pickup time for his Priority Pickup rides.

FAC ¶ 7.

  In a declaration, Lyft provides its version of the events on the October 8, 2024, ride – essentially challenging the allegations made above.  *See* Grasso Decl. ¶¶ 7-8.  *But see* Opp'n at 14 (arguing that the fact that "the ride actually arrived at the later 'refreshed' estimated pickup time, and not at the original advertised time that Plaintiff Robey paid to secure," "confirms that Lyft lied about the original arrival time") (emphasis omitted).  However, implicitly recognizing that that is a merits issue, not a standing one, Lyft primarily questions whether Mr. Robey suffered an injury for the October 8, 2024, ride because he *may* not have paid for it.  According to Lyft, its records show that the ride

was paid for using a credit card linked to Mr. Robey's Business Profile, which is a different credit card than the one linked to Mr. Robey's Personal Profile. A rider may set up a Business Profile to separately track rides taken for business purposes, including using different payment methods, managing expense reimbursement, and receiving unique perks such as receiving 6-8% back in Lyft Cash on Priority Pickup and airport rides.

Grasso Decl. ¶ 9.

In response, Mr. Robey has submitted his own declaration. He notes that his Lyft account only has rides in his "Personal" ride history; there are no rides in his "Business" ride history. *See* Robey Decl. ¶¶ 3-4. He identifies a number of Priority Pickup rides that he took, with "multiple rides arriv[ing] late, including rides that [he] personally paid for." Robey Decl. ¶¶ 8-9; *see also* Robey Decl. ¶ 5 (testifying that "[a]ll cards in [his] Lyft app were [his] personal credit cards"). Mr. Robey acknowledges that, he did have a "business profile on Lyft through a prior employer, [but he] did not use it or have any business credit card that could have been associated with the account." Robey Decl. ¶ 6. In addition, "[e]ven for rides that were for business expenses, [he] initially paid for them personally [and] would then later submit them for reimbursement from my former employer," Robey Decl. ¶ 7; this was an injury in the form of "temporary loss of use of one's money."[6] Opp'n at 15. Finally, Plaintiffs argue that, "regardless of whether fares were later reimbursed, [Mr.] Robey has suffered cognizable injuries under [New York statutory law]" and thus "is entitled to statutory damages." Opp'n at 15.

As above, the Court can consider the declarations from both parties given Lyft's factual challenge to standing. The Robey Declaration constitutes sufficient evidence to support a prima facie case of standing. The declaration reflects that there were instances in which Mr. Robey used the Priority Pickup service and paid for the service himself, but the ride was late.

While the Court is thus rejecting the factual challenge to Mr. Robey's standing, the parties may include, as part of their meet and confer ordered above, discuss whether there would be any benefit to amended allegations regarding Mr. Robey in a further amended complaint.

---

[6] In its reply brief, Lyft somewhat questions whether lost use of money is enough to support standing. *See* Reply at 12 & n.6. But because it does not press this point (presumably because it would have to argue that *all* of the rides were paid for by his employer), the Court need not concern itself with this matter, at least at this juncture.

18

United States District Court
Northern District of California

D.       Standing of All Plaintiffs to Seek Prospective Injunctive Relief

Finally, Lyft makes a standing challenge applicable to all three plaintiffs – specifically, that they lack standing to seek prospective injunctive relief.  *See, e.g.*, FAC ¶¶ 97-98 (seeking a permanent public injunction because, absent such relief, "Lyft's false advertising and manipulative tactics . . . will continue").  Lyft argues that the record does not support entitlement to an injunction because there must be evidence that Plaintiffs would use Lyft's Priority Pickup or Standard services in the future, *i.e.*, but for the false advertising.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) (noting that "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to").  In their declarations, Ms. Ye and Mr. Robey now provide evidence that they would use Lyft's services in the future if the false advertising were corrected.  *See* Ye Decl. ¶ 7 ("I remain in the market for rideshare services, and I would purchase Lyft's rideshare services, including those marketed with faster and more predictable arrival times, if I could trust Lyft's representations.  But I cannot do so because Lyft continues to deceptively market the arrival times of its rideshare services."); Robey Decl. ¶ 10 (same).  Thus, any factual challenge to standing lacks merit.

That being said, because Lyft may also have raised a facial challenge to standing, and the Court has already directed the parties to meet and confer regarding a further amended pleading, the Court orders the parties to include in their meet and confer discussion of whether there should be amended allegations regarding standing for prospective injunctive relief.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

19

### III.    CONCLUSION

For the foregoing reasons, the Court denies Lyft's motion to dismiss for lack of standing. The parties are ordered to meet and confer as described above and either file a stipulation or status report within a week of the date of this order.

This order disposes of Docket No. 46.

**IT IS SO ORDERED**.

Dated: June 2, 2026

_____
EDWARD M. CHEN
United States District Judge