**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
115 Broadway, 5th Floor
New York, NY 10006
Telephone: (646) 347-3940

**JANOVE PLLC**
Liana Roza Vitale (SBN 348772)
liana@janove.law
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

***Attorneys for Plaintiffs and the Proposed Classes***

JANOVE PLLC
979 Osos St., Ste. A5, San Luis Obispo, CA 93401
115 Broadway, 5th Fl., New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl., Philadelphia, PA 19103

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACY ZIGLER, LUCY YE, and BRIAN ROBEY, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant. | Case No. 3:26-cv-00575<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Plaintiffs Tracy Zigler, Lucy Ye and Brian Robey, individually, and on behalf of all others similarly situated, bring this class action suit for damages and equitable relief against Lyft, Inc. ("Lyft" or "Defendant"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves and their own investigation, on the investigation of their counsel, or on information and belief as to all other allegations:

## NATURE OF THE ACTION

1. Founded in 2012, Lyft provides on demand rideshare services through its mobile app. Customers enter the address of their destination and then choose their desired ride. Consumers can pay more for the promise of a predictable and faster pickup time. In particular, Lyft offers three timing options: "Priority Pickup," "Standard," and "Wait & Save," with rides that Lyft markets as arriving quicker and costing more money than rides Lyft presents as taking longer to arrive.

2. Many Lyft customers pay a premium price for a priority pickup time, either: (a) the highest price for the "Priority Pickup" time—which is always presented as the fastest option and as arriving at a predictable pickup time; or (b) a premium price for a "Standard" ride—which is presented as arriving at a predicable pickup time and faster than a "Wait & Save" (although not as quickly as a Priority Pickup).

3. In both instances, customers pay more for the promise of a predictable and faster pickup. Unfortunately, Lyft fails to deliver. First, Priority Pickups frequently fail to arrive at the time Lyft advertises. Moreover, their arrival can by anything but 'fast', sometimes taking the same amount of time, or *even longer* than, Lyft's "Wait & Save" option. Second, the same is true as to Standard fares—Lyft advertises them as predictable and arriving sooner than Wait & Save, but they frequently take as long or much longer than a Wait & Save ride would take to arrive. Each of these failures mean that many customers pay a premium price for benefits that they never receive.

4. Because of Lyft's failure to provide its Priority Pickup and Standard services as advertised, Plaintiffs bring claims on behalf of themselves and all those similarly situated for violations of the Unfair Competition Law, Cal. Bus. & Prof. Code, §§ 17200, *et seq.* ("UCL"); the False Advertising Law, Cal. Bus. & Prof. Code, §§ 17500, *et seq.* ("FAL"); the California Consumers Legal Remedies Act, Cal. Civ. Code, §§1750 *et seq.*, ("CLRA"); the Pennsylvania

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), Penn. Trade & Comm. Code, §§ 201-1, *et seq.*; the New York General Business Law, §§ 349 & 350 ("GBL"); and for unjust enrichment. Plaintiffs also bring claims for declaratory relief under Cal. Civ. Code § 1060, *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

**PARTIES**

5. Plaintiff Tracy Zigler is a natural person and a Pennsylvania resident. She paid for a ride that Lyft marketed as faster and with a more predictable arrival time in September 2025, and on other occasions. Despite paying a premium price to be picked up by a certain time, her rides arrived long past the advertised pickup time.[1] For example, on November 7, 2025, Plaintiff Zigler chose a Standard ride marketed as arriving in six minutes and paid a corresponding price premium for a Standard ride which was more expensive than the simultaneously offered Wait & Save. Instead of receiving the faster and more predictable ride Lyft promised and charged her for, Plaintiff Zigler waited significantly longer for her ride to arrive.

6. Plaintiff Lucy Ye is a natural person and a California resident. She has paid for Priority Pickup and other rides from Lyft multiple times. Despite paying a premium price to be picked up by a certain time, her rides arrived late the majority of the time.[2] She paid for these rides personally and not as a business expense that was reimbursed from any employer. She paid to upgrade to Priority Pickup dozens of times, including the following dates and times:

- 6/16/2022 18:33
- 6/17/2022 17:07
- 6/19/2022 6:28
- 6/19/2022 17:56

---

[1] As to the September 2025 ride, Ms. Zigler recalls choosing the fastest ride option available even though that option was more expensive. After ordering her ride, Ms. Zigler receiving a shifting sequence of assigned drivers that did not pick her up within the promised time frame, however her Lyft history does not show the full sequence of shifting times and reassigned drivers. Only the last-assigned driver—that is, the driver that eventually arrived and completed the ride long after she placed her initial request—is visible in her order history. She specifically recalls deciding to pay more for the fastest ride and a related contemporaneous discussion of Lyft's failure to provide one.

[2] Because of Lyft's deceptive marketing Ms. Ye has also been forced to cancel rides and seek other forms of transportation.

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

- 9/10/2022 6:48
- 9/13/2022 18:01
- 9/14/2022 19:07
- 10/16/2022 11:24
- 10/16/2022 15:59
- 10/16/2022 18:38
- 10/17/2022 9:42
- 10/18/2022 23:15
- 10/19/2022 9:04
- 10/20/2022 18:52

7. Plaintiff Brian Robey is a natural person and New York resident. Plaintiff Robey has personally paid for Priority Pickup and other fixed-time rides from Lyft on multiple occasions, including several Priority Pickup rides to or from the airport. On several other trips from the airport, Mr. Robey recalls waiting up to ten minutes past the actual advertised pickup time for his Priority Pickup rides. For example, on Oct 8, 2024, Mr. Robey ordered a Priority Pickup to the airport. According to Lyft's records, the originally advertised pre-request estimated pickup time was 47 seconds, but once Mr. Robey agreed to pay a price premium for this pickup time, Lyft changed the estimated pickup time to be later. In fact, although Mr. Robey paid extra for the ride to arrive in less than a minute, the driver actually arrived a little over 3 minutes after Mr. Robey requested the ride. Even though the driver did not arrive at the faster and more predictable time Lyft promised, Lyft still charged Mr. Robey the full Priority Pickup price. Mr. Robey paid for all rides personally, although he later submitted for expense reimbursement some that were business-related. As noted above, despite paying a premium price to be picked up by a certain time, multiple rides arrived late, including rides that he personally paid for and that were not reimbursed. He paid to upgrade for Priority Pickup dozens of times, and has paid for other non-"Wait & Save" Lyft rides, including on the following dates and times:

- 4/15/2024 17:20
- 4/18/2024 19:13

- 5/20/2024 12:15
- 5/23/2024 22:25
- 6/3/2024 5:41
- 6/3/2024 13:00
- 6/4/2024 7:58
- 6/4/2024 17:42
- 6/5/2024 0:37
- 6/10/2024 11:18
- 6/13/2024 18:01
- 7/15/2024 11:17
- 7/18/2024 18:32
- 7/20/2024 12:01
- 7/20/2024 14:04
- 8/19/2024 11:10
- 8/19/2024 15:18
- 8/19/2024 15:20
- 8/22/2024 14:15
- 8/22/2024 18:01
- 9/17/2024 19:16
- 9/18/2024 6:09
- 9/20/2024 17:34
- 9/22/2024 11:00
- 9/26/2024 17:21
- 10/2/2024 11:01
- 10/2/2024 14:53
- 10/4/2024 17:23
- 10/8/2024 11:13
- 10/10/2024 17:11

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

- 11/16/2024 6:28
- 11/21/2024 18:56
- 12/1/2024 10:35
- 12/9/2024 11:37
- 12/11/2024 21:14
- 1/16/2025 18:54
- 2/22/2025 16:34
- 2/24/2025 12:20
- 2/27/2025 18:52
- 3/24/2025 11:57
- 3/27/2025 19:13
- 4/27/2025 12:30
- 4/30/2025 19:21
- 5/19/2025 11:42
- 5/22/2025 7:55
- 6/8/2025 13:41
- 6/9/2025 11:39
- 6/12/2025 18:16
- 6/24/2025 1:33
- 6/25/2025 18:42
- 6/25/2025 20:06
- 6/26/2025 5:33
- 7/4/2025 13:44
- 7/28/2025 11:21
- 7/28/2025 15:53
- 7/30/2025 19:56
- 9/15/2025 12:05
- 9/15/2025 18:29

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

- 9/17/2025 6:38
- 9/17/2025 7:29
- 9/17/2025 13:30
- 10/29/2025 20:45

8. Defendant Lyft, Inc. ("Lyft") is a Delaware corporation with its principal place of business at 185 Berry Street, Suite 400, San Francisco, CA 94107. At all times relevant herein, Lyft conducted business in the State of California, in the County of San Francisco, within this judicial district.

**JURISDICTION & VENUE**

9. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Classes exceeds 100; and many members of the proposed Classes are citizens of different states than Defendant.

10. This Court has personal jurisdiction over Defendant because it is headquartered in San Francisco, California and because a substantial portion of the events and conduct giving rise to Plaintiffs' claims occurred in California. Lyft is headquartered in San Francisco, CA and, upon information and belief, key figures in Lyft's corporate hierarchy and leadership team are located in San Francisco, including its Chief Executive Officer, Chief Financial Officer, Chief Legal and Business Officer, Chief Marketing Officer, Vice President of Safety and Customer Care, Vice President of Growth, Vice President of Partnerships & Loyalty, Chief of Staff to the CEO, and Chief of Staff to the CFO. Moreover, as of March 2026, Lyft had 2, 356 employees in the San Francisco Bay Area according to their LinkedIn profiles.[3]

11. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the Defendant resides in this district; and (ii) the conduct complained of herein occurred within this judicial district.

**DIVISIONAL ASSIGNMENT**

12. Assignment to the San Francisco or the Oakland Division is proper under Civil Local

[3] https://www.linkedin.com/company/lyft/people/

Rules 3-2(c) and 3-2(d) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in San Francisco County.

## FACTUAL ALLEGATIONS

13. Founded in 2012, Lyft provides on demand rideshare services through its app called "Lyft." Users can open the app, enter the address of their destination, and then choose their ride.

14. Lyft provides a plethora of ride options, including different vehicle types and, as relevant here, different pickup speeds. Lyft offers three different options in this category: a "Standard" option, a "Wait & Save" option, and a "Priority Pickup" option.

15. Lyft users pay a price premium for "Standard" and "Priority Pickup" rides, which are marketed as being more predictable and arriving sooner than the "Wait & Save" option.[4]

16. Lyft users pay the highest price premium for Priority Pickup, which is marketed as the fastest and most expensive of the three options. On its website, as shown below, Lyft describes Priority Pickup as the option for people who need a "faster pickup" and need to "get where they want to go quick, fast, and in a hurry." Lyft's next most expensive option, Standard, provides a pick-up time that is shown as arriving sooner than Wait & Save and at a more predictable time than Wait & Save (but not as quickly as the Priority Pickup option). In contrast, Wait & Save allows riders to "save a few bucks in exchange for a little patience," and, thus, is offered at a lower price than Standard or Priority Pickup.[5]

> **3 new ways to ride with Lyft:**
>
> **Faster pickups**
>
> Upgrade to Priority Pickup for a faster pickup when you're in a hurry.
>
> This ride mode gives your riders priority over others (hence the name) so they can get where they want to go quick, fast, and in a hurry.
>
> **Reduced pricing**
>
> Save money by waiting a little longer for less urgent trips with Wait & Save.
>
> This ride mode allows you to save a few bucks in exchange for a little patience. Wait & Save availability depends on how many drivers are nearby.

---

[4] Other options such as XL and Black (larger or more luxury cars) also command a price premium for speed and a predictable arrival time, but some portion of the price can also be attributed to the specific type of vehicle chosen. But Lyft still deceives users into believing these rides are faster and more predictable, for the same reasons discussed below in connection with Standard and Priority Pricing fares.

[5] https://www.lyft.com/business/resources/product-updates/introducing-3-new-ride-options

JANOVE PLLC
979 Osos St., Ste. A5, San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

17. According to Lyft, Priority Pickup is not only fast relative to other pick-up options, but it is designed specifically to accommodate those who urgently need a ride by providing speed and predictability. This characterization is reflected in Lyft's pricing. Customers are charged a premium for the promise of a fast, predictable pick-up. Lyft's characterization of Wait & Save—"save a few bucks in exchange for a little patience"—further confirms that longer, uncertain wait times should equate to lower costs. Likewise, Lyft's Standard option expressly promises customers a ride that arrives at a fixed point in time and faster than Wait & Save.

18. Although both Priority Pickup and Standard options make a laudable promise—pay a premium to receive a predictable and faster pick up—Lyft does not always deliver. Both Priority Pickups and Standard Pickups are often uncertain and take longer to arrive than Lyft advertises, even taking as long as the Wait & Save option *or longer*, meaning that users pay a premium price for a benefit that they never receive.

19. But, even when Lyft fails to deliver on Priority Pickup or Standard arrival times, Lyft still charges users the price premium. So, people like Plaintiffs end up paying extra for no reason.

**I. Priority Pickup and Standard Fares Prominently Advertise a Certain Pickup Time**

20. Priority Pickup and Standard fares both offer the option to pay more in exchange for a faster pick-up time.

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

21. Moreover, Lyft advertises Priority Pickup and Standard fare arrival times to be exact. For example, in the ride options shown below, the Priority Pickup and Standard fares are marketed as arriving "in 2 min" and "in 3 min," in contrast with the less precise "within 15 minute" arrival time for Wait & Save:




22. Further, as illustrated below, Lyft also will advertise the slower, cheaper "Wait & Save" option with a time range, in contrast to the faster "Priority Pickup" and "Standard" options, which contain precise pickup times. This misleads consumers into believing these options are not only faster, but are also more predictable:




23. By differentiating between pick up times down to the minute, Lyft communicates that it can predict exactly when a driver will arrive and can reliably offer precise pickup times to its users. Lyft also recognizes through this differentiation that some consumers are willing to pay a premium to reduce wait time, even by a single minute. Notably, in the above example the difference between Standard and Priority Pickup is only *one minute*. Nonetheless, Priority costs $3 more.

24. As noted above, Lyft's promise of exact arrival times for Priority Pickup and Standard fares is further indicated by the presentation of Wait & Save times. In contrast to the exact times given for Priority Pickup and Standard, the Wait & Save option estimates pick up "within 15 min[utes]," indicating that when this option is selected there may be some unpredictability in pick up times that does not exist for other, higher-priced fares. Describing some pickup times using exact numbers and some using estimates reinforces the idea that the exact numbers for Priority Pickup and Standard fares are accurate. Lyft could have displayed Priority Pickup and Standard as estimates or ranges. It chose not to, indicating to customers that Priority Pickup and Standard arrival times are predictable and exact, in a way that Wait & Save times are not.

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

25. Lyft also incentivizes users to choose Priority Pickup through a pop-up message, as shown below. If a user selects Standard Pickup or Wait & Save, Lyft will often show users a message asking if they would like to pay more money to receive a Priority Pickup:




26. By accepting additional payment in exchange for a Priority or Standard ride, Lyft advertises that the ride will arrive at a certain time and certainly faster than lower priced options.

27. As explained below, Lyft's promises that paying more means faster and more predictable arrival times do not line up with the wait-times of actual Priority Pickup and Standard customers.

28. Despite charging more money for Priority Pickup and Standard fares, a Lyft driver does not always arrive in the time Lyft advertises. Riders who pay for Priority Pickup and Standard rides often wait longer than Lyft tells them they will—sometimes waiting the same length of time as the lower-priced options or longer. This system unjustly enriches Lyft by deceiving consumers

into paying more for an expedited service while providing them with no real benefit.

**II. Customers' Expectation of Faster Pickup**

29. The practices described above commonly create an expectation among Lyft's customers that if they pay for Priority Pickup or Standard, they will be picked up by the advertised time. Accordingly, customers pay a premium for Priority Pickup and Standard specifically when pickup time is important to them, that is when they require a certain—and faster—pickup time. But many customers pay for Priority Pickup or Standard only to be left waiting.

30. To illustrate, one customer ordered a Priority Pickup ride "at 6:04pm after work" because they "had just got out of work and wanted to go home." The customer complained that "the first driver was supposed to arrive in 6 minutes" but "all in all my 'Priority Pickup' ride took 36 minutes [to arrive]."



r/Lyft • 4mo ago
EmberJaneFrost

"Priority Pickup" ride

I ordered a priority pickup ride today at 6:04pm after work and picked Priority Pickup because I had just got out of work and wanted to go home, the first driver was supposed to arrive in 6 minutes but as I was waiting I watched on the map her going off of the route several times going further and further from me before full on stopping moving in a parking lot somewhere after a few minutes I messaged her saying "Dude what are you doing." This already being around 6:26pm and after I messaged her she didn't respond and proceeded to cancelled the ride a few minutes after and then I had to wait another 15 minutes for the new driver (not his fault he was absolutely wonderful) but I didn't get to be picked up until around 6:40pm which means all in all my "Priority Pickup" ride took 36 minutes

31. Another described how Priority Pickup promises a pickup "within x minutes, then assigns me a drivers 3x minutes away and then said driver takes 7x minutes to get to me… Happens multiple times and it's especially embarrassing when I'm calling Lyft for me and coworkers."

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

r/Lyft • 3y ago
bluerang1

**Starting to think Priority pickup is a scam**

Lyft HQ Question

Priority pickup says I'll be picked up within x minutes, then assigns me a driver 3x minutes away and then said driver takes 7x minutes to get to me... Happens multiple times and it's especially embarrassing when I'm calling Lyft for me and coworkers. Starting to think this option is a scam and I don't know if the Delta miles are worth sticking with Lyft.

32. A different user paid $50 for a Priority Pickup so she wouldn't be stranded at a bar at 2am. The customer "ended up waiting 30 min. The wait and save option claimed 20 minute wait for less than $30."

r/Lyft • 3y ago
[deleted]

**Paid almost double for priority pickup. Waited longer than wait and save time. Support claims I didn't pick priority.**

As title says. I don't want to be that person but I paid 50 for priority pick up so I don't have to wait at 2am at a bar and ended up waiting 30 min. The wait and save option claimed 20 minute wait for less than $30

After spending forever even trying to find a way to contact support they claim I never picked priority pickup despite my final fair charge matched the price for priority.

Has anyone had luck getting help from Lyft or should I just dispute charge at this point?

33. By charging a premium price, Lyft creates the expectation that those who pay for the service will be picked up by the advertised time and, at the very least, faster than if they paid less for a Standard or Wait & Save ride. This expectation is material because, as shown, reasonable consumers consider the time of pickup an important factor in deciding whether to purchase Priority Pickup.

34. These customer experiences show that Priority Pickup times are inherently unpredictable and are often slower, not faster, than Lyft's discount options. Lyft recognizes that, as it notes on its website, users pay for Priority Pickup to "get where they want to go quick, fast, and in a hurry." However, Lyft does not uphold its end of the bargain and can leave users waiting up to 36 minutes for a Priority ride.

35. The same is true for Standard fares. The practices described above commonly create an expectation among Lyft's customers that if they pay for Standard pickup rather than Wait &

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Save, they will be picked up by the advertised time. Accordingly, customers pay a premium for Standard when pickup time is important to them, that is when they require a certain—and faster—pickup time. But, just as with Priority Pickup, many customers pay for Standard only to be left waiting far longer than the advertised time.

36. Lyft consumers have noted that wait times for Lyft rides are constantly significantly higher than advertised, and "never, even close" to the first arrival time advertised by Lyft:[6]


r/Lyft • 5mo ago
FinalPercentage9916

Lyft and Uber should have automatic discount if driver does not arrive by time specified in the app

When I order a car, I always screenshot the first arrival time. It is never, I mean never, even close. This is clearly a false an deceptive business practice.

37. As the commentor quoted above notes, this is "a false and deceptive business practice." Lyft creates the false expectation that by paying for a higher fare, a customer will be picked up by a certain time, deceiving its customers into paying more money without providing any additional benefit in speed or dependability.

**III. Lyft is Aware of This Problem**

38. Lyft is aware that it cannot provide accurate pickup times to its customers, but purports to do so anyway. In its 2024 Annual Report under the section titled "Risks Related to Operational Factors," Lyft said,

> Both Priority Pickup and Wait & Save allow for the rider to be matched with the best-located driver and involve inherent challenges in predicting the future location of drivers. Accordingly, if our algorithms are unable to consistently match Wait & Save and Priority Pickup riders, or with appropriate drivers, then our business, financial condition and results of operations could be adversely affected.[7]

39. Anticipating a driver's location is pivotal to predicting pickup time. However, Lyft recognizes that accurately predicting this information is an "inherent challenge[]" that threatens its

[6] www.reddit.com/r/Lyft/comments/1o36a68/lyft_and_uber_should_have_automatic_discount_if/
[7] Lyft Annual Report 2024, 32. https://investor.lyft.com/sec-filings/all-sec-filings/content/0001759509-25-000071/0001759509-25-000071.pdf.

JANOVE PLLC
979 Osos St., Ste. A5, San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
JANOVE PLLC

business model, identifying it as an element of risk that could negatively impact the company.

40. Even though Lyft is aware that its algorithm is flawed, it still markets precise Priority Pickup and Standard pickup times rather than an estimated range. This practice is intentionally misleading, intended to trick consumers into paying more for a benefit they may or may not receive. And if Lyft does not deliver, it keeps the price premium rather than refunding its users so they pay the lower fare, which they would have otherwise paid but for Lyft's promise of a faster ride.

41. Lyft continues to mislead its customers because, in aggregate, the increased fees paid for Priority Pickups and Standard pickups contribute to large profit margins. If Lyft charges an extra $3 for an alleged one minute faster pick up, as shown earlier in the complaint, it can—and does—charge an even larger premium for a greater advertised difference in pick up times.

42. In the fourth quarter of 2024, Lyft had 24.7 million unique riders.[8] If each unique rider paid an extra $3 for a Priority ride just once that quarter, Lyft would have earned an extra $74.1 million dollars in three months. This equates to $296.4 million per year, or over five percent of Lyft's 2024 revenue, in one-time Priority Pickup fees alone.[9] This figure is an extremely conservative estimate. Given the many repeat Priority Pickup users, the fact that there are much more expensive Priority Pickup rides, and other factors, revenue from Priority Pickup fees is likely much larger $296.4 million per year.

43. The analysis is similar for Standard rides. If each rider paid even an extra $1 just once in that quarter to ensure a more predictable and quicker pickup time, Lyft would make an additional $24.7 million. On an annual basis, that amounts to nearly $100 million in additional revenue.

44. In sum, Lyft benefits greatly from this promise of a certain pick-up time even though it knows that it cannot always deliver.

**IV. Lyft Coerces Riders into Paying for More Expensive Ride Options**

45. Lyft uses several coercive tactics to induce riders to choose Priority Pickup and

---

[8] Lyft Annual Report 2024, 54-55. https://investor.lyft.com/sec-filings/all-sec-filings/content/0001759509-25-000071/0001759509-25-000071.pdf

[9]https://investor.lyft.com/news-events/press-releases/detail/103/lyft-reports-record-q4-and-full-year-2024-results

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Standard fares over other, less expensive options.

46. First, Lyft exploits what is known as the "marketing placebo effect" a phenomenon where people "tend to value expensive items over their cheaper counterparts."[10] Customers tend to prefer more expensive items because they think a higher price mitigates risk. Customers also believe expensive items are inherently higher quality. As one finance professor explained to the *Business Insider*, people are "more likely to pay more for something if they perceive a lower-priced product as giving lower satisfaction and a higher risk"[11]

47. Even though the difference between a Standard ride and a Priority Pickup ride can be as negligible as one minute according to Lyft's representations, Lyft knows that people "in a hurry" will pay an extra $3 to avoid the risk of getting picked up late. Lyft capitalizes on this association between price and dependability when, in reality, a Priority Pickup ride comes with significant risk because Lyft does not consistently deliver on its advertised pickup time.

48. Lyft uses the same tactics to position Standard rides as arriving sooner and being more dependable than Wait & Save rides, and charges users a premium for these perceived benefits.

[10] https://www.businessinsider.com/sc/why-we-like-expensive-things-2018-12
[11] https://www.businessinsider.com/sc/why-we-like-expensive-things-2018-12

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

49. Second, Lyft also frequently implements what the Federal Trade Commission (FTC) calls "dark patterns," or deceptive practices implemented by businesses to manipulate consumers into making choices they would not ordinarily make.[12] For example, as shown above, Lyft presents riders with a pop-up message asking if they want to "get picked up faster with Priority Pickup":




50. The rider has two options: "upgrade for $3.11 more" or "keep waiting." By forcing riders to press a button that says, "keep waiting" Lyft engages in what the FTC calls "confirm shaming"—"using shame to steer users away from certain choices by framing the alternatives as a bad decision."[13] Lyft employs this specific language so that choosing the more expensive option (here, Priority Pickup) appears beneficial by telling customers they are "upgrading," and staying with the previously selected and less expensive option seems foolish, by highlighting that customers will have to "keep waiting" when they could purportedly get to their destination faster.

51. The "keep waiting" button also serves as a timer, with the dark gray area quickly

[12] *See* FTC Staff Report, *Bringing Dark Patterns to Light* at 25 (Sept. 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%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%20-%20FINAL.pdf
[13] *Id.*

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

getting smaller and effectively 'counting down' to zero. Including this timer creates a false sense of urgency, motivating riders to take advantage of this seemingly limited opportunity to upgrade. This is another example of a dark pattern as it creates "pressure to buy immediately," robbing consumers of their ability to make thoughtful, intentional purchasing decisions.

52. After this litigation was filed, a recent investigation by Consumer Reports confirmed that Lyft uses targeted algorithmic pricing to maximum the amount riders pay.[14] It also revealed that Lyft "regularly entice[s] customers to book rides by offering supposed discounts on what appeared to be inflated original prices, a practice that experts say is not only deceptive and manipulative but also may violate several states' consumer-protection laws."

53. Despite its inability to deliver on the advertised Priority Pickup and Standard pickup times, Lyft manipulates consumers into choosing Priority Pickup and Standard pickup for its own financial gain. Lyft has been unjustly enriched by its use of deceptive marketing tactics, inducing consumers to pay for a service by falsely advertising a certain benefit that Lyft cannot reliably bestow on users.

**CALIFORNIA LAW APPLIES TO THE ENTIRE NATIONWIDE CLASS**

54. California's substantive laws apply to every class member, regardless of where in the United States the class member resides.

55. California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Classes under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contacts, and a significant aggregation of contacts, with the claims asserted by Plaintiffs and all class members, creating state interests such that the choice of California state law is not arbitrary or unfair.

56. Lyft's United States headquarters and principal place of business is located in California. Lyft's key executives and employees are located in California. On information and belief, Lyft also owns property and conducts substantial business in California. Therefore,

---

[14] https://www.consumerreports.org/money/questionable-business-practices/uber-lyft-different-prices-for-same-ride-and-fake-discounts-a1093538909/?utm_source=join1440&utm_medium=email&utm_placement=newsletter&user_id=66c4c8b05d78644b3ac2653e

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

California has a significant interest in regulating Lyft's conduct under its laws. Lyft's decision to reside in California, avail itself of California's laws, and to engage in the challenged conduct, which originates from and emanates out of California, renders the application of California law to the claims here constitutionally permissible. Upon information and belief, California is the state from which Lyft's alleged misconduct and false statements emanated. This conduct similarly injured and affected Plaintiffs and all other class members.

57. The application of California laws to the Classes is also appropriate under California's choice of law rules. California has significant contacts with the claims of Plaintiffs and the proposed Classes, and California has a greater interest in applying its laws here than any other interested state.

**PLAINTIFFS' AND THE CLASS MEMBERS' CLAIMS ARE NOT ARBITRABLE**

58. Lyft's Terms of Service (the "Terms"), updated December 13, 2024, contain an unconscionable dispute resolution procedure that, as applied to this case, mandates a dispute resolution process that "is not arbitration as envisioned by the FAA[.]" *See Heckman v. Live Nation Entm't*, 120 F.4th 670, 690 (9th Cir. 2024). Instead of mandating traditional bilateral arbitration, Lyft's Terms mandate a batching process that could delay the resolution of Plaintiffs' claims for years. The Terms also contain additional unconscionable provisions that, along with the batching process, render the entire dispute resolution provision unconscionable.

59. The Terms completely waive the right of consumers to seek public injunctive relief in any form and in any forum. The Terms purport to waive consumers' rights to sue in court and then stating that an "arbitrator shall have no authority to consider or resolve any Claim or issue any relief on a class, collective, or representative basis[.]" Terms § 17(b). Injunctive relief may only be awarded to an "individual party . . . to provide relief warranted by that party's individual claims." *Id*. The Terms also proport to waive Lyft users' rights to sue on a collective basis under the Private Attorneys General Act of 2004. *Id.* § 17(c).

60. Lyft also includes a separate "Class-Action and Coordinated-Action Waiver for Non-Arbitrated Claims." Terms § 18. This provision prevents any action or claims from proceeding "as a class, collective, coordinated, consolidated, mass, multi-plaintiff, joint and/or representative

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

action," with the notable exception that claims may be settled with Lyft on a class-wide basis. *Id.* That Lyft can, notwithstanding its broad class waiver, effectively reserves the unilateral choice to settle claims on a class-wide underscores the lack of mutuality of the terms.

61. In addition, Lyft includes an unconscionable broad limitations of liability provision that purports to absolve Lyft of liability "for any incidental, special, exemplary, punitive, consequential, or indirect damages . . . arising out of or in connection with" Lyft's services even if those damages are a result of Lyft's negligence and even if Lyft or its agents know of the possibility of such damage. Terms § 15. Lyft disclaims any and all liability to consumers for their use of their rideshare service. This statement is repeated twice in the Terms "for clarity" stressing the fact that, according to the Terms, this waiver is "without limit[ation]." *Id.*

62. The Terms also mandate an onerous "Pre-Arbitration Process." Lyft describes this process as "essential so that [users] and Lyft have a meaningful chance to resolve disputes informally" but the process operates to both formalize and delay any arbitration. "A party who intends to initiate arbitration must first send to the other a written notice of the dispute ('Notice')" which "must (1) describe the factual and legal nature and basis of the claim or dispute; (2) set forth the specific relief sought; and (3) include the name, mailing and email address, and phone number of the party sending the Notice." *Id.* § 17(d). This essentially requires Lyft users to draft a complaint—in substance, if not form—before initiating an "informal[]" arbitration. *Id.*

63. Lyft imposes further hurdles in its "Pre-Arbitration Process" by mandating that any Notice "must be personally signed", which seems to contemplate a wet signature, and "sent by email" to the responding party. *Id.* Customers with no ready access to a printer and scanner will be prevented, or at least frustrated, in their attempts to submit a Notice in accordance with Lyft's terms. The Terms also note that users "*might* be required to provide" additional information granting Lyft "authentication and consent" to share user data with an arbitrator or attorney. *Id.* (emphasis added). Lyft does not say what is required to provide appropriate "authentication and consent" (*see id.*) leaving customers to only guess at whether they have drafted a proper Notice.

64. Failure to follow any aspect of the "Pre-Arbitration Process" subjects consumers' claims to mandatory dismissal, even if the arbitration is already well-underway. *Id.* ("If any aspect

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

of these requirements has not been met, . . . [claims] must be dismissed [by the arbitrator].”). A court may also “enjoin the filing or prosecution of an arbitration or assessment or collection of any arbitration fees” if any aspect of the “Pre-Arbitration Process” is not followed, and process arbitrators have “the same authority as a court” to stay arbitrations on this basis. *Id.*

65. Far from containing an arbitration clause that allows for speedy, informal, resolution of disputes in bilateral arbitration, Lyft’s Terms envision judicial oversight of its Pre-Dispute process before even allowing a user to arbitrate his or her claim.

66. Worse, even when followed to a tee, the “Pre-Arbitration Process” works to delay the resolution of customer’s claims. “Whoever sends the Notice must give the other party 60 days from the receipt of the complete notice (including the Authentication and Consent, if required) to investigate the claim before commencing an arbitration.” *Id*. Customers must wait, at the very least, two months after serving a Notice before their arbitration may begin. If there is even a single error in the Notice they submit, that delay will be substantially longer since the two-month waiting period only begins when a “complete Notice” is submitted. *Id.*

67. If a customer, through no fault of their own, fails to satisfy the indefinite standard for providing “authentication and consent” but submits a personally signed and emailed Notice which provides all the necessary facts, spells out a claim for relief, and properly lists the customer’s contact information, the Notice will be deemed defective and, thus, incomplete. *See id.* (listing proper “Authentication and Consent” as an element of a “complete Notice”).

68. Worse, the Terms contain an unconscionable batching and bellwether provision. If twenty-five (25) or more “similar claims” are filed by “the same or coordinated counsel” a “modified” version of the AAA’s Mass Arbitration Supplementary Rules will apply. *Id.* § 17(h). In that scenario, “all of the cases must be resolved in arbitration in stages using bellwether proceedings,” a process which, Lyft admits, “may delay the arbitration of [each] claim.” In the first stage, forty cases are filed and individually resolved, one-by-one. *Id.* While the first batch is being arbitrated, “no other cases may be filed in arbitration, and the AAA shall not accept, administer, or demand payment of fees for arbitrations” not submitted in the first batch. *Id*. This first stage operates to indefinitely delay the filing and resolution of any claims that are not among the first forty to be

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

resolved. This alone makes the provision unconscionable.

69. When this first bellwether stage is viewed in conjunction with the second (and successive) stages of batched arbitration, the effect of the procedures—which is to indefinitely delay resolution of claims—becomes even more pronounced. In the second stage of the bellwether process, "the parties *must* engage in a single mediation of *all remaining cases*," first with an outside mediator and then, if the first mediation is unsuccessful, with an AAA mediator selected via a "rank and strike" process. *Id*. (emphasis added). This mandated procedure will not necessarily result in a settlement.

70. If, after repeated rounds of mediation, a global settlement cannot be reached, the batching process continues in tranches of one hundred cases at a time, indefinitely. *Id*. These provisions may be enforced by court order or order of a process arbitrator, if one is appointed. *Id*. As explained in *Heckman*, which considered a similar process, a batched, bellwether dispute resolution process is not the "fair and efficient alternative to bilateral judicial proceedings" contemplated by the Federal Arbitration Act ("FAA"). *See Heckman*, 120 F.4th at 689 ("We agree with our concurring colleague that the FAA simply does not apply to and protect the mass arbitration model set forth in Ticketmaster's Terms and New Era's Rules."); *see also id*. at 690-93 (Vandyke, J., concurring). Moreover, an agreement to reach a global settlement through mediation is not, by definition, an agreement to arbitrate. *See* Terms § 17(h). The process proscribed in Lyft's Terms is not arbitration as defined under the FAA. *See Heckman*, 120 F.4th at 690.

71. Accordingly, because the dispute resolution provisions of Lyft's Terms are unconscionable and, separately, do not mandate the resolution of claims through bilateral arbitration, none of Plaintiffs' or the Classes' claims are subject to arbitration here and Lyft's class waiver is invalid.

72. After the original complaint in this action was filed, Lyft updated its Terms in February 2026. Lyft claims that "none of the revisions to Lyft's February 2026 TOS, including the revisions related to dispute resolution, were directed at or made in response to this litigation," but rather Lyft was already intending to update the dispute resolution provisions of its 2024 Terms because "other plaintiffs have made, and courts have addressed, similar arguments long before

979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

[Plaintiff] filed this lawsuit." In other words, Lyft is well-aware that the 2024 Terms are unconscionable and unenforceable.

73. The updated 2026 Terms are equally unconscionable for the reasons detailed in Plaintiff Zigler's Rule 23(d) motion asking the Court to invalidate them. *See* ECF No. 13. However, in response to Plaintiff Zigler's Rule 23(d) motion, Lyft agreed not to invoke the 2026 Terms in this action (ECF No. 21), so Plaintiffs will not address them further here.

**CLASS ACTION ALLEGATIONS**

74. Plaintiffs bring this lawsuit as a class action under Federal Rule of Civil Procedure 23.

75. Plaintiffs bring this action on behalf of themselves and on behalf of the following Classes, initially defined as follows:

> **Nationwide Class**: All those in the United States who, within the applicable statute of limitations, paid for a ride with a precise pick-up time, as opposed to a range.
>
> **California Class**: All those in California who, within the applicable statute of limitations, paid for a ride with a precise pick-up time, as opposed to a range.
>
> **New York Class**: All those in New York who, within the applicable statute of limitations, paid for a ride with a precise pick-up time, as opposed to a range.
>
> **Pennsylvania Class**: All those in Pennsylvania who, within the applicable statute of limitations, paid for a ride with a precise pick-up time.
>
> **Terms Class**: All those in the United States who Lyft purports to have bound to the unconscionable dispute resolution provisions in its Terms.

76. Excluded from each Class are: (1) Lyft, any entity or division in which Lyft has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

77. Plaintiffs reserve the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

78. The claims of all class members derive directly from a single course of conduct by Lyft. Lyft has engaged and continues to engage in uniform and standardized conduct toward the class members.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

79. Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

80. Accordingly, Plaintiffs brings this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all other individuals similarly situated pursuant under Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions. Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

81. **Numerosity** (Fed. R. Civ. P. 23(a)(1)): The members of the proposed Class are so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the class includes tens of thousands, if not hundreds of thousands of members.

82. **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)): Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

a) Whether Lyft engaged in the conduct alleged in this Complaint;

b) Whether Lyft violated the applicable statutes alleged herein;

c) Whether Lyft's conduct emanated from the State of California;

d) Whether Plaintiffs and the class members are injured and harmed directly by Lyft's conduct; and

e) Whether Plaintiffs and the class members are entitled to damages due to Lyft's conduct as alleged in this Complaint, and if so, in what amounts.

83. **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)): The claims of Plaintiffs and the respective Classes are based on the same legal theories and arise from the same unlawful and willful conduct of Lyft, resulting in the same injury to the Plaintiffs and Classes. Plaintiffs and all class members are similarly affected by Lyft's wrongful conduct and were damaged in the same way.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Plaintiffs' interests coincide with, and are not antagonistic to, those of the other class members. Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint.

84. **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)): Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the class members, and they have retained counsel who are competent and experienced in complex class actions, mass arbitrations, and consumer litigations. Plaintiffs and their counsel will fairly and adequately protect the interest of the class members.

85. **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)): A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Lyft's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

86. **Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(2)): In the alternative, this action may properly be maintained as a class action, because:

a) the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Lyft; or

b) the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

c) Lyft has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

**COUNT I**
**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Business & Professional Code §§17200 *et seq.***
**(By Plaintiffs, individually and on behalf of the Nationwide Class)**

87. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

88. California Business & Professions Code, §§ 17200, *et seq.* prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Lyft's false and misleading advertising claims regarding its fare options violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

89. First, Lyft's representations and omissions regarding faster and more predictable pickup times are unlawful because they are misleading to a reasonable consumer and violate California's Consumer Legal Remedies Act, California's False Advertising Law, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and New York General Business Law §§ 349–50, as alleged herein.

90. Second, Lyft's representations and omissions regarding faster and more predictable pickup times violate the "unfair" prong of the UCL because they are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact of these representations and omissions on consumers outweighs any reasons, justifications, or motives for Lyft's conduct.

91. Third, Lyft's representations and omissions violate the "fraudulent" prong of the UCL because they are likely to deceive members of the public.

92. Plaintiffs and the class members reasonably relied on Defendant's representations and omissions. The representations and omissions were material, because a reasonable consumer would consider the certainty of an expected pickup time and the speed of pickup to be important factors in deciding which Lyft fare to purchase, and those facts were a substantial factor in Plaintiffs'

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

and class members' decisions to pay more and purchase a faster and more predictable ride.

93. As a direct and proximate result of Defendant's violations of the UCL, Plaintiffs and the class members have suffered injury in fact and have lost money. Plaintiffs and the class members all paid an unwarranted premium for faster and more predictable pickup times and/or were denied the benefit of their bargain.

94. Absent Lyft's misrepresentations and omissions, Plaintiffs and the class members would not have purchased fares advertised as having faster and more predictable pickup times or would have paid substantially less for them.

95. Plaintiffs seek relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole themselves and the class members. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund through damages, Plaintiffs would have to show that Priority Pickup and other more expensive fares have no market value, whereas that showing is not required for restitution.

96. As a result of these violations under each of the fraudulent, unfair, and unlawful prongs of the UCL, Lyft has been unjustly enriched at the expense of Plaintiffs and the class members. Specifically, Lyft has been unjustly enriched by obtaining revenues and profits it would not otherwise have obtained absent their false, misleading, and deceptive conduct.

97. Through its unfair acts and practices, Lyft has improperly obtained money from Plaintiffs and the class members. As such, Plaintiffs request that this Court cause Lyft to restore this money to Plaintiffs and all class members, and to enjoin them from continuing to violate the UCL, and/or from violating the UCL in the future. Otherwise, Plaintiffs, the class members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

98. **Permanent public injunctive relief**. Plaintiffs, acting as private attorney generals, also seeks public injunctive relief to protect the general public from Lyft's conduct.

99. Lyft's false advertising and manipulative tactics are ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
JANOVE PLLC

injunction to enjoin Lyft from engaging in the misconduct alleged herein. Injunctive relief is appropriate because Lyft continues to deceptively market its Priority Pickup and other more expensive fare options as providing a faster and more certain pick-up time. Injunctive relief is necessary to prevent Lyft from continuing to engage in unlawful conduct and to prevent future harm to Plaintiffs the class members, which cannot be achieved through available legal remedies.

100. Plaintiffs remain in the market for rideshare services, and would purchase Lyft's rideshare services, including those marketed with faster and more predictable pick-up times, if they could trust Lyft's representations. However, Plaintiffs cannot do so because Lyft continues to deceptively market the pick-up times of its rideshare services.

**COUNT II**
**Violations of California's False Advertising Law ("FAL")**
**Cal. Business & Professional Code §§ 17500 et seq.**
**(By Plaintiffs, individually and on behalf of the Nationwide Class)**

101. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

102. The False Advertising Law, codified at Cal. Bus. & Prof. Code §§ 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]" The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or has a capacity, likelihood, or tendency to deceive or confuse the public.

103. Defendant violated the FAL when it advertised and marketed Lyft fares through the unfair, deceptive, and misleading representations and omissions disseminated to the public, all of which communicated that paying more for certain rides would mean a pick-up by a certain time. Many riders who pay for these fares are not picked up by the advertised time, leaving them waiting longer than expected even after paying a premium for faster pickup. In short, Lyft offers faster and more predictable pickup times for increased fares but often cannot deliver the advertised benefits of the service, which include a purportedly certain pickup time and a faster pickup time than Lyft's other options.

104. Plaintiffs and the class members reasonably relied on Lyft's representations and omissions. These representations and omissions were material because a reasonable consumer

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

would consider the time of pickup an important factor in deciding whether to purchase more expensive fares. The representations and omissions were also a substantial factor in Plaintiffs' and class members' decisions to pay for faster and more predictable pickup times.

105. As a direct and proximate result of Lyft's violations of the FAL, Plaintiffs and the class members have all suffered injury in fact and have lost money. Plaintiffs and the class members paid an unwarranted premium for faster and more predictable pickup times and/or were denied the benefit of their bargain.

106. Absent Lyft's misrepresentations and omissions, Plaintiffs and the class members would not have purchased fares advertised as having faster and more predictable pickup times or would have paid substantially less for them.

107. Plaintiffs seek relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole themselves and the class members. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund through damages, Plaintiffs would have to show that Priority Pickup and other more expensive fares have no market value, whereas that showing is not required for restitution.

108. **Permanent public injunctive relief**. Plaintiffs, acting as private attorney generals, also seek public injunctive relief to protect the general public from Lyft's conduct.

109. Lyft's false advertising and manipulative tactics are ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Lyft from engaging in the misconduct alleged herein. Injunctive relief is appropriate because Lyft continues to deceptively market Priority Pickup and other more expensive fare options as advertising a certain pick-up time. Injunctive relief is necessary to prevent Lyft from continuing to engage in unlawful conduct and to prevent future harm to Plaintiffs and the class members, which cannot be achieved through available legal remedies.

110. Plaintiffs remain in the market for rideshare services, and would purchase Lyft's rideshare services, including those marketed with faster and more predictable pick-up times, if they could trust Lyft's representations. However, Plaintiffs cannot do so because Lyft continues to

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

deceptively market the pick-up times of its rideshare services.

**COUNT III**
**Violations of the California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code. §§1750 et seq.**
**(By Plaintiffs, individually and on behalf of the Nationwide Class)**

111. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth here.

112. Plaintiffs and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

113. Lyft is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and sells "goods or services" within the meaning of Cal. Civ. Code §§ 1761(b) and 1770.

114. Lyft's rideshare services ("Products") are a "good" or "service" within the meaning of Cal. Civ. Code. §§ 1761(a) and (b).

115. Lyft has violated § 1770(a)(5) by representing that the Product had characteristics it did not have. Lyft advertises Priority Pickup and other more expensive fare options as arriving at a specific pickup time, but, as Lyft acknowledges, the algorithm that predicts pickup time is flawed. Therefore, despite being advertised as such, Priority Pickup times cannot be reliably predicted.

116. Lyft has violated § 1770(a)(7) by misrepresenting that the Product is of a particular standard, quality, or grade. Priority Pickup and other more expensive fare options are marketed as providing a faster pickup within a certain amount of time. However, in many instances, these rides do not arrive in the advertised window, sometimes arriving as slowly as lower priced rides or, in some cases, even slower. Thus, Priority Pickup and other more expensive fare options are not of the premium standard, quality, or grade of which they are advertised; they are advertised with a certain, dependable pickup time when, in fact, pickup times are inherently unpredictable; pickup times are also slower than advertised, and sometimes the same quality—or worse—than supposedly subpar pickup options, namely Standard (with respect to Priority Pickup) or Wait & Save.

117. Lyft has violated § 1770(a)(9) by advertising the Products with an intent not to sell them as advertised. Lyft advertises Priority Pickup and other more expensive fare options as arriving

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

at a specific pickup time, but, as Lyft acknowledges, the algorithm that predicts pickup time is flawed. Therefore, despite being advertised as such, Priority Pickup and other more expensive fare options are not reliable as to arrival times. Lyft also advertises Priority Pickup and other more expensive fare options as arriving faster than its lower priced options but, as Lyft is aware, the higher priced fares can arrive as slowly, or slower, than its other lower priced options. Therefore, despite being advertised as such, Priority Pickup and other more expensive fare options rides are not always faster.

118. Plaintiffs and the other class members suffered actual damages as a direct and proximate result of Lyft's violation of the CLRA for conduct alleged herein.

119. Plaintiffs and the class members demand actual damages and punitive damages because on January 20, 2026, Plaintiff Zigler sent Lyft a demand for corrective action pursuant to CLRA § 1782, which was delivered to Lyft on Thursday, January 29, 2026, at 9:22 AM, a CLRA demand letter. Lyft has not taken any corrective action as requested in Plaintiff Zigler's letter.

120. Plaintiffs and the class members demand judgment against Lyft for injunctive relief and attorney's fees.

121. **Permanent public injunctive relief**. Plaintiffs, acting as private attorney generals, seek public injunctive relief to protect the general public from Lyft's conduct.

122. Lyft's false advertising and manipulative tactics are ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Lyft from engaging in the misconduct alleged herein. Injunctive relief is appropriate because Lyft continues to deceptively market Priority Pickup and other more expensive fare options with certain pick-up times. Injunctive relief is necessary to prevent Lyft from continuing to engage in unlawful conduct and to prevent future harm to Plaintiffs and the proposed classes which cannot be achieved through available legal remedies.

123. Plaintiffs remain in the market for rideshare services, and would purchase Lyft's rideshare services, including those marketed with faster and more predictable pick-up times, if they could trust Lyft's representations. However, Plaintiffs cannot do so because Lyft continues to deceptively market the pick-up times of its rideshare services.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

**COUNT IV**
**Violations of the California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code. §§1750 et seq.**
**(By Plaintiffs, individually and on behalf of the Nationwide Class)**

124. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth here.

125. Plaintiffs and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

126. Lyft is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and sells "goods or services" within the meaning of Cal. Civ. Code §§ 1761(b) and 1770.

127. Lyft's rideshare services ("Products") are a "good" or "service" within the meaning of Cal. Civ. Code. §§ 1761(a) and (b).

128. Lyft has violated § 1770(a)(19) by inserting unconscionable provisions into its Terms of Use, such Section 15 ("Limitation of Liability"), which, among other things, includes overly broad disclaimers of liability, Section 17 ("Dispute Resolution and Arbitration Agreement"), which imposes, *inter alia*, burdensome a "Pre-Arbitration Process" and burdensome bellwether batching process, and Section 18 ("Class Action and Coordinated-Action Waiver") which contains a broad waiver of the right to pursue collective relief. These sections are each unconscionable under California law.

129. Plaintiffs and the other class members suffered actual damages as a direct and proximate result of Lyft's refusal to waive enforcement of the Terms as requested by Plaintiff Zigler in her January 20, 2026, demand letter, and because, through its conduct to date, Lyft has threatened to enforce those unconscionable provisions on Plaintiffs and members of the classes.

130. **Permanent public injunctive relief**. Plaintiffs, acting as private attorney generals, seek public injunctive relief to protect the general public from Lyft's conduct.

131. Lyft's continued threatened and actual enforcement of its unconscionable provisions in its Terms, and on new versions of its Terms it promulgates, is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

to enjoin Lyft from engaging in the misconduct alleged herein, preventing Lyft from enforcing or including any unconscionable provisions or similar variations thereof in any version of its terms. Injunctive relief is necessary to prevent Lyft from continuing to engage in unlawful conduct and to prevent future harm to Plaintiffs and the proposed classes which cannot be achieved through available legal remedies.

132. Plaintiffs remain in the market for rideshare services, and would purchase Lyft's rideshare services, including those marketed with faster and more predictable pick-up times, if they could trust Lyft's representations. However, Plaintiffs cannot do so because Lyft continues to deceptively market the pick-up times of its rideshare services.

**COUNT V**
**Violations of Pennsylvania's**
**Unfair Trade Practices and Consumer Protection Law ("UTPCPL")**
**73 P.S. §§ 201-1, *et seq.***
**(By Plaintiff Zigler, individually and on behalf of the Pennsylvania Class)**

133. Plaintiff Zigler incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

134. Plaintiff Zigler and the other class members are "persons" within the meaning of 73 P.S. § 201-2 (2).

135. Lyft is a "person" within the meaning of 73 P.S. § 201-2(2) and engages in "commerce" within the meaning of 73 P.S. § 201-2(3).

136. Lyft has violated § 201-2(4)(v) by representing that the services provided by Priority Pickup and other more expensive fare options had characteristics and benefits they do not have. Lyft advertises Priority Pickup and other more expensive fare options as arriving at a specific pickup time, but, as Lyft acknowledges, the algorithm that predicts pickup time is flawed. Therefore, despite being advertised as such, arrival times for Priority Pickup and other more expensive fare options cannot be reliably predicted. Lyft also advertises Priority Pickup and other more expensive fare options as arriving faster than its lower priced options but, as Lyft is aware, Priority Pickups and other more expensive fare options can arrive as slowly, or slower, than its other lower priced options. Therefore, despite being advertised as such, Priority Pickup and other more expensive fare options are not always faster.

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

137. Lyft has violated § 201-2(4)(vii) by misrepresenting that the services provided by Priority Pickup and other more expensive fare options are of a particular standard, quality, or grade. Priority Pickup and other more expensive fare options are marketed as providing both a certain and faster pickup. However, in many instances, Priority Pickup and other more expensive fare options do not arrive by the advertised pickup time. In some cases, they arrive as slowly as the times advertised for lower priced rides or even slower. Thus, Priority Pickup and other more expensive fare options are not of the premium standard, quality, or grade of which they are advertised; they are uncertain, slower than advertised, and sometimes the same quality—or worse—than supposedly subpar pickup options.

138. Lyft has violated § 201-2(4)(ix) by advertising the Priority Pickup and other more expensive fare options services with an intent not to sell it as advertised. Lyft advertises Priority Pickup and other more expensive fare options as providing a certain pickup time, but, as Lyft acknowledges, the algorithm that predicts pickup time is flawed.

139. Plaintiffs and the other class members suffered actual damages as a direct and proximate result of Lyft's violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law for conduct alleged herein.

140. Lyft's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiff Zigler and the class members and will continue to damage Plaintiff Zigler and the class members and deceive the public unless enjoined by this Court.

141. Plaintiff Zigler and the class members demand judgment against Lyft for actual damages (or, at minimum, $100 in statutory damages), treble damages and attorney's fees and costs, pursuant to § 201-9.2(a), and for injunctive relief, pursuant to § 201-9.2(b).

142. Plaintiff remains in the market for rideshare services, and would purchase Lyft's rideshare services, including those marketed with faster and more predictable pick-up times, if she could trust Lyft's representations. However, Plaintiff cannot do so because Lyft continues to deceptively market the pick-up times of its rideshare services.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

**COUNT VI**
**Violations of New York Gen. Bus. Law § 349**
**(On Behalf of Plaintiff Robey and the New York Class)**

143. Plaintiff Robey incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

144. NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

145. Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to prevailing Plaintiffs.

146. As alleged herein, Defendant's advertisements and promotion of its fares are materially misleading and deceptive within the meaning of NY GBL § 349.

147. Defendant's acts and practices deceived Plaintiff Robey and the class members. Plaintiff Robey and the class members reasonably relied on these representations and believed they were purchasing a ride that had a faster and more predictable arrival time than lower priced fares. In truth, they paid a premium price for a faster and more predictable arrival time, but did not receive one.

148. Plaintiff Robey and the class members did not receive the benefit of their bargain. They paid a price premium for fares falsely marketed as having a quicker and more predictable arrival time than lower priced fares. But Lyft did not deliver on these promises.

149. Defendant disseminated these false and misleading statements throughout New York, which were known, or should have been known through reasonable care, to be untrue and misleading to consumers, including Plaintiff Robey and the class members.

150. Plaintiff Robey and the class members have been injured by Defendant's deceptive acts or practices, suffering an ascertainable loss by paying more for a product than they otherwise

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

would have but for the false advertising.

151. Plaintiff Robey and the class members have no adequate remedy at law.

152. Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff Robey and the class members and will continue to mislead consumers unless enjoined by this Court.

153. Plaintiff remains in the market for rideshare services, and would purchase Lyft's rideshare services, including those marketed with faster and more predictable pick-up times, if he could trust Lyft's representations. However, Plaintiff cannot do so because Lyft continues to deceptively market the pick-up times of its rideshare services.

**COUNT VII**
**Violations of New York Gen. Bus. Law § 350**
**(On Behalf of Plaintiff Robey and the New York Class)**

154. Plaintiff Robey incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

155. By reason of the acts set forth above, Defendant has been and is engaged in consumer-oriented advertising and marketing against Plaintiff Robey and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

156. Defendant caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications.

157. Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant's material misrepresentations.

158. Plaintiff Robey and the class members have been injured by Defendant's deceptive acts or practices.

159. Plaintiff Robey and the class members have no adequate remedy at law.

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
JANOVE PLLC

160. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Robey and the class members and will continue to damage both Plaintiff Robey and the class members and deceive the public unless enjoined by this Court.

161. Pursuant to NY GBL § 350-e, Plaintiff Robey and the class members seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350 a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

162. Defendant's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Defendant's false advertising in deciding to purchase rides from Lyft. Plaintiff Robey and the class members reasonably relied on these representations and believed they were purchasing a ride with a faster and more predictable arrival time. However, their rides did not arrive faster or at the times advertised by Lyft.

163. Plaintiff Robey and the class members did not receive the benefit of their bargain. They paid a price premium for fares falsely marketed as having a quicker and more predictable arrival time than lower priced fares. But Lyft did not deliver on these promises.

164. The widespread deception not only caused financial harm to consumers but also promoted misleading information about arrival times and predictability of Lyft rides, peddling the false narrative that consumers could pay more to obtain a faster and more predictable arrival time.

165. Defendant's conduct thus caused real-world harm and poses an ongoing risk of further injury if not enjoined.

166. Plaintiff remains in the market for rideshare services, and would purchase Lyft's rideshare services, including those marketed with faster and more predictable pick-up times, if he could trust Lyft's representations. However, Plaintiff cannot do so because Lyft continues to deceptively market the pick-up times of its rideshare services

**COUNT VIII**
**Unjust Enrichment**
**(By Plaintiffs, individually and on behalf of All Classes)**

167. Plaintiffs incorporate by reference all allegations in this Complaint and restate them

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

as if fully set forth herein.

168. Lyft misrepresented that by paying for a Priority Pickup and other more expensive fare options, Plaintiffs and the class members would receive pickup by a certain time. When Lyft picked up users later than advertised, Lyft retained the price premium.

169. Plaintiffs and the class members spent significant amounts of money on premium fares that they were deceived and manipulated into purchasing by Lyft's dark patterns and misleading advertising.

170. It would be unfair for Lyft to keep the money spent without compensating Plaintiffs and the class members.

**COUNT IX**
**For Declaratory Judgment or Relief**
**Cal. Civ. Code § 1060, *et seq.***
**(By Plaintiffs, individually, and on behalf of the Terms Class)**

171. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

172. Under California law, "[a]ny person interested under a written instrument…or under a contract, or who desires a declaration of his or her rights or duties with respect to another…may, in cases of an actual controversy relating to the legal rights and duties of the respective parties," may maintain a complaint or cross complaint "for a declaration of his or her rights and duties." Furthermore, he or she "may ask for a declaration of rights or duties, either alone, or with other relief, and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time." Cal. Civ. Code § 1060.

173. As described above, Lyft's 2024 Terms contain dispute resolution provisions and a purported arbitration clause that is substantively and procedurally unconscionable under California law. This renders the clause unenforceable against Plaintiffs and all members of the putative Terms class.

174. An actual controversy of sufficient immediacy exists between the Plaintiffs and the putative Terms class, on the one hand, and Lyft, on the other hand, concerning their respective rights and duties under the 2024 Terms. Plaintiffs contend that the dispute resolution provisions and

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

purported arbitration clause contained within the 2024 Terms are void and unenforceable. Lyft contends and acts as if these terms have legal force.

175. Plaintiffs seek a judicial determination of rights and duties and a declaration or judgement that the dispute resolution provisions and purported arbitration clause contained in the 2024 Terms are void and unenforceable against them or against any members of the putative Terms Class.

176. A judicial declaration would advise Plaintiffs and other Lyft users of their rights and would advise Lyft of its duties to Plaintiffs and other users regarding the resolution of disputes, specifically whether disputes could proceed in court or, alternatively, would have to go through the purported arbitration process described in Lyft's 2024 Terms.

177. Such a declaration would not only benefit Plaintiffs and the class members, but would also inure for the benefit of the public at large. The Ninth Circuit has specifically held than an unconscionable arbitration clause is "contrary to" California's "fundamental policy" against enforcing such agreements. *E.g.*, *Hoffman v. Citibank (South Dakota), N.A.*, 546 F.3d 1078, 1083 (9th Cir. 2008) (per curiam); *Douglas v. U.S. Dist. Court for Cent. Dist. of Cal.*, 495 F.3d 1062, 1067 (9th Cir. 2007) (per curiam). Moreover, Lyft's Terms violate California's public policy against allowing corporate actors to unilaterally impose exculpatory clauses into contracts of adhesion, *Discover Bank v. Superior Court*, 36 Cal.4th 148, 161 (2005) and, more broadly, violates "California's strong public policy to protect consumers against unfair and deceptive business practices," *see Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009), by insulating Lyft from consumer claims based on unfair practices, like those alleged here. *See also McGill v. Citibank, N.A.*, 393 Cal.5th 945, 952 (2017) (articulating California's public policy against impediments to consumers' right to seek public injunctive relief under state law).

**COUNT X**
**For Declaratory Judgement or Relief**
**Federal Declaratory Judgment Act 28 U.S.C. §§ 2201-2202**
**(By Plaintiffs, individually and on behalf of the Terms Class)**

178. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

179. Under federal law, "[i]n a case of actual controversy within its jurisdiction, … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment and shall be reviewable as such." 28 U.S.C. § 2201; *see also* Fed. R. Civ. P. 57.

180. An actual controversy of sufficient immediacy exists between the Plaintiffs and the putative Terms Class, on the one hand, and Lyft, on the other hand, concerning their respective rights and duties under the 2024 Terms. Plaintiffs contend that the dispute resolution provisions and purported arbitration clause contained within the 2024 Terms are void and unenforceable. Lyft contends and acts as if these provisions have legal force.

181. Plaintiffs seek a judicial determination of rights and duties and a declaration or judgement that the dispute resolution provisions and purported arbitration clause contained in the 2024 Terms are void and unenforceable against them or against any members of the putative Terms Class.

182. A judicial declaration would advise Plaintiffs and other Lyft users of their rights and would advise Lyft of its duties to Plaintiffs and other users regarding the resolution of disputes, specifically whether disputes could proceed in court or, alternatively, would have to go through the arbitration process described in Lyft's 2024 Terms.

183. Such a declaration would not only benefit Plaintiffs and the class members, but also would inure for the benefit of the public at large. The Ninth Circuit has specifically held than an unconscionable arbitration clause is "contrary to" California's "fundamental policy" against enforcing such agreements. *E.g.*, *Hoffman v. Citibank (South Dakota), N.A.*, 546 F.3d 1078, 1083 (9th Cir. 2008) (per curiam); *Douglas v. U.S. Dist. Court for Cent. Dist. of Cal.*, 495 F.3d 1062, 1067 (9th Cir. 2007) (per curiam). Moreover, Lyft's Terms violate California's public policy against allowing corporate actors to unilaterally impose exculpatory clauses into contracts of adhesion, *Discover Bank v. Superior Court*, 36 Cal.4th 148, 161 (2005) and, more broadly, violates "California's strong public policy to protect consumers against unfair and deceptive business practices," *see Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009), by insulating Lyft from

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

consumer claims based on unfair practices, like those alleged here. *See also McGill v. Citibank, N.A.*, 393 Cal.5th 945, 952 (2017) (articulating California's public policy against impediments to consumers' right to seek public injunctive relief under state law).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the class members as follows:

A. certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as Class Counsel;

B. awarding Plaintiffs and the Classes compensatory damages and actual damages, to be determined by proof;

C. awarding Plaintiffs and the Classes appropriate relief, including actual, statutory and treble damages;

D. for punitive damages;

E. for injunctive relief on behalf of Plaintiffs and the Classes, as well as on behalf of the public;

F. for declaratory and equitable relief, including a declaration that Lyft violated and has continued to violate, California's UCL, FAL, and CLRA, Pennsylvania's UTPCPL, and New York GBL §§ 349 & 50, a declaration that Lyft's Terms' dispute resolution provisions and limitations on liability and types of relief are unenforceable, and an injunction requiring Lyft to comport with these state statutes, and for restitution and disgorgement;

G. awarding Plaintiffs and the Class the costs of prosecuting this action;

H. awarding Plaintiffs and the Class reasonable attorneys' fees and costs, as allowable by law;

I. awarding pre-judgment and post-judgment interest; and

J. granting any other relief as this Court may deem just and proper.

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury for all claims so triable.

DATED: June 17, 2026

Respectfully submitted,

By: /s/ *Raphael Janove*
Raphael Janove

**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
115 Broadway, 5th Floor
New York, NY 10006
Telephone: (646) 347-3940

**JANOVE PLLC**
Liana Roza Vitale (SBN 348772)
liana@janove.law
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

*Attorneys for Plaintiffs and the Proposed Classes*