SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Archis A. Parasharami (SBN 321661)
archis.parasharami@skadden.com
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500

Daniel E. Jones (*pro hac vice*)
daniel.jones@skadden.com
1440 New York Ave., NW
Washington, DC 20005
Telephone: (202) 371-7000

*Attorneys for Defendant Lyft, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACY ZIGLER, LUCY YE, and BRIAN ROBEY, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant. | Case No. 3:26-cv-575-EMC<br><br>Hon. Edward M. Chen<br><br>**DEFENDANT LYFT, INC.'S RENEWED MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: September 10, 2026<br>Time: 1:30 p.m.<br>Location: Courtroom 5, 17th Floor |

## TABLE OF CONTENTS

**Page**

INTRODUCTION .... 1

BACKGROUND .... 2

A. Lyft's Terms of Service .... 2

B. Plaintiffs agreed to arbitrate their disputes with Lyft. .... 4

C. Plaintiffs filed this lawsuit despite their arbitration agreements. .... 5

ARGUMENT .... 5

I. The FAA Requires Enforcement of Plaintiffs' Arbitration Agreements. .... 5

A. Plaintiffs agreed to arbitrate. .... 6

B. Plaintiffs' claims fall within the scope of their arbitration agreements. .... 7

II. Plaintiffs' Unconscionability Challenges Fail. .... 7

A. The arbitration agreement is at most minimally procedurally unconscionable. .... 8

B. The challenged provisions are not substantively unconscionable. .... 10

1. Plaintiffs' challenges based on provisions outside of the arbitration agreement fail .... 10

2. The pre-arbitration notice of dispute process is enforceable. .... 11

3. The staging procedures are enforceable. .... 14

a. Criticisms of staged procedures are misplaced.. .... 17

b. Lyft's arbitration agreement does not offend *Heckman* .... 19

c. The FAA preempts plaintiffs' unconscionability challenge to the staging procedures .... 20

4. The challenged terms are severable. .... 21

C. Plaintiffs are required to arbitrate under their earlier arbitration agreements. .... 23

III. Plaintiffs Cannot Evade Arbitration By Invoking *McGill*. .... 24

IV. This Action Should Be Stayed Pending Arbitration of Plaintiffs' Claims. .... 25

CONCLUSION .... 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Airs International, Inc. v. Perfect Scents Distributions, Ltd.*, 902 F. Supp. 1141 (N.D. Cal. 1995) ........ 24

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ........ 6, 12, 21

*Baltazar v. Forever 21, Inc.*, 367 P.3d 6 (Cal. 2016) ........ 8, 9

*In re Barker*, 839 F.3d 1189 (9th Cir. 2016) ........ 6

*Bekele v. Lyft, Inc.*, 918 F.3d 181 (1st Cir. 2019) ........ 7

*Belton v. Comcast Cable Holdings, LLC*, 151 Cal.App.4th 1224 (2007) ........ 9

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) ........ 9, 12

*Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019) ........ 25

*Brady v. Williams Capital Group*, 64 A.D.3d 127 (N.Y. App. Div. 2009) ........ 21

*Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866 (9th Cir. 1979) ........ 15

*Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*, 2014 WL 116442 (N.D. Cal. Jan. 13, 2014) ........ 9

*Brooks v. WarnerMedia Direct, LLC*, 2024 WL 3330305 (S.D.N.Y. July 8, 2024) ........ 12, 17

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ........ 10

*Burke v. Wells Fargo Bank, N.A.*, 2025 WL 719973 (N.D. Cal. Mar. 6, 2025) ........ 14

*Caimano v. H&R Block*,
2024 WL 3295589 (E.D. Pa. July 3, 2024) ........ 8

*Camilo v. Lyft, Inc.*,
384 F. Supp. 3d 435 (S.D.N.Y. 2019) ........ 7

*Chun Ping Turng v. Guaranteed Rate, Inc.*,
371 F. Supp. 3d 610 (N.D. Cal. 2019) ........ 11

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) ........ 5

*Clymer v. Jetro Cash & Carry Enterprises*,
334 F. Supp. 3d 683 (E.D. Pa. 2018) ........ 21

*Cordero v. Coinbase, Inc.*,
2025 WL 2223495 (N.D. Cal. Aug. 5, 2025) ........ 20

*Cover v. Windsor Surry Co.*,
2016 WL 520991 (N.D. Cal. Feb. 10, 2016) ........ 8

*Cunningham v. Lyft, Inc.*,
17 F.4th 244 (1st Cir. 2021) ........ 7

*Davis v. Experian Information Solutions, Inc.*,
2025 WL 2998157 (N.D. Cal. Oct. 24, 2025) ........ 20

*Diaz v. T-Mobile USA, Inc.*,
2026 WL 495233 (E.D. Cal. Feb. 20, 2026) ........ 17

*Donovan v. Coinbase Global, Inc.*,
649 F. Supp. 3d 946 (N.D. Cal. 2023) ........ 9

*Dotson v. Amgen, Inc.*,
181 Cal.App.4th 975 (2010) ........ 9

*Estrada v. CleanNet USA, Inc.*,
2015 WL 833701 (N.D. Cal. Feb. 24, 2015) ........ 11

*Faggiano v. CVS Pharmacy, Inc.*,
283 F. Supp. 3d 33 (E.D.N.Y. 2017) ........ 22

*Fisher v. MoneyGram International, Inc.*,
66 Cal.App.5th 1084 (2021) ........ 9

*Food Safety Net Services v. Eco Safe Systems USA, Inc.*,
209 Cal.App.4th 1118 (2012) ........ 11

*Frezza v. Google Inc.*,
2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ... 8

*Gambo v. Lyft, Inc.*,
642 F. Supp. 3d 46 (D.D.C. 2022) ... 7

*Hakopian v. Mukasey*,
551 F.3d 843 (9th Cir. 2008) ... 6

*Hardisty v. Moore*,
2015 WL 639388 (S.D. Cal. Oct. 22, 2015) ... 24

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024) ... 19, 20

*In re HIV Antitrust Litigation*,
2023 WL 7397567 (N.D. Cal. Nov. 8, 2023) ... 17

*Hodges v. Comcast Cable Communications, LLC*,
21 F.4th 535 (9th Cir. 2021) ... 14, 25

*Jones v. Starz Entertainment, LLC*,
129 F.4th 1176 (9th Cir. 2025) ... 18, 19, 20

*Julian v. TTE Technology, Inc.*,
2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) ... 8

*Kennedy v. Lyft, Inc.*,
No. CGC-25-630920 (Cal. Super. Ct. San Francisco Cnty. May 19, 2026) ... passim

*Kindred Nursing Centers Limited Partnership v. Clark*,
581 U.S. 246 (2017) ... 20, 21

*Kohler v. Whaleco, Inc.*,
757 F. Supp. 3d 1112 (S.D. Cal. 2024) ... 20

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) ... 7, 20

*Lee v. American Express Travel Related Services, Inc.*,
348 F. App'x 205 (9th Cir. 2009) ... 14

*Lewis v. YouTube, LLC*,
244 Cal.App.4th 118 (2015) ... 11

*Little v. Auto Stiegler, Inc.*,
29 Cal. 4th 1064 (2003) ... 22

*MacClelland v. Cellco Partnership*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022) ........ 14

*MacPherson v. McGee Memorial Hospital*,
128 A.3d 1209 (Pa. Super. Ct. 2015) ........ 22

*In re Marriage of Facter*,
212 Cal.App.4th 967 (2013) ........ 23

*Martinez v. City of West Sacramento*,
2021 WL 2227830 (E.D. Cal. June 1, 2021) ........ 13

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ........ 8

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) ........ 24

*McMahan v. Whaleco, Inc.*,
2026 WL 657449 (E.D.N.Y. Mar. 9, 2026) ........ 12

*Meadows v. Cebridge Acquisition, LLC*,
132 F.4th 716 (4th Cir. 2025) ........ 11, 12

*Meyer v. Uber Technologies, Inc.*,
868 F.3d 66 (2d Cir. 2017) ........ 7

*MHN Government Services, Inc. v. Zaborowski*,
576 U.S. 1095 (2015) ........ 23

*Mohamed v. Uber Technologies, Inc.*,
848 F.3d 1201 (9th Cir. 2016) ........ 8

*Moser v. Bret Harte Union High School District*,
366 F. Supp. 2d 944 (E.D. Cal. 2005) ........ 13

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
460 U.S. 1 (1983) ........ 7

*Norton v. Lyft, Inc.*,
2019 WL 4744691 (N.D. Cal. Sept. 13, 2019) ........ 7

*Oberstein v. Live Nation Entertainment, Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 7

*Oblix, Inc. v. Winiecki*,
374 F.3d 488 (7th Cir. 2004) ........ 20

*Ortiz v. T-Mobile USA, Inc.*,
2026 WL 712958 (C.D. Cal. Mar. 9, 2026) .......... 2, 22

*Osvatics v. Lyft, Inc.*,
535 F. Supp. 3d 1 (D.D.C. 2021) .......... 7

*Pandolfi v. AviaGames, Inc.*,
2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) .......... 14, 17, 18

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 10

*Pilon v. Discovery Communications, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025) .......... 9, 17, 20

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) .......... 9, 21

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*,
673 F.3d 221, 230 (3d Cir. 2012) .......... 8, 9, 11

*Ragone v. Atlantic Video at Manhattan Center*,
595 F.3d 115 (2d Cir. 2010) .......... 8, 11

*Ramirez v. Charter Communications, Inc.*,
551 P.3d 520 (Cal. 2024) .......... 21, 22

*Rejuso v. Brookdale Senior Living Communities, Inc.*,
2018 WL 6173384 (C.D. Cal. Nov. 13, 2018) .......... 24

*Rios v. HRB Digital LLC*,
807 F. Supp. 3d 975 (N.D. Cal. 2025) .......... passim

*Rogers v. Lyft, Inc.*,
2022 WL 474166 (9th Cir. Feb. 16, 2022) .......... 7

*Rose v. Jarmon*,
2025 WL 1413769 (E.D. Mo. May 15, 2025) .......... 7

*Ruiz v. CarMax Auto Superstores, Inc.*,
2024 WL 1136332 (C.D. Cal. Jan. 18, 2024) .......... 16

*Saeedy v. Microsoft Corp.*,
757 F. Supp. 3d 1172 (W.D. Wash. 2024) .......... 11

*Sanchez v. Valencia Holding Co.*,
353 P.3d 741 (Cal. 2015) .......... 8, 11, 15, 18

*Serpa v. California Surety Investigations, Inc.*, 215 Cal.App.4th 695 (2013) ........ 12, 13

*Smith v. Spizzirri*, 601 U.S. 472 (2024) ........ 25

*Spain v. Johnson*, 711 F. Supp. 3d 1260 (D. Colo. 2024) ........ 7

*Speight v. Lyft, Inc.*, 2021 WL 298192 (E.D. Va. Jan. 28, 2021) ........ 7

*Stevenson v. Sirius XM Radio Inc.*, 2023 WL 7434945 (N.D. Cal. Nov. 9, 2023) ........ 15

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1067 (S.D. Cal. 1999) ........ 24

*Yeng Sue Chow v. Levi Strauss & Co.*, 49 Cal.App.3d 315 (1975) ........ 15

**STATUTES**

9 U.S.C. § 2 ........ 5, 6

9 U.S.C. § 3 ........ 1, 25

Cal. Civ. Code § 1599 ........ 21

Cal. Civ. Code § 1782 ........ 12

Cal. Com. Code § 2607(3)(A) ........ 12

**RULES**

Fed. R. Civ. P. 11(b) ........ 13

Cal. R. Ct. 3.501-50 ........ 21

ABA Model Rule 3.1 ........ 13

**OTHER AUTHORITIES**

1 Witkin, *Summary 11th Contracts* § 993(3) (2025) ........ 24

Hon. Eldon E. Fallon, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323 (2008) ........ 15

Restatement (Second) of Contracts § 279 (1981) ........ 24

U.S. Chamber of Commerce Institute for Legal Reform, *Mass Arbitration Shakedown: Coercing Unjustified Settlements* (Feb. 2023), https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf ........ 13

U.S. Chamber of Commerce Institute for Legal Reform, *Private Power, Public Harm: The Coercive Dynamics of Mass Arbitration* (Dec. 2025), https://instituteforlegalreform.com/wp-content/uploads/2025/12/Private-Power-Public-Harm-Web.pdf ........ 13

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on September 10, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen of the United States District Court for the Northern District of California, Defendant Lyft, Inc. ("Lyft") will and hereby does move this Court, under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, for an order (1) compelling arbitration of plaintiffs' claims on an individual basis; and (2) staying this litigation pending the outcome of arbitration.

This Motion is made and based upon this Notice of Motion and Motion, the Memorandum, the Declarations of Brian Keeton (on file at Dkt. 47-1) and Daniel E. Jones and exhibits; and any testimony, evidence, or argument submitted to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs' claims do not belong in this Court. Plaintiffs repeatedly agreed to arbitrate their disputes against Lyft, and those arbitration agreements are enforceable under the Federal Arbitration Act. In their operative complaint, plaintiffs acknowledge agreeing to Lyft's Terms of Service, including its arbitration agreement. They instead challenge the enforceability of the arbitration agreement in Lyft's December 2024 Terms, focusing on the pre-arbitration notice of dispute process and the staging procedures for resolving large numbers of coordinated arbitrations.

Those challenges are misguided. Indeed, a San Francisco complex department judge recently upheld Lyft's December 2024 Terms against a similar challenge to the Terms' staging procedures. *Kennedy v. Lyft, Inc.*, No. CGC-25-630920 (Cal. Super. Ct. San Francisco Cnty. May 19, 2026) (Jones Decl. Ex. A). As in *Kennedy*, plaintiffs here "offer no evidence that their claims will trigger mass arbitration procedures." *Id.* at 17. Moreover, the operative amended complaint makes clear that Ye and Robey at minimum are relying on rides that took place before the December 2024 Terms went into effect—instead, the December 2022 or December 2020 Terms governed at the time and do *not*

contain the provisions plaintiffs challenge. That makes it impossible for them to argue legitimately that staging procedures that did not exist when their claims arose had a chilling effect on their ability to assert those claims. Indeed, ***all three plaintiffs*** agreed to the arbitration provisions in the December 2020 and December 2022 Terms. Those arbitration agreements are operative if the Court declines to enforce the December 2024 provision—providing an independent reason why plaintiffs must resolve their claims in arbitration.

Lyft expects that plaintiffs will rely on *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975 (N.D. Cal. 2025), in challenging the December 2024 provision. However, *Rios* (which is on appeal (No. 25-7199 (9th Cir.)) is distinguishable. In all events, the provision calling for staged procedures is readily severable, as Judge Wu recently concluded when confronted with a similar provision. *Ortiz v. T-Mobile USA, Inc.*, 2026 WL 712958, at *2 (C.D. Cal. Mar. 9, 2026).

## BACKGROUND

### A. Lyft's Terms of Service

Lyft operates a mobile-based ridesharing marketplace platform (the "Lyft Platform") that matches people who seek rides to certain destinations (riders) with people willing to drive to or through those locations (drivers). Keeton Decl. ¶ 3. The Lyft Platform includes, among other things, Lyft's website, technology platform, and mobile phone application (the "Lyft App"). *Id.* Using the Lyft App, Lyft offers information and a method to connect drivers and riders with each other and to permit communication between them. *Id.* Lyft does not itself provide rides or hire drivers to provide rides. *Id.*

Before accessing Lyft's Platform (including the Lyft App), users must create an account and consent to Lyft's Terms of Service, which describes the terms and conditions on which Lyft offers both riders and drivers access to the Lyft Platform. Users consent to Lyft's Terms as part of the registration process and when Lyft updates its Terms. Keeton Decl. ¶¶ 4-6. Most relevant here, when Lyft updates its Terms, existing Lyft users who open the Lyft App are required to accept the updated Terms, which automatically appear

on a screen in the App. *Id.* ¶¶ 6-18. Lyft has used a virtually identical process to obtain consent by registered Lyft users to the August 2019, December 2020, December 2022, and December 2024 versions of its Terms of Service. *Id.* ¶¶ 7-18.[1]

Specifically, once presented with the screen in the Lyft App, users can scroll through the text of the entire updated Terms. At the bottom of the screen is a button with the words "I agree." *E.g.*, Keeton Decl. ¶¶ 7-8. Riders presented with this screen are required to click (press) the "I agree" button before they can proceed to view available ride options and request rides through the App. *Id.* ¶ 9. Once a rider who has previously registered with the Lyft Platform is presented with this screen, it will continue to appear each time the rider opens the Lyft App until the rider clicks the "I agree" button. *Id.* Lyft automatically records the date and time when users click the "I agree" button. *Id.* ¶ 20.

Each of the four versions of Lyft's Terms of Service referenced above contains an arbitration provision. *Id.* Exs. 1-4. And each version alerted users of that fact (with a link directly to the arbitration agreement) near the outset of the Terms. For example, the December 2024 Terms state:

> PLEASE BE ADVISED: THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS BETWEEN YOU AND LYFT CAN BE BROUGHT (SEE SECTION 17 BELOW). **THESE PROVISIONS WILL, WITH LIMITED EXCEPTION, REQUIRE YOU TO: (1) WAIVE YOUR RIGHT TO A JURY TRIAL, AND (2) SUBMIT CLAIMS YOU HAVE AGAINST LYFT TO BINDING AND FINAL ARBITRATION ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS, GROUP OR REPRESENTATIVE ACTION OR PROCEEDING.**

*Id.* Ex. 1, at 1.

The arbitration provisions are similar in many ways. Each arbitration agreement requires the rider and Lyft to resolve "ALL DISPUTES AND CLAIMS BETWEEN US" through arbitration on an individual basis. *Id.* Exs. 1-4 § 17(a). With limited exceptions not applicable here, the agreements expressly cover claims "arising out of or relating to": "this Agreement and prior versions thereof," "the Lyft Platform, the Rideshare Services,

---

[1] Lyft also used a similar process to obtain consent to its current February 2026 Terms of Service, but those Terms are not at issue in this motion. *See* Dkt. Nos. 21, 33.

the Lyft Services, Lyft promotions," "any other goods or services made available through the Lyft Platform by Lyft," "your relationship with Lyft," "payments made by you or any payments made or allegedly owed to you," and "any promotions or offers made by Lyft." *Id.* The agreements further expressly cover "claims arising under . . . state consumer protection laws," and "all other . . . statutory and common law claims." *Id.*

The December 2024 Terms, however, contain two additional provisions that are not present in prior versions of Lyft's Terms. *First*, the December 2024 Terms include a pre-arbitration process, stating that "[a] party who intends to initiate arbitration must first send to the other a written notice of the dispute," which "must (1) describe the factual and legal nature and basis of the claim or dispute; (2) set forth the specific relief sought; and (3) include the name, mailing and email addresses, and phone number of the party sending the Notice." Keeton Decl. Ex. 1 § 17(d). Whoever sends the Notice "must give the other party 60 days from receipt of the complete Notice" before commencing an arbitration. *Id.* Sending a "complete Notice will toll any applicable statute of limitations or other limitations period" until 60 days after the other party's receipt of the Notice. *Id.* That combination of tolling and a 60-day pre-arbitration period gives the parties "a meaningful chance to resolve disputes informally" prior to formal arbitration. *Id.*

*Second*, the December 2024 Terms contain additional procedures for coordinated claims, setting forth an orderly staging process for their resolution. In the first stage, 40 cases are selected for individual resolution; after that stage, Lyft pays for a global mediation of the remaining cases. Keeton Decl. Ex. 1 § 17(h). For any cases not resolved, the process continues with 100 cases total in each stage, and the parties further agree to "meet and confer regarding ways to improve the efficiency of the staged proceedings, including whether to further increase the number of cases filed in each stage." *Id.* The provision also contains an express severability clause: "This subsection 17(h) and each of its requirements are intended to be severable from the rest of this Arbitration Agreement. If, after exhaustion of all appeals, a court decides that the staging process in this subsection 17(h) is not enforceable, then the cases may be filed in arbitration." *Id.*

### B. Plaintiffs agreed to arbitrate their disputes with Lyft.

Plaintiffs agreed to Lyft's Terms on multiple occasions using the process described above. As relevant to this motion, each plaintiff consented most recently to the December 2024 Terms. Keeton Decl. ¶¶ 26, 31, 36. Plaintiffs also each previously agreed to Lyft's December 2022, December 2020, and August 2019 Terms. *Id.* ¶¶ 23-25, 28-30, 33-35.

### C. Plaintiffs filed this lawsuit despite their arbitration agreements.

Rather than adhere to their arbitration agreements (including the pre-arbitration Notice process), plaintiffs filed their claims in this lawsuit. Zigler originally filed the lawsuit in January 2026. Dkt. 1. Lyft moved to dismiss the complaint for lack of subject-matter jurisdiction because Zigler never requested or paid for the Priority Pickup ride on which her complaint was based—indeed, she never requested or paid for *any* Priority Pickup ride. Dkt. 18. Zigler filed an amended complaint that adds two plaintiffs, Lucy Ye and Brian Robey. Dkt. 23. The Court denied Lyft's motion to dismiss the first amended complaint but subsequently ordered plaintiffs to file an amended complaint to address "facial issues related to the [amended] complaint." Dkt. 71, 74. In the operative second amended complaint, Ye and Robey assert different rides than the ones asserted in the first amended complaint. SAC ¶¶ 6-7. Ye, in particular, now relies on rides from 2022, and Robey relies on rides beginning in April 2024. *Id.*

Plaintiffs allege that Lyft "fails to deliver" on "the promise of a predictable and faster pickup" for its Priority Pickup and Standard ride options. SAC ¶¶ 2-4, 18-19. Based on that allegation, they assert violations of Pennsylvania, California, and New York consumer protection statutes, along with a common-law cause of action for unjust enrichment. *Id.* ¶¶ 87-170. Plaintiffs also seek a declaration that the arbitration agreement in Lyft's December 2024 Terms is unenforceable. *Id.* ¶¶ 171-183.

## ARGUMENT

### I. The FAA Requires Enforcement of Plaintiffs' Arbitration Agreements.

The FAA governs any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here:

(i) the arbitration provision is in writing (*see* pages 2-4, *supra*); and (ii) it is a contract governing the use of an Internet-based application, which "involv[es] commerce." *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). The arbitration provision specifies that it is "governed by the Federal Arbitration Act." *E.g.*, Keeton Decl. Ex. 1 § 17(a).

Under the FAA, plaintiffs' arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

Here, the FAA requires enforcement of plaintiffs' arbitration agreements. Plaintiffs validly entered into these agreements, and the agreements require plaintiffs to arbitrate the claims in this lawsuit.

### A. Plaintiffs agreed to arbitrate.

As detailed above (at 2-5), plaintiffs have repeatedly agreed to Lyft's Terms of Service, including the Terms' arbitration agreement.

The second amended complaint acknowledges that plaintiffs used the Lyft Platform (including the Lyft App), which is subject to Lyft's Terms. SAC ¶¶ 5-7, 58, 173. And plaintiffs acknowledge that Lyft's Terms include an arbitration agreement. *Id.* ¶¶ 58, 62-71. While plaintiffs contend (incorrectly) that the arbitration agreement is "unconscionable" (*id.* ¶¶ 58, 68), they do not deny agreeing to it. Indeed, their request for declaratory relief related to the enforceability of the arbitration agreement in the December 2024 Terms—including their assertion that there is an "actual controversy of sufficient immediacy" about the enforceability of that arbitration agreement (*id.* ¶¶ 172, 180)—necessarily concedes that plaintiffs have agreed to the December 2024 Terms.

These admissions are binding. "Allegations in a complaint are considered judicial admissions." *Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008). Such admissions "dispens[e] wholly with the need for proof of the [admitted] fact." *In re Barker*, 839 F.3d 1189, 1195 (9th Cir. 2016) (citations omitted).

Even putting aside those admissions, plaintiffs validly agreed to arbitrate. Each plaintiff was presented with the full text of the Terms and pressed a large "I agree" or "I Agree" button to continue using the Lyft App. *See* pages 2-5, *supra*.

That process formed a valid contract. Courts "routinely uphold" agreements "which require users to click an 'I agree' box after being presented with a list of terms and conditions of use." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (applying California and New York law); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (applying similar principles). Indeed, other courts have routinely enforced the arbitration provision in Lyft's Terms when riders used a materially identical process to agree to those Terms. *See, e.g.*, *Rose v. Jarmon*, 2025 WL 1413769 (E.D. Mo. May 15, 2025); *Spain v. Johnson*, 711 F. Supp. 3d 1260 (D. Colo. 2024); *Gambo v. Lyft, Inc.*, 642 F. Supp. 3d 46 (D.D.C. 2022) (holding that Lyft's process forms a contract under either California or D.C. law). Courts—including in this Circuit—have also repeatedly enforced Lyft's Terms in cases brought by drivers, who use the same process to accept Lyft's Terms.[2]

**B. Plaintiffs' claims fall within the scope of their arbitration agreements.**

Plaintiffs' arbitration agreements easily encompass their statutory and common-law claims in this lawsuit. The plain language of the agreements requires arbitration of "ALL DISPUTES AND CLAIMS BETWEEN US"—including disputes, "whether based on past, present, or future events," "arising out of or relating to" "the Lyft Platform, the Rideshare Services, the Lyft Services," and "breach of any express or implied contract or covenant." *E.g.*, Keeton Decl. Ex. 1 § 17(a). The agreement also covers claims under "state consumer protection laws" and "all other . . . statutory and common law claims." *Id.*

Moreover, if there is any doubt that plaintiffs' claims are within the scope of their

[2] *See, e.g.*, *Kennedy*, *supra*; *Rogers v. Lyft, Inc.*, 2022 WL 474166 (9th Cir. Feb. 16, 2022); *Cunningham v. Lyft, Inc.*, 17 F.4th 244 (1st Cir. 2021); *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1 (D.D.C. 2021); *Speight v. Lyft, Inc.*, 2021 WL 298192 (E.D. Va. Jan. 28, 2021); *Bekele v. Lyft, Inc.*, 918 F.3d 181 (1st Cir. 2019); *Norton v. Lyft, Inc.*, 2019 WL 4744691 (N.D. Cal. Sept. 13, 2019); *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435 (S.D.N.Y. 2019).

arbitration agreements (and there should be none), those doubts must be "resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *accord Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019).

## II. Plaintiffs' Unconscionability Challenges Fail.

Plaintiffs contend that the arbitration agreement in the December 2024 Terms is unconscionable and unenforceable. *See, e.g.*, SAC ¶¶ 58-71, 128, 171-183.

Under each of the applicable states' laws—California (Ye), New York (Robey), and Pennsylvania (Zigler)—plaintiffs have the burden of demonstrating that the contract is *both* procedurally and substantively unconscionable. *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 748-49 (Cal. 2015); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121-22 (2d Cir. 2010) (New York; both required in all but the most exceptional cases); *Caimano v. H&R Block*, 2024 WL 3295589, at *11 (E.D. Pa. July 3, 2024) (Pennsylvania).[3]

"[T]he California Supreme Court has emphasized that 'unconscionability requires a substantial degree of unfairness.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 12 (Cal. 2016)); *see also, e.g.*, *Ragone*, 595 F.3d at 121 ("grossly unreasonable"); *Quilloin v. Tenet HealthSys. Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) ("unreasonably or grossly favorable" to one party). After all, "[c]ommerce depends on the enforceability, in most instances, of a duly executed written contract." *Baltazar*, 367 P.3d at 12.

### A. The arbitration agreement is at most minimally procedurally unconscionable.

Plaintiffs' amended complaint asserts that the arbitration agreement in the December 2024 Terms is "procedurally unconscionable under California law." SAC ¶ 173.

[3] Plaintiffs allege that California law applies because Lyft is headquartered there and the challenged representations allegedly "emanated" out of California. SAC ¶¶ 56-57. But that argument fails under controlling Ninth Circuit precedent. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012). Courts routinely apply *Mazza* in holding that the consumer-protection and common-law claims of out-of-state plaintiffs are governed by the law of each plaintiff's home state. *See, e.g.*, *Julian v. TTE Tech., Inc.*, 2020 WL 6743912, at *8-10 (N.D. Cal. Nov. 17, 2020) (Chen, J.); *Cover v. Windsor Surry Co.*, 2016 WL 520991, at *7-8 (N.D. Cal. Feb. 10, 2016); *Frezza v. Google Inc.*, 2013 WL 1736788, at *5-7 (N.D. Cal. Apr. 22, 2013).

The complaint does not elaborate on that assertion, but the arbitration agreement is at most minimally procedurally unconscionable.

Plaintiffs will presumably assert that the December 2024 Terms are a standardized form contract presented to riders on a take-it-or-leave it basis, but such contracts are not per se unconscionable; they are "indispensable facts of modern life that are generally enforced." *Baltazar*, 367 P.3d at 13; *see Dotson v. Amgen, Inc.*, 181 Cal.App.4th 975, 981 (2010) (use of a standard form amounts to only a "low degree" of procedural unconscionability). In other words, while "take-it-or-leave-it adhesion contracts always contain some degree of procedural unconscionability," *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023) (citation omitted), "the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most," *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261-62 (9th Cir. 2017). *See also*, *e.g.*, *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 296 (S.D.N.Y. 2025) (similar under New York law); *Quilloin*, 673 F.3d at 235 (Pennsylvania law).

There is no oppression or surprise here that would support a heightened degree of procedural unconscionability. The arbitration agreement is clearly and conspicuously disclosed; it is flagged, with a direct link that makes it easy for users to review, at the outset of the Terms. And the agreement itself—including the provisions plaintiffs challenge—is conspicuously presented under clear headings. *See* Keeton Decl. Ex. 1.

What's more, "[t]here can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices." *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal.App.5th 1084, 1096 (2021); *see also*, *e.g.*, *Brookdale Inn & Spa v. Certain Underwriters at Lloyds, Lond.*, 2014 WL 116442, at *3 (N.D. Cal. Jan. 13, 2014) (quoting same); *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 953 (N.D. Cal. 2023) ("access to reasonable market alternatives" is relevant to procedural unconscionability); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal.App.4th 1224, 1245 (2007) (similar).

Here, plaintiffs cannot reasonably deny that there are other options for rideshare services where each of them live—as well as other means of transportation (such as taxis). Indeed, Ye (represented by the same counsel) has filed a lawsuit alleging that she uses Uber's platform as well. *See Ye v. Uber Techs., Inc.*, No. 4:26-cv-01744 (N.D. Cal.).[4]

In short, because any degree of procedural unconscionability is minimal, plaintiffs must show a high degree of substantive unconscionability. They fail to do so.

**B. The challenged provisions are not substantively unconscionable.**

Plaintiffs intend to challenge multiple provisions in the December 2024 Terms. Plaintiffs refer to two provisions *outside* of the arbitration agreement that are not specific to arbitration: a limitation on liability provision (Keeton Decl. Ex. 1 § 15) and a class waiver for *non*-arbitrable claims (*id.* § 18). SAC ¶¶ 60-61. Within the arbitration agreement, plaintiffs focus on challenging two provisions: (1) the pre-arbitration notice of dispute process; and (2) the staging procedures for addressing arbitrations of coordinated claims. *Id.* ¶¶ 58, 62-70. None of these challenges succeeds.

**1. Plaintiffs' challenges based on provisions outside of the arbitration agreement fail.**

At the outset, plaintiffs cannot challenge the enforceability of their arbitration agreements based on either the limitation on liability or the class waiver that applies only to non-arbitrable claims. That is because, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). And "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445-46. Thus, "the 'mere presence'" of an allegedly unconscionable term "does not render the arbitration clause, *a separate provision*, substantively unconscionable." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 479-80 (9th Cir. 2024); *see id.* at 480 (requiring arbitration despite challenge

[4] The circumstances here are unlike those the Court found in *Rios*, in which it determined that there was a concern about taxpayers being presented with an arbitration agreement "in the midst of tax season and with the looming threat of IRS penalties." 807 F. Supp. 3d at 986.

to a "separate" "unilateral modification provision" because "'our authority to review portions of the contract outside the arbitration provision is limited'").

Applying these principles, courts have rejected unconscionability challenges to limitation on liability provisions that are not specific to arbitration. The Fourth Circuit, for example, rejected such challenges to a purported "limitation on liability" clause and other provisions, because "the challenged provisions do not single out (or even mention) arbitration, and thus would apply equally to disputes in any forum." *Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 728-29 (4th Cir. 2025). As another judge similarly put it in rejecting a challenge to a punitive damages waiver, "portions of the agreements potentially bearing on recovery, but not contained in the dispute resolution provisions themselves . . . are matters for the arbitrator to decide." *Estrada v. CleanNet USA, Inc.*, 2015 WL 833701, at *3 (N.D. Cal. Feb. 24, 2015); *see also*, *e.g.*, *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1210-11 (W.D. Wash. 2024) (citing *Buckeye* in rejecting challenge to limitation on liability clause outside of the arbitration agreement).

Finally, even if the limitation on liability provision was properly before the Court, plaintiffs' insinuation that a limitation on liability clause is inherently unconscionable is misplaced. On the contrary, "[l]imitation of liability clauses 'have long been recognized as valid in California.'" *Lewis v. YouTube, LLC*, 244 Cal.App.4th 118, 125 (2015) (quoting *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal.App.4th 1118, 1126 (2012)). And while the class-waiver for *non*-arbitrable claims by definition has no bearing on the arbitration agreement, this Court and others have rejected plaintiffs' suggestion (SAC ¶ 60) that there is anything improper or arbitration-defeating about a company with an arbitration agreement or class-waiver from choosing to settle another case on a class basis. *See Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 620-22 (N.D. Cal. 2019) (Chen, J.); *accord Meadows*, 132 F.4th at 733-34.

**2. The pre-arbitration notice of dispute process is enforceable.**

Plaintiffs fare no better when they pivot to challenging provisions within their arbitration agreements. For example, there is nothing "overly harsh," "unduly

oppressive" or conscience-shocking (*Sanchez*, 353 P.3d at 748-49) or "unreasonably favorable" (*Ragone*, 595 F.3d at 122; *Quilloin*, 673 F.3d at 230) about the pre-arbitration notice of dispute process in the December 2024 Terms. It applies mutually to both parties (*see* Keeton Decl. Ex. 1 § 17(d)) and gives the parties a cost-free opportunity to resolve disputes informally. A similar requirement was part of the clause in *Concepcion*, in which the Supreme Court treated that requirement as a benefit to consumers, not a burden. 563 U.S. at 336-37, 352.

A pre-arbitration notice of dispute process, with its accompanying potential for "informal" resolution, "is both reasonable and laudable in an [arbitration] agreement." *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal.App.4th 695, 710 (2013). The Ninth Circuit agrees. When a district court held that it was unconscionable for Coinbase to require that consumers confer with customer support and submit a detailed notice of dispute before arbitration, the Ninth Circuit *reversed*, describing these requirements as "commonplace" and not "beyond the reasonable expectations of the user." *Bielski*, 87 F.4th at 1014; *see also, e.g.*, *McMahan v. Whaleco, Inc.*, 2026 WL 657449, at *20 (E.D.N.Y. Mar. 9, 2026) (citing *Bielski* as "instructive" in rejecting challenge to pre-arbitration notice of dispute process, even when that process, *unlike* the one here, applied only to users and not the company); *Brooks v. WarnerMedia Direct, LLC*, 2024 WL 3330305, at *18 n.9 (S.D.N.Y. July 8, 2024) ("detailed notice of dispute" requirement not unconscionable under California law). The Fourth Circuit also recently upheld a similar pre-arbitration process under West Virginia law, holding that there is "nothing unreasonable, let alone unconscionable, about such a provision," which "serves a commercially reasonable purpose by allowing both parties the opportunity to resolve disputes informally without incurring the expense of arbitration." *Meadows*, 132 F.4th at 732.[5]

[5] Nor is there anything unusual about pre-filing notice and informal resolution requirements. For instance, the CLRA requires consumers seeking damages to give the defendant 30 days' notice and an opportunity to cure the alleged violation. Cal. Civ. Code § 1782. Likewise, California requires pre-suit notice for breach of express warranty claims. Cal. Com. Code § 2607(3)(A).

These holdings—including from the Ninth Circuit—are for good reason: consumers benefit from pre-arbitration procedures. Moreover, the pre-arbitration process serves an especially important role in the mass arbitration setting, where, despite a lawyer's professional obligations to investigate his or her clients' claims *before* asserting them (*see* ABA Model Rule 3.1; Fed. R. Civ. P. 11(b)), lawyers often submit a significant number of illegitimate or unvetted claims.[6] The claims in this very case raise those concerns.[7]

Plaintiffs take issue with the language in the pre-arbitration provision that bases the start of the 60-day informal resolution period (and accompanying tolling of any statutes of limitations) on a "complete Notice." SAC ¶¶ 62-66. But the December 2024 Terms make clear what constitutes a complete Notice: "The Notice must (1) describe the factual and legal nature and basis of the claim or dispute; (2) set forth the specific relief sought; and (3) include the name, mailing and email addresses, and phone number of the party sending the Notice." Keeton Decl. Ex. 1 § 17(d). Moreover, the circumstances here are different from *Rios*, in which this Court expressed concern about the defendants' reservation of rights to challenge the timeliness of claimants' notices. 807 F. Supp. 3d at 992-93. There is no timeliness concern and there has been no similar reservation of rights by Lyft here that would cast doubt on tolling—indeed, unlike in *Rios*, neither plaintiffs nor their counsel have submitted Notices of Dispute at all.

---

[6] *See, e.g.*, U.S. Chamber of Commerce Institute for Legal Reform, *Private Power, Public Harm: The Coercive Dynamics of Mass Arbitration* 28-31 (Dec. 2025), https://instituteforlegalreform.com/wp-content/uploads/2025/12/Private-Power-Public-Harm-Web.pdf; U.S. Chamber of Commerce Institute for Legal Reform, *Mass Arbitration Shakedown: Coercing Unjustified Settlements* 35-38 (Feb. 2023), https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf. (Counsel for Lyft was one of the authors of the February 2023 report and others at his current law firm authored the December 2025 report.)

[7] Rule 11 also "creates and imposes on a party or counsel an affirmative duty to investigate the law and facts *before* filing." *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 950 (E.D. Cal. 2005). "The lawyer may not delegate this duty to another person." *Martinez v. City of West Sacramento*, 2021 WL 2227830, at *14 (E.D. Cal. June 1, 2021). But that is essentially what plaintiffs' counsel have done here, as it was left to Lyft to review plaintiffs' ride histories and point out that both the original and first amended complaints were riddled with material inaccuracies and omissions.

In sum, the pre-arbitration process here "plainly does not 'shock the conscience' so as to vitiate the arbitration agreement." *Serpa*, 215 Cal.App.4th at 710.

**3. The staging procedures are enforceable.**

Plaintiffs also miss the mark in arguing that it is substantively unconscionable to agree to resolve similar arbitrations of 25 or more claims (the same number that triggers the AAA's Mass Arbitration rules) through staged proceedings. SAC ¶¶ 68-70.

At the outset, the Court should decline to reach the enforceability of the staging process because the three named plaintiffs have not shown that their claims trigger the process or that the process has any other connection to this case. *See Kennedy*, *supra*, at 17 ("Plaintiffs offer no evidence that their claims will trigger mass arbitration procedures."). The Ninth Circuit has held that courts may not "stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute," such as when a plaintiff who doesn't seek a public injunction objects to a public-injunction waiver (*Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541 (9th Cir. 2021)), or a plaintiff who isn't pursuing class claims objects to a class-action waiver (*Lee v. Am. Express Travel Related Servs., Inc.*, 348 F. App'x 205, 207 (9th Cir. 2009)). *See also, e.g.*, *Burke v. Wells Fargo Bank, N.A.*, 2025 WL 719973, at *1 (N.D. Cal. Mar. 6, 2025) (non-PAGA plaintiff lacked standing to challenge arbitration agreement's PAGA waiver).

Indeed, in each of the three prior cases in which this Court has declared staging procedures substantively unconscionable, there was evidence of an actual mass arbitration or mass arbitrations impacted by the procedures. *See Rios*, 807 F. Supp. 3d at 982-83, 989-91; *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *6 (N.D. Cal. Sept. 4, 2024), *aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025) (unpublished); *MacClelland v. Cellco P'Ship*, 609 F. Supp. 3d 1024, 1040-42 (N.D. Cal. 2022). That alone distinguishes the Court's prior cases, and the Court should not reach out to decide the enforceability of the staging procedures in the abstract.

This Court has noted in some of those prior cases that unconscionability is judged at the time of contract formation. *See Pandolfi*, 2024 WL 4051754, at *5-6; *MacClelland*,

609 F. Supp. 3d at 1041-42. But analyzing the fairness of a contract based on circumstances at the time of formation "is not the same thing as allowing a plaintiff to challenge provisions of a contract that d[o] not apply to her" in a particular case. *Stevenson v. Sirius XM Radio Inc.*, 2023 WL 7434945, at *4 (N.D. Cal. Nov. 9, 2023) (citing cases). Indeed, cases outside of the arbitration context make clear that this principle simply prevents a bargain that was fair "when the contract was made" from being undone by developments that occur after the time of contracting (or vice versa). *Yeng Sue Chow v. Levi Strauss & Co.*, 49 Cal.App.3d 315, 325 (1975) (post-formation development of company going public could not retroactively make stock-purchase option contract an unconscionable bargain); *accord*, *e.g.*, *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 875 (9th Cir. 1979) (per curiam) (citing *Yeng Sue Chow*).

Even if the staging procedures in Lyft's December 2024 Terms were properly before the Court, they are not substantively unconscionable. The staging process for administering large numbers of individual arbitrations is modeled on the approach used by MDL courts to resolve large numbers of individual lawsuits presenting similar issues—i.e., to provide for bellwether trials designed to inform the parties about whether and how to settle the claims. The staging process thus honors the parties' intent for bilateral arbitration and expedites merits-based resolution of all of the claims, which could not realistically go forward all at once regardless. Specifically, by requiring preparation for trial, the process forces litigants to take a more realistic assessment of what evidence and arguments they can present. Hon. Eldon E. Fallon, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2341-42 (2008). Moreover, the outcomes of the trials provide "real-world evaluations of the litigation." *Id.* at 2325.

Borrowing from federal court procedures cannot be so "overly harsh or one-sided" or unreasonably favorable as to be unconscionable. *See Sanchez*, 353 P.3d at 748.

In *Rios*, the Court thought it critical that claimants in MDL proceedings can file claims on a court docket, even if there is no activity with respect to those claims while the bellwether cases proceed. *Rios*, 807 F. Supp. 3d at 991. But the claims of Lyft's users are

tolled, so in practice the provision changes only the timing of the arbitration ***fees***—and it addresses the fee-based incentives to threaten or file illegitimate or unvetted claims, which have become prevalent in the mass-arbitration context. *See* n.7, *supra*.

Moreover, other courts have recognized the benefits of staged proceedings in promoting fairness and orderly resolution of claims. Take, for example, the lawsuit by Tubi over whether a law firm had improperly filed a large number of allegedly unvetted arbitrations and thereby tortiously interfered with Tubi's contracts with the claimants. *See* Compl., *Tubi, Inc. v. Keller Postman LLC*, No. 24-cv-01616 (D.D.C. May 31, 2024), Dkt. No. 1. Even though Tubi's agreement did not require the use of bellwether proceedings, to "actually get things moving" toward a resolution, the district court urged the parties to arbitrate—not all the cases, but "5 to 10" "bellwether arbitrations." Tr. 38, 40, *Tubi, Inc. v. Keller Postman LLC*, No. 1:24-cv-01616 (D.D.C. Dec. 19, 2024), Dkt. No. 29. Given the court's urging, the parties conferred over next steps, and about an hour later, agreed to just that (*id.* at 43-47)—because bellwether proceedings are a reasonable way to resolve large numbers of individual cases.

Along these lines, courts have upheld similar staging procedures. Considering Lyft's December 2024 Terms, the *Kennedy* court rejected a similar unconscionability attack under California law; the court explained that there was no "*undue* delay" because "[t]he existence of some permissible delay, if any, is attributable to the volume of claims a law firm chooses to present at once and not to the mass arbitration procedures, which permissibly provide the necessary structure for the orderly handling of arbitration demands." *Kennedy*, *supra*, at 17. In *Ruiz v. CarMax Auto Superstores, Inc.*, the agreement required "similar claims to proceed in batches of ten." 2024 WL 1136332, at *6 (C.D. Cal. Jan. 18, 2024). Because the agreement's protocol "provide[d] for the tolling of any applicable statute of limitations," the court held that it "constitutes a 'system to adjudicate a group of cases with the purpose of facilitating global or widespread resolution,'" and so "is not substantively unconscionable." *Id.* More recently, a California federal court upheld a staging process in T-Mobile's employment terms that called for

resolving arbitrations in stages of fifty individual arbitrations at a time, holding that the procedures "preserve individual arbitration, do not unfairly prejudice non-batched cases, and do not present significant delay." *Diaz v. T-Mobile USA, Inc.*, 2026 WL 495233, at *1-2, *4 (E.D. Cal. Feb. 20, 2026). And at least two other courts have agreed that a "staging procedure" for mass claims is not "substantively unconscionable" when the agreement "tolls the applicable statute of limitations" for consumers. *Brooks*, 2024 WL 3330305, at *17-18; *accord Pilon*, 769 F. Supp. 3d at 297 (following *Brooks* in reaching same conclusion under either New York or California law).

*a. Criticisms of staged procedures are misplaced.*

As noted above, *Rios* is distinguishable. There can be no reasonable concern about tolling under Lyft's December 2024 Terms, and, unlike in *Rios*, plaintiffs have not attempted to show (and cannot show) a "practical reality" that their claims are subject to unreasonable delays. *Rios*, 807 F. Supp. 3d at 990-91.

Lyft also respectfully submits that criticisms of staging procedures advanced by some plaintiffs' lawyers are misplaced. For example, in light of the record of actual pending mass arbitrations and the "technically complex" privacy claims requiring specialized counsel in *Rios*, the Court accepted the plaintiffs' criticism of the mass arbitration provision in that case for applying when the claimants are represented by the same or coordinated counsel. *Id.* at 991. But that tracks the AAA's Mass Arbitration Supplementary Rules, which, to further efficiency and swift resolution, require that "representation of all parties is consistent or coordinated across the cases." Rule MA-1(b)(iii); *see Kennedy*, *supra*, at 12 (holding that the staging procedures appropriately track the AAA Mass Arbitration Supplemental Rules and "address the volume of claims filed by particular law firms" rather than "independently" filed claims). Limiting the staging process to claims brought by the same or coordinated counsel also is analogous to MDL courts' appointment of lead or coordinating counsel "'to manage the litigation.'" *In re HIV Antitrust Litig.*, 2023 WL 7397567, at *3 (N.D. Cal. Nov. 8, 2023) (Chen, J.).

Indeed, in *Pandolfi*, this Court expressed concern about broader language in the

bellwether provision that encompassed not only claims brought by the same or related counsel, but also claims that "'*are otherwise coordinated*.'" 2024 WL 4051754, at *6. If *including* claims brought by "independent counsel who represent other unrelated consumers" in a bellwether process gives the provision an unconscionable sweep (*id.*), then it cannot also be unconscionable to instead *exclude* those claims and limit the process to claims brought by the same or coordinated counsel.

Staged proceedings are not necessarily slower than real-world alternatives for trying large numbers of individual cases—whether in court or in arbitration. The Court in *Rios* suggested that the defendants were required to introduce evidence "that the number of arbitrations that can be conducted simultaneously is inherently constrained by the AAA or any arbitral forum." *Rios*, 807 F. Supp. 3d at 992. It is plaintiffs' burden to demonstrate unconscionability (*see Sanchez*, 353 P.3d at 748-49), but even the largest arbitration providers, like the AAA, have real-world constraints on the number of available arbitrators—much less the number of arbitrations that any plaintiffs' firm can realistically handle at one time. *Cf. Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1184 (9th Cir. 2025) (observing that neither a court nor arbitration provider "would tolerate having to try 7,300" similar cases at the same time). In *Kennedy*, for example, the court noted that plaintiffs failed to submit competent evidence "about how long it would take AAA to appoint an arbitrator for 8,000 individual arbitrations." *Kennedy*, *supra*, at 14, 17.

In any event, real-world evidence from the AAA supports the common-sense understanding that there are limits on how many individual arbitrations can realistically proceed. That organization has only around 4,900 total arbitrators (https://www.adr.org/about-us/)—across the country for all cases (not just consumer claims, and certainly not just for any single mass arbitration). And the AAA also reports that in 2024, only 1% of *filed* (much less threatened) consumer cases in mass arbitrations were resolved by a final award. https://www.adr.org/news-and-insights/understanding-the-mass-arbitration-landscape-in-2024-insights-from-the-aaa-s-new-infographic/. This further underscores the reality that, staging procedures or not, individual arbitrations

could not possibly go forward for thousands of arbitrations at a time.

*b. Lyft's arbitration agreement does not offend Heckman.*

Plaintiffs also indicate that they intend to challenge the procedures in the December 2024 arbitration provision under *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024). *See* SAC ¶¶ 58, 70. *Heckman* has no bearing on the arbitration agreements here.

In *Heckman*, the Ninth Circuit declared unconscionable a *sui generis* Ticketmaster arbitration clause that selected a newly created arbitration administrator (New Era) and adopted that administrator's rules. Most notably, the Ninth Circuit understood the New Era rules to call for the outcomes of selected bellwether arbitrations to be treated as "precedent" that was "*binding* on the plaintiffs in all of the batched non-bellwether cases," even though the non-bellwether plaintiffs had no "notice" of the bellwether arbitrations, could not "be heard in" them, and had no "right to opt out" of their precedential effect. 120 F.4th at 684 (emphasis added). By contrast, the arbitration agreement in the December 2024 Terms expressly provides that the rulings in earlier arbitrations do *not* have preclusive effect: "The arbitrator's ruling will *not* be binding in proceedings involving different Riders or Drivers." Keeton Decl. Ex. 1 § 17(e) (emphasis added).

The New Era rules also imposed limits on discovery, evidence, and briefing; allowed for one-sided appeals of arbitration awards by the company but not by the consumer; and purported to override California law on arbitrator selection. *See Heckman*, 120 F.4th at 685-87. By contrast, neither the December 2024 arbitration agreement nor the incorporated AAA rules suffer from any of these defects. Indeed, the Ninth Circuit emphasized that "New Era's Rules . . . differ significantly from the rules of traditional arbitration fora such as . . . the American Arbitration Association." 120 F.4th at 678.

The Ninth Circuit has since confirmed that *Heckman* is confined to its unusual facts: in rejecting an unconscionability challenge to an arbitration agreement incorporating the rules of JAMS, another mainstream arbitration provider, the Court noted that *Heckman* "concerned novel arbitration procedures" (i.e., the New Era rules)

and that the JAMS rules did not "share[] even some of those defects." *Jones*, 129 F.4th at 1182-83. The "critical difference" underlying *Heckman*'s holding is that "[i]n a class or representative arbitration, an individual brings claims *on behalf of* others, whereas a claimant in a consolidated arbitration brings the claim in her *individual* capacity." *Id.* at 1182-83. Both Judge Breyer and Judge Gilliam have relied on *Jones* in rejecting similarly overbroad readings of *Heckman*, explaining that *Heckman* must be given a "narrow reading" and doesn't apply when there "are no bellwether or representative proceedings that *bind absent parties*." *Cordero v. Coinbase, Inc.*, 2025 WL 2223495, at *4-5 (N.D. Cal. Aug. 5, 2025) (emphasis added); *accord Davis v. Experian Info. Sols., Inc.*, 2025 WL 2998157, at *7 (N.D. Cal. Oct. 24, 2025) (similar); *see also*, *e.g.*, *Kennedy*, *supra*, at 11-12; *Pilon*, 769 F. Supp. 3d at 296-98; *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1126-27 (S.D. Cal. 2024) (all distinguishing *Heckman*).[8]

*c. The FAA preempts plaintiffs' unconscionability challenge to the staging procedures.*

Even if the staging procedures in the December 2024 Terms were unconscionable under state law (they are not), the FAA would preempt that state-law holding.

First, "the FAA . . . preempts any state law rule discriminating on its face against arbitration," *Kindred Nursing Centers Limited P'Ship v. Clark*, 581 U.S. 246, 251 (2017), and the new blanket unconscionability rule against staging procedures proposed by plaintiffs would operate solely to invalidate arbitration agreements, which impermissibly "target[s] arbitration [] by name," *Lamps Plus*, 587 U.S. at 188 (citation omitted). *See also Oblix, Inc. v. Winiecki*, 374 F.3d 488, 492 (7th Cir. 2004) (FAA forbids states from

[8] *Heckman*'s alternative holding that the FAA did not apply to Ticketmaster's arbitration clause because it would result in arbitration that is not "bilateral" and "individualized" is similarly inapplicable here. 120 F.4th at 689-90. Unlike the New Era rules according bellwether decisions preclusive effect, the arbitration agreement in the December 2024 Terms requires traditional individual arbitration for all claims that are not settled, and the agreement makes clear that bellwether rulings have no preclusive effect—the exact *opposite* of the approach to arbitral "precedent" deemed improper in *Heckman*. *See also Jones*, 129 F.4th at 1182 (noting that consolidation under the JAMS rules "is not the same as class or representative arbitration" and does not present "the red flags associated with classwide arbitration" that were presented in *Heckman*).

applying "any novel rule" to invalidate "arbitration agreements"). California, for example, does not deem unconscionable MDL processes in court; indeed, California imposes its own similar process, called Judicial Council Coordination Proceedings, in state courts. *See* Cal. R. Ct. 3.501-50. States therefore cannot adopt an "arbitration-specific" rule against agreements to use similar MDL processes in arbitration. *Kindred*, 581 U.S. at 254.

Second, a state-law rule against staging procedures would obstruct "the full purposes and objectives of Congress" in enacting the FAA—which was to "ensure the enforcement of arbitration agreements according to their terms" and "to promote arbitration." *Concepcion*, 563 U.S. at 344-45, 352. Specifically, such a rule improperly strips parties of their "discretion in designing arbitration processes" that are "tailored to the type of dispute" and instead forces companies to face large numbers of unsupportable and unvetted claims. *Id.* at 344-45, 352.

**4. The challenged terms are severable.**

Assuming the Court concludes that any of the challenged provisions are unenforceable, the remedy would be to sever the provisions, not to deny arbitration altogether. All of the applicable states have a "strong preference" for severance. *Poublon*, 846 F.3d at 1272 (citation omitted); Cal. Civ. Code § 1599; *Brady v. Williams Cap. Grp.*, 64 A.D.3d 127, 137 (N.Y. App. Div. 2009), *aff'd as modified*, 928 N.E.2d 383 (N.Y. 2010); *Clymer v. Jetro Cash & Carry Enters.*, 334 F. Supp. 3d 683, 696 (E.D. Pa. 2018) (severance appropriate unless the challenged provisions are "essential" to the overall agreement).

The challenged provisions in the arbitration agreement can easily be severed as "collateral to the main purpose of the contract," which is to resolve disputes by individual arbitration. *Poublon*, 846 F.3d at 1272; *accord Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d 520, 545-46 (Cal. 2024). What's more, the staging procedures are subject to two express severability clauses. Section 17(h)—which contains those procedures—itself provides that "[i]f there is a final judicial determination that any part of this paragraph is unenforceable or unlawful for any reason, the unenforceable or unlawful portion shall be severed and severance shall have no effect whatsoever on the enforceability,

applicability, or validity of any other part of this Agreement, including without limitation the choice-of-forum provision in the preceding paragraph." Keeton Decl. Ex. 1 § 17(h). And the arbitration agreement more broadly provides that if "any portion of this Arbitration Agreement is deemed illegal or unenforceable under applicable law not preempted by the FAA, such provision shall be severed and the remainder of the Arbitration Agreement shall be given full force and effect." *Id.* § 17(i).

When "the contract contains a severance clause," as is (doubly) the case here, the California Supreme Court has instructed that courts "should take it into account" in the severability analysis. *Ramirez*, 551 P.3d at 547; *see also*, *e.g.*, *MacPherson v. McGee Mem'l Hosp.*, 128 A.3d 1209, 1225-26 (Pa. Super. Ct. 2015) (enforcing express severance clause because the challenged provisions were not "integral" to the overall agreement). Courts applying New York law go even further, holding that courts should give effect to "the agreement's plain terms" governing severance. *Faggiano v. CVS Pharmacy, Inc.*, 283 F. Supp. 3d 33, 37-38 (E.D.N.Y. 2017) (collecting cases).

While Lyft recognizes that this Court in *Rios* declined to sever the terms that it deemed substantively unconscionable, that case (which was limited to California law, not New York or Pennsylvania) is distinguishable for the reasons discussed above—including that there can be no similar "confusion about statute of limitations tolling" under the arbitration agreement here. *Rios*, 807 F. Supp. 3d at 994. In addition, there can be no "bad faith" (*id.*) in Lyft's choice to adopt a staging process to address real-world realities of mass arbitrations. The enforceability of such a process is still an open question in the Ninth Circuit, and, as noted above, other courts have upheld similar provisions. It matters whether "the state of the law was 'sufficiently clear at the time the arbitration agreement was signed to lead to the conclusion that [the provision at issue] was drafted in bad faith.'" *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1075-76 (2003) (severing provision). It is further telling that another court that recently agreed with the substantive unconscionability analysis in *Rios* nonetheless severed a similar staging provision and compelled arbitration—including because the provision, like the one in this

case, had an express severability clause. *See Ortiz*, 2026 WL 712958, at *2.

Finally, any application of state-law severance doctrine that declines to sever under the circumstances here would be preempted by the FAA, because it would treat arbitration agreements less favorably than other contracts. Outside of the arbitration context, California law generally "take[s] a very liberal view of severability." *In re Marriage of Facter*, 212 Cal.App.4th 967, 987 (2013). The FAA prohibits states from applying a different approach to arbitration agreements and from refusing to give effect to the parties' express agreement to sever the challenged provisions in this case. In the arbitration context, some California courts have placed a heavy thumb on the scale against severability, which previously led the Supreme Court to grant certiorari to decide whether the FAA preempts those courts' unique approach to severance. *See MHN Gov't Servs., Inc. v. Zaborowski*, 576 U.S. 1095 (2015) (resolved before decision).

### C. Plaintiffs are required to arbitrate under their earlier arbitration agreements.

Even if the Court concludes that the arbitration agreement in the December 2024 Terms is unenforceable in its entirety, plaintiffs are still obligated to arbitrate under their prior arbitration agreements with Lyft. As discussed above (at 2-5), plaintiffs also agreed to arbitrate in the December 2022, December 2020, and August 2019 versions of Lyft's Terms. Those Terms do not contain the pre-arbitration and staging processes that plaintiffs challenge here. *See* Keeton Decl. Exs. 2-4. While all three plaintiffs are required to arbitrate under their prior arbitration agreements, the second amended complaint also makes clear that Ye and Robey cannot complain that there is anything unfair about holding them to the contract terms that were in effect when their claims arose.[9]

Under general principles of contract law, "when a modification or substitution [of an agreement] is void for failure to meet the requirements of a valid contract"—such as when changes to contract terms are held unconscionable—"then the modification or

[9] While plaintiffs' challenge to the class waiver for non-arbitrable claims in Section 18 of the December 2024 Terms should be irrelevant, *see* pages 10-11, *supra*, the prior versions of Lyft's Terms do not contain a separate class waiver for non-arbitrable claims. Keeton Decl. Exs. 2-4.

substitution is unenforceable and the prior contract is revived." *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1067, 1071 (S.D. Cal. 1999) (emphasis added); *accord* Restatement (Second) of Contracts § 279 cmt. b (1981) (observing that, if a new contract is "unconscionab[le], recourse may be had on the original duty"); 1 Witkin, *Summary 11th Contracts* § 993(3) (2025) (similar). Courts in California have applied this principle, including in connection with unconscionability challenges to arbitration agreements. *See Rejuso v. Brookdale Senior Living Cmtys., Inc.*, 2018 WL 6173384, at *4 (C.D. Cal. Nov. 13, 2018) (court's determination that newer arbitration agreement was unconscionable and unenforceable revived parties' earlier arbitration agreement); *see also*, *e.g.*, *Airs Int'l, Inc. v. Perfect Scents Distribs., Ltd.*, 902 F. Supp. 1141, 1147-48 (N.D. Cal. 1995) (holding, outside the arbitration context, that a new contract extinguishes and replaces an earlier one only when the new contract is valid); *Hardisty v. Moore*, 2015 WL 639388, at *13 (S.D. Cal. Oct. 22, 2015) (similar, citing *Airs Int'l*). Here, this means that if the Court concludes that the arbitration clause in Lyft's December 2024 Terms is "invalid," then plaintiffs' "previous obligation[]" to arbitrate under prior versions of Lyft's Terms was "not extinguished." *Airs Int'l*, 902 F. Supp. at 1148-49. Accordingly, plaintiffs' "original duty" to arbitrate disputes under those Terms "is again enforceable." Restatement (Second) of Contracts § 279 cmt. b.

## III. Plaintiffs Cannot Evade Arbitration By Invoking *McGill*.

Plaintiffs request two different kinds of injunctive relief in connection with their California statutory claims that they assert qualifies as public injunctive relief: (1) an order enjoining Lyft from "enforc[ing] its unconscionable provisions" in the December 2024 Terms, *see* SAC ¶¶ 128, 130-131; and (2) an order enjoining Lyft from "continu[ing] to deceptively market its Priority Pickup and other more expensive fare options as providing a faster and more certain pick-up time," *see id.* ¶¶ 98-99, 108-109, 121-122, 140. In framing this relief, plaintiffs make clear that they are seeking to avoid arbitration by invoking the *McGill* rule. *Id.* ¶¶ 177, 183 (citing *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 952 (2017)). But the *McGill* rule does not provide plaintiffs any assistance in avoiding

arbitration—either of their California statutory claims or of their remaining claims (to which the *McGill* rule does not apply).

At the outset, the relief plaintiffs request regarding the enforceability of the December 2024 Terms is private, not public, under controlling Ninth Circuit precedent. That relief is by definition limited to "a discrete subset of similarly situated persons"—the subset of existing (or former) Lyft users who agreed to the December 2024 Terms—not "the general public as a whole." *Hodges*, 21 F.4th at 548.

As for plaintiffs' requests directed at Lyft's alleged marketing, the December 2024 Terms (as well as earlier versions of Lyft's Terms) require severing those requests, compelling all of plaintiffs' remaining claims to individualized arbitration, and staying their public-injunction request pending the outcome of arbitration. Specifically, plaintiffs' arbitration agreements provide that if any of the agreements' limitations on non-individualized relief is unenforceable "with respect to any Claim or any particular remedy for a Claim (*such as a request for public injunctive relief*), then that Claim or particular remedy (and only that Claim or particular remedy) shall be severed from any remaining claims and/or remedies and may be brought in a court of competent jurisdiction." Keeton Decl. Exs. 1-4 § 17(b). This severability language is fully enforceable. *See*, *e.g.*, *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 831 (9th Cir. 2019).[10]

**IV. This Action Should Be Stayed Pending Arbitration of Plaintiffs' Claims.**

When, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the FAA requires a district court to compel arbitration and stay the lawsuit. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024).

## CONCLUSION

The Court should (i) compel plaintiffs to individually arbitrate their claims in accordance with their 2024 arbitration agreements—or, in the alternative, their 2022 or prior agreements; and (ii) stay this action pending the outcome of arbitration.

---

[10] Separately, Lyft maintains that the FAA preempts *McGill*. Lyft recognizes, however, that the Ninth Circuit has held to the contrary and therefore raises this preemption argument solely to preserve it for future review.

Dated: June 24, 2026

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ Archis A. Parasharami*
Archis A. Parasharami

*Counsel for Defendant Lyft, Inc.*